UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | Case No. 23-43403-mlo |
|---|---|
| Ark Laboratory, LLC, | Chapter 11 |
|  | Hon. Maria L. Oxholm |
| Debtor. | |

**INTERIM ORDER
AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

This matter having come before the Court upon the First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief (the "Motion") (Doc. 25) filed by Ark Laboratory LLC ("Debtor"), the Court having reviewed the Motion and having heard the statements of counsel in support of the relief requested and any objections and any evidence offered, including the Objection to the Motion filed by Comerica Bank (the "Comerica Objection") (Doc. 32); and the Court being fully advised in the premises;

A. THE COURT FINDS THAT:

A. Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. ("Code") on April 12, 2023 ("Petition Date").

B. Comerica Bank ("Bank") asserts that, without limitation, Debtor is indebted to Bank, under a certain Master Revolving Note executed by Debtor to the

order of Bank on February 28, 2022 in the original principal amount of $6,500,000 (as amended, the "Prepetition Revolving Note") and that, without limitation, the indebtedness under the Prepetition Revolving Note as of the Petition Date includes principal of $6,376,908.51, interest of $23,360.32, plus accrued and accruing interest, costs, fees and expenses,

C. The liabilities evidenced by the Prepetition Revolving Note and the other loan and collateral documents, including interest, costs, fees and expenses, are identified as the "Prepetition Indebtedness."

D. Under a Guaranty dated June 4, 2022 (the "Guaranty"), James Grossi ("Guarantor") guarantied a portion of the Prepetition Indebtedness, limited to the principal sum of $500,000 "plus interest on that amount and all costs and expenses (including reasonable attorneys' fees) incurred by [Comerica] in enforcing [the] Guaranty or in collecting the Indebtedness [(as defined in the Guaranty)]."

E. The documents, instruments and agreements executed in connection with the prepetition financing arrangements from Bank to Debtor and Guarantor are identified collectively as the "Prepetition Loan Documents." Capitalized terms not defined in this Order shall have the meanings set forth in the Prepetition Loan Documents.

F. Bank asserts that the Prepetition Indebtedness is secured by all assets of Debtor, including without limitation: (a) existing and future accounts, chattel

paper, contract rights, deposit accounts, general intangibles, instruments, documents, software, rights to payment evidenced by chattel paper, documents or instruments, commercial tort claims, letters of credit, letter of credit rights, supporting obligations and rights to payment for money or funds advanced or sold; (b) presently owned and hereafter acquired inventory; (c) presently owned and hereafter acquired investment property; (d) presently owned and hereafter acquired property in possession or control of Bank; (e) presently owned and hereafter acquired machinery, equipment, furniture, fixtures, tools, parts and accessories, and all proceeds and products of and accessions to all of the foregoing (collectively, "Prepetition Collateral"), all as more particularly described in the Security Agreement (All Assets) executed by Debtor in favor of Bank dated January 19, 2021 ("Security Agreement").

G. Bank asserts that Bank's security interest in the Prepetition Collateral is valid, perfected, first in priority and unavoidable and the Prepetition Indebtedness is a valid, binding and unavoidable obligation of Debtor and Guarantor and there are no setoffs, counterclaims or defenses to the Prepetition Indebtedness.

H. In addition to the Prepetition Indebtedness, Debtor is obligated to The Peninsula Fund VII Limited Partnership ("Subordinate Lender") under a certain Note Purchase Agreement and other loan and collateral documents ("Subordinate

Loan Documents"). The liabilities evidenced by the Subordinate Loan Documents, including interest, costs, fees and expenses, are identified as the "Subordinate Debt".

I. Under a Senior Subordination Agreement dated January 19, 2021 (as amended, "Senior Subordination Agreement"), subject to the terms therein, Bank's security interest in the Prepetition Collateral is senior to the Subordinate Lender's security interest in the same.

J. Under a Merchant Cash Advance Agreement dated March 10, 2023 ("MCA Agreement"), Diesel Funding LLC advanced funds to Debtor characterized as a purchase from Debtor of certain future receivables.

K. In order for Debtor to continue to operate its business, and preserve its goodwill and going concern value, it is necessary for Debtor to use cash collateral to enable it to pay normal operating expenses (including, without limitation, wages, salaries, insurance premiums, utilities, rent and taxes) and to purchase supplies.

L. Debtor has not been, and will continue to be unable, in the ordinary course of business or otherwise, to obtain unsecured credit under § 503(b)(1) of the Code and needs use of cash collateral in order to continue its operations. Bank is willing to permit use of cash collateral by Debtor under § 363 of the Code, subject to the terms of this Order. This Order resolves the Comerica Objection solely as it relates to the Interim Period (defined below).

Upon consideration of the above findings, which are incorporated into this Order, it is ORDERED:

1. Debtor is authorized to use cash collateral, subject to the terms of this Order. The use of cash collateral will be governed by the Prepetition Loan Documents (which shall include but shall not be limited to the following documents: the Prepetition Revolving Note, the Guaranty, the Security Agreement, the Forbearance Agreement dated January 17, 2023 among Debtor, Guarantor and Bank (the "Forbearance Agreement") and all other Prepetition Loan Documents), subject to the following modifications:

(b) Debtor may use cash collateral to fund payment of expenses as and when budgeted, with a variance of up to 5% per line item allowed, provided the aggregate cumulative amount of expenditures during the Interim Period (defined below) does not exceed the aggregate budget in the Interim Period, in the budget filed on April 21, 2023 as an Exhibit to Docket No. 41 ("Budget"). Debtor may use ACH (provided that all ACH transactions are pre-funded) to make payments of budgeted expenses and shall have online access to view the account and process the ACH payments, and Bank shall allow Debtor to deposit funds received electronically through Bank. Collections received in the form of physical checks shall be deposited at Bank through a branch; the Business Deposit Capture (BDC) treasury management service at Bank shall no longer be available to Debtor. Debtor's use of

cash collateral for any particular line item in the Budget during the Interim Period may not exceed the cumulative budgeted amount set forth in such line item for the Interim Period. Debtor shall not use cash collateral except as provided in this Order. Debtor shall supply Bank, Subordinate Lender, the U.S. Trustee and any committee appointed in this case with an updated Budget, and a reconciliation of postpetition performance to the Budget, not less often than once every week. If approved by Bank in writing, Debtor's updated Budget shall become the "Budget" under this Order.

(c) Debtor's ability to use cash collateral under this Order on an interim basis shall continue through May 11, 2023 (the period from the Petition Date through such date is defined as the "Interim Period"), unless it terminates under the terms of this Order based upon a default by Debtor before the end of the Interim Period as described below ("Termination Date"). Entry of this Order does not allow Bank to offset or sweep the accounts of Debtor.

(d) Interest on the Prepetition Revolving Note shall continue to accrue at the non-default rate specified in the Prepetition Loan Documents. Bank reserves the right to assert that additional default interest is accruing at the default rate set forth in the Loan Documents, which is three percent (3%) above the non-default rate.

(e) Debtor shall supply financial information and information relating to the collateral as required by the Prepetition Loan Documents and at the

request of Bank. Without limitation, Debtor shall deliver to Bank and Subordinate Lender: (i) the information and reports required under the Forbearance Agreement and other Loan Documents; (ii) as and when filed, all reports and other documents and pleadings filed by Debtor with the Bankruptcy Court or the Office of the U.S. Trustee; (iii) a weekly cash flow statement and integrated projections, comparing actual receipts and disbursements to the projected receipts and disbursements set forth in the Budget; and (iv) on a weekly basis a report on Debtor's "Ending Supplies" and "Ending A/R" (as shown on Debtor's Weekly Cash Flow Forecast prepared on April 13, 2023).

(f) All cash and cash equivalents which are now in or hereafter come into Debtor's possession shall be deposited in a Debtor-in-Possession account at Bank (the "Cash Collateral Account").

(g) Notwithstanding anything to the contrary set forth above, cash proceeds of any unusual or extraordinary items (including, by way of example, tax refunds, insurance proceeds, or sale proceeds, other than collection of accounts in the ordinary course of business) received by Debtor shall be paid to Bank for application as permanent reductions to the Prepetition Indebtedness in such manner as Bank deems appropriate in its sole discretion. For clarity, payments of accounts receivable in advance of schedule shall not be considered extraordinary collections.

(h) Guarantor ratifies and affirms his Guaranty.

7
23-43403-mlo    Doc 43    Filed 04/24/23    Entered 04/24/23 08:55:27    Page 7 of 19

(i) It is a default under this Order if as of the end of any week, the sum of (i) Debtor's cash on deposit in the Cash Collateral Account at Bank, plus (ii) an amount equal to the lesser of (A) the amount of Debtor's "Ending Supplies" or (B) $581,698, plus (iii) the amount of Debtor's "Ending A/R" is less than the sum of (x) the amount of Debtor's cash as of the Petition Date, plus (y) the amount of Debtor's "Ending Supplies" as of the Petition Date, plus (z) the amount of Debtor's "Ending A/R" as of the Petition Date. For purposes of this covenant, in order to be consistent with the figure used to calculate "Ending A/R" as of the Petition Date, the expected collectible percentage of Debtor's accounts receivable used in calculating the "Ending A/R" as of any particular week subsequent to the Petition Date shall not be greater than 46%.

(j) In the Forbearance Agreement, "Borrower is not required to deliver a Covenant Compliance Report for the quarter ending December 31, 2022", and shall continue to not have to deliver a Covenant Compliance Report pending further agreement between the parties. Moreover, through the Interim Period, Debtor shall not be required to comply with the following financial covenants set forth in the Prepetition Loan Documents: (i) Interest Coverage Ratio; (ii) Fixed Charge Coverage Ratio; (iii) Senior Debt to EBITDA Ratio; and (iv) Total Debt to EBITDA Ratio.

8
23-43403-mlo    Doc 43    Filed 04/24/23    Entered 04/24/23 08:55:27    Page 8 of 19

1. Debtor shall timely pay directly to Bank the monthly interest payments due on the Prepetition Revolving Note at the non-default rate.

2. As adequate protection under § 363 of the Code for Debtor's use of cash collateral and any diminution in value in other collateral, to the extent of any diminution in the value of Bank's interest in Bank's Prepetition Collateral, Bank is granted a continuing and replacement security interest and lien to the same extent, validity and priority as existed on the Petition Date in all of the property of Debtor (collectively, the "Postpetition Collateral" and identified together with the Prepetition Collateral as the "Collateral"), including without limitation: (a) all of the following, whether now owned or existing or hereafter created or acquired, wherever located, together with all additions and accessions and all proceeds and products thereof: all accounts, accounts receivable, instruments, documents, drafts, notes, acceptances, chattel paper, general intangibles (including, without limitation, all goodwill, copyrights, patents, trademarks, trade names and franchises), software, contract rights, rights to payment evidenced by chattel paper, documents or instruments, deposit accounts, rights to payment for money or funds advanced or sold, causes of action, choses in action, commercial tort claims, letters of credit, letter of credit rights, supporting obligations, investment property or other property in possession or control of Bank, all personal property received as returns and repossessions, all other forms of receivables, tax refunds of any form, all inventory,

including all goods held for sale and documents evidencing inventory, all equipment (together with spare and repair parts, special tools and equipment and replacements), the proceeds of credit and other forms of insurance coverage of any of the foregoing and all books and records pertaining to all of the foregoing; and (b) all interests in real property and fixtures; provided, however, that if Debtor's interest in any of the foregoing property as of the Petition Date was encumbered by a valid, binding and unavoidable lien senior to the prepetition lien held by Bank, the lien on that property granted to Bank under this Order shall be junior to such existing senior lien only.

1. As adequate protection under § 363 of the Code for Debtor's use of cash collateral and any diminution in value in other collateral, to the extent of any diminution in the value of Subordinate Lender's interest in its collateral, Subordinate Lender is granted a continuing and replacement security interest and lien in all of the Collateral to the same extent, validity and priority as existed on the Petition Date; provided, however, that Subordinate Lender's lien and interest in the Collateral under this Order is junior to Bank's liens and interests.

2. As adequate protection under § 363 of the Code for Debtor's use of cash collateral and any diminution in value in other collateral, to the extent of any diminution in the value of Diesel Funding LLC's interest in its collateral, Diesel Funding LLC is granted a continuing and replacement security interest in all of Debtor's accounts receivable to the same extent, validity and priority as existed on

the Petition Date; provided, however, that Diesel Funding LLC's interest in Debtor's accounts receivable under this Order is junior to the liens and interests of Bank and Subordinate Lender.

3. Bank reserves the right in the event that the adequate protection provided to Bank is insufficient to protect Bank for Debtor's use of cash collateral or for a diminution in value of Bank's other collateral, then to the extent that the automatic stay of § 362 of the Code or Debtor's use of cash collateral or Bank's other collateral results in any diminution in the value of Bank's interest in Bank's Prepetition Collateral, to seek to allow Bank's claim to have priority under § 507(b) of the Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) of the Code, other than United States Trustee quarterly fees. Subordinate Lender reserves the right in the event that the adequate protection provided to Subordinate Lender is insufficient to protect Subordinate Lender for Debtor's use of cash collateral or for a diminution in value of Subordinate Lender's other collateral, then to the extent that the automatic stay of § 362 of the Code or Debtor's use of cash collateral or Subordinate Lender's other collateral results in any diminution in the value of Subordinate Lender's interest in its collateral, to seek to allow Subordinate Lender's claim to have priority under § 507(b) of the Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) of the Code, other than United States

Trustee quarterly fees (but junior to any claim of Bank, including any § 507(b) claim of Bank, and in all respects subject to the Senior Subordination Agreement). The foregoing provisions shall not restrict nor provide for disgorgement of Debtor's payment of administrative expenses, including professional fees, to the extent such expenses are provided for in the Budget and Debtor is not then, and will not as a result of such payment be, in default under this Order or the Prepetition Loan Documents.

       4.       The security interest and lien granted to Bank under this Order shall be evidenced by the entry of this Order, and except as otherwise provided herein, shall be deemed to be first, valid and perfected as against all third parties upon entry of this Order, without regard to applicable federal, state or local filing and recording statutes, as of the Petition Date, provided, however, that Bank may take such steps as it deems appropriate to comply with such recording statutes and Debtor shall execute and deliver such additional documents and shall take any and all additional action to comply with such recording statutes as Bank may request. At Bank's discretion, it may attach this Order to financing statements bearing Debtor's name as the debtor and file them with any state or local office to further evidence the liens granted hereby without the signature of Debtor.

       5.       Subject to 11 U.S.C. § 506, Bank's secured claim shall include all reasonable fees and out-of-pocket disbursements incurred by Bank, in any way

arising from or in connection with this Order, the Prepetition Loan Documents or the Prepetition Indebtedness, including, without limitation, the reasonable fees of counsel for Bank for the preparation, examination and approval of this Order, for the payment of all fees and out-of-pocket disbursements incurred by Bank, including reasonable attorney fees and consulting fees incurred by Bank, in any way arising from or in connection with any action taken by Bank to monitor, advise, enforce or collect the Prepetition Indebtedness, or enforce any obligations of Debtor under this Order, the Prepetition Loan Documents or any other document or agreement arising from or relating to the business relationship between Bank and Debtor, including any actions to lift the automatic stay or otherwise in any way participate in this bankruptcy proceeding. Subject to 11 U.S.C. § 506, Bank's secured claim shall also include such fees and disbursements of Bank for any defense of any litigation instituted by Debtor, Guarantor or any third party against Bank arising from or relating to the Prepetition Indebtedness, this Order, the Prepetition Loan Documents or the business relationship among Debtor, Guarantor, or any of them, and Bank. Payment of such fees and expenses shall be made pursuant to line items in the Budget, upon stipulation of Debtor, Bank, any Committee formed in this case, and the United States Trustee or upon further Court order.

6. The terms of this Order constitute a "finding of fact" as to the "adequate protection necessary" for Debtor's use of both cash and non-cash Prepetition

Collateral of Bank under § 363 of the Code. This Order is in lieu of all further hearings on the issue of adequate protection with respect to Bank during the Interim Period. The Court also finds that Bank is acting in good faith.

7. Defaults have occurred under the Prepetition Loan Documents. Debtor and Guarantor, to the fullest extent allowed under applicable law, waive all notices that Bank might be required to give but for this waiver, including any notices otherwise required under Section 6 of Article 9 of the Uniform Commercial Code as enacted in the State of Michigan or other relevant state (the "UCC") concerning the Collateral. Furthermore, Debtor and Guarantor waive (a) the right to notification of disposition of the Collateral under § 9-611 of the UCC, (b) the right to require disposition of the Collateral under § 9-620(e) of the UCC and (c) all rights to redeem any of the Collateral under § 9-623 of the UCC.

8. Debtor shall keep the Collateral maintained by sufficient insurance coverage reasonably acceptable to Bank, with Bank named as the mortgagee, loss payee and/or additional insured on all such policies.

9. Debtor shall provide Bank, Subordinate Lender, and their respective attorneys, accountants, employees and agents with access to Debtor's books and records for the purpose of audit, examination and inspection thereof, and observation of Debtor's operations, and shall provide all reasonable information and documents requested by Bank, Subordinate Lender or their respective designated agents, subject

14
23-43403-mlo    Doc 43    Filed 04/24/23    Entered 04/24/23 08:55:27    Page 14 of 19

to any applicable privileges. Bank, Subordinate Lender, and their respective attorneys, accountants, employees and agents shall have the right to enter Debtor's business premises during reasonable business hours for the purpose of examining Bank's Collateral at a mutually agreed time. Subject to 11 U.S.C. § 506, Bank's secured claim shall include the reasonable costs of any audit requested or performed by Bank.

10. The covenants and other terms of this Order in favor of Bank are for the sole benefit of Bank; Bank, in its sole discretion, may in writing waive any such covenant or term.

11. In the event that Debtor defaults in performance of any of its obligations under this Order or under the Prepetition Loan Documents (excluding existing defaults under the Prepetition Loan Documents of which the Bank has been notified in writing), or upon the entry of an order dismissing this case, appointing a trustee in this case, converting this case to a case under Chapter 7 of the Code, or transferring the venue of this case to another district, Debtor's right to use cash collateral under this Order and the Prepetition Loan Documents shall terminate, Debtor shall segregate and account for all cash collateral then in its possession or control, and Bank shall have the right to apply for relief from the stay under § 362 of the Code. Any such application by Bank may be scheduled for an expedited hearing on two business days' notice without objection by any of the parties who

stipulated to entry of this Order (or as soon thereafter as practicable, depending on the Court's schedule and availability). Notwithstanding the above, for any default under the Prepetition Loan Documents that was not an "Identified Default" (as defined in the Forbearance Agreement), Debtor shall have two business days after occurrence of such default to cure such default, provided, however that if a curable default occurs of which Bank is aware but Debtor or any Committee formed in this case is not, then Debtor shall have two business days after receipt of notice of such default by Debtor and the Committee to cure such default.

12. As it relates to the Interim Period, the provisions of this Order, which shall be immediately effective upon entry, and any actions taken under this Order, shall survive entry of, and shall govern with respect to, any conflict with any order which may be entered subsequently, and the terms and provisions of this Order, as well as the liens and security interests under the Prepetition Loan Documents, this Order, and all rights of Bank and obligations of Debtor created or arising under this Order, shall continue in these proceedings or any superseding proceedings under the Code, and such liens and security interests shall maintain their priority as provided by this Order until satisfied and discharged. As it relates to this Interim Period, if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other court, such stay, modification or vacation shall not affect: (a) the validity of any adequate protection granted to Bank under

this Order; (b) the validity and enforceability of any lien or priority authorized for the benefit of Bank; or (c) the conduct of Bank with respect to the rights granted to Bank in this Order prior to the effective date of such stay, modification or vacation, and notwithstanding such stay, modification or vacation, such adequate protection, liens and rights shall be governed in all respects by the original provisions of this Order and Bank shall be entitled to all those rights, privileges and benefits.

13. Under Local Rule 7026-3, cause has been shown to permit Bank and Subordinate Lender to take discovery from Debtor in this matter, including requests for production of documents and depositions of Guarantor and Russell D. Long (Debtor's financial advisor).

14. Notwithstanding anything else to the contrary, Debtor may not use more than $1,556,049 during the Interim Period. That amount is necessary to avoid immediate and irreparable harm

15. Debtor shall serve a copy of this Order within 24 hours after entry of this Order under Federal Rule of Bankruptcy Procedure 4001(d) and Local Rule 4001-2.

16. The **final hearing** under Local Rule 4001-2 shall be on **May 11, 2023 at 11:00 a.m.** Consistent with Notice of Change in Procedure for Judge Maria L. Oxholm filed April 12, 2022, effective immediately and until further notice, Judge Oxholm will conduct all conferences and non-evidentiary hearings by telephone. **At**

**least five minutes before the scheduled time for hearing, counsel and parties should call (877) 336-1831 and use Access Code 6226995**. Landline connections are much preferred, but cell phone or other telephone services are allowed. Counsel and parties should place their phone on mute and wait until their case is called before unmuting their phone and participating.

17. Objections to this Order must be filed and served on (i) counsel for Debtor, Robert N. Bassel, P.O. Box T, Clinton, Michigan 49236, bbassel@gmail.com, (ii) counsel for Bank, Robert J. Diehl, Jr. and Brian R. Trumbauer, Bodman PLC, 1901 St. Antoine Street, 6th Floor at Ford Field, Detroit, Michigan 48226, rdiehl@bodmanlaw.com, btrumbauer@bodmanlaw.com, and (iii) counsel for Subordinate Lender, Tamar N. Dolcourt, Foley & Lardner LLP, 500 Woodward Avenue, Suite 2700, Detroit, Michigan 48226, tdolcourt@foley.com, and Michael J. Small, Foley & Lardner LLP, 321 N. Clark Street, Suite 3000, Chicago, Illinois 60654, msmall@foley.com, within 14 days of its entry, except that an unsecured creditors' committee may file objections within the earlier of (a) 14 days after it is served with this Order, or (b) 60 days after the entry of this Order. If an objection is filed, a hearing shall be held.

3. This Order is entered by consent on an interim basis only and Bank does not consent to the use of cash collateral beyond the date of the final hearing.

Bank reserves all of its rights to object to the use of cash collateral beyond the Termination Date.

**Signed on April 24, 2023**



/s/ Maria L. Oxholm
Maria L. Oxholm
United States Bankruptcy Judge