| | | |
|---|---|---|
| In re: | : | Case No. 23-43403-mlo |
| | : | Chapter 11 |
| Ark Laboratory, LLC | : | Hon. Maria L. Oxholm |
| | : | |
| Debtor. | : | |
| | : | |

# OBJECTION OF MCLAREN MEDICAL LABORATORY TO ENTRY OF FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

McLaren Medical Laboratory ("McLaren"), a subsidiary of McLaren Health Care Corporation, by its undersigned counsel, objects to entry of a Final Order pursuant to the *Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection* [Doc. No. 43] (the "Interim Order") as follows:

## BACKGROUND

1. Debtor, Ark Laboratory, LLC (the "Debtor") filed its *Voluntary Petition* under Chapter 11 (the "Petition") [Doc. No. 1] on April 12, 2023 (the "Petition Date").

2. The Debtor filed its *First Day Motion for Use of Cash Collateral, Regarding Adequate Protection and Related Relief* (the "Motion") [Doc. No. 25] on April 19, 2023.

3. The Interim Order was entered on April 24, 2023. The Interim Order sets May 11, 2023 at 11 a.m. as the date and time for a final hearing on the Motion.

4. On April 25, 2023, Debtor filed its *Corrected Filing of Budget for Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection* (the "Budget") [Doc. No. 48].

5. McLaren and the Debtor are parties to a certain Laboratory Services Agreement dated August 23, 2021(the "Agreement"). Pursuant to the Agreement, McLaren provides to the Debtor, on a daily basis, certain clinical and anatomic pathology diagnostic testing services (the "Services").

6. McLaren provides the Debtor with daily notices of the specific Services and their cost performed each day. These daily notices are sent directly to Debtor's billing portal by McLaren's third-party billing company.[1] Debtor is invoiced at the end of each month and payment is due upon receipt.

7. As of the Petition Date, the Debtor owed McLaren $234,482.36 pursuant to the Agreement. Prior to the Petition Date, the Debtor advised McLaren that it was having difficulty obtaining reimbursement from insurance company payors. However, the Debtor is responsible for direct payment to McLaren, regardless of whether or not Debtor is paid by a third-party.

---

[1] There is a seven-day lag time for the daily notices, such that each notice sets forth the testing performed by McLaren one week earlier.

8. Since the Petition Date, McLaren has continued to provide the Services to the Debtor on a daily basis, at the Debtor's request and pursuant to the Agreement. In fact, since the Petition Date, the Debtor has substantially increased the number of daily Services it requests from McLaren. During the time period October 2022 through April 11, 2023, McLaren performed an average of 456 tests per week for the Debtor, which has increased to approximately 2,612 tests per week during the time period April 12, 2023 through April 28, 2023.[2] This represents an approximate 573% increase in Services provided, which, upon information and belief, is due to the Debtor shifting almost all (if not all) of its post-petition testing to McLaren.

9. As of April 28, 2023, McLaren is owed $87,112.42 for post-petition Services, and for which it has not yet been paid. This represents a weekly post-petition billing volume to the Debtor of $35,870.00.

10. Based on the foregoing, McLaren believes it is critical to the Debtor's continued operations, and may be Debtor's most significant administrative expense creditor.

11. McLaren has reviewed the Debtor's Budget, and has concerns about the reliability of the information contained therein; and in particular is concerned that the Debtor will be unable to pay its administrative expenses in full.

---

[2] Because of the seven-day lag time discussed above and the timing of the daily reporting, this is the most current amount and date for which McLaren has the information contained in paragraphs 8 and 9.

## MCLAREN'S OBJECTIONS

12. McLaren asserts that the Budget does not present an accurate picture of the Debtor's income and that there are excessive expenses.

13. Issues with Debtor's Income:

   a. Income from non-Covid PCR: The Budget reflects Non-Covid PCR testing makes up 27.1% of the Debtor's monthly income. Upon information and belief, this type of testing has significantly diminished, and will continue to diminish such that it is highly unlikely that this volume of testing will continue for any period of time, including through the four-week period of the Budget.

   b. Income from Covid testing: The Budget reflects Covid testing makes up 4.8% of the Debtor's monthly income. Upon information and belief, this type of testing has significantly diminished, and will continue to diminish such that it is highly unlikely that this volume of testing will continue for any period of time, including through the four-week period of the Budget.

   c. Income from Toxicology testing: The Budget reflects that this testing makes up 52.5% of the Debtor's monthly income. Upon information and belief, the Budget does not accurately reflect the current reimbursement rate from Blue Cross Blue Shield of Michigan, which

pays only $28.00 per 7 panel test, and declines payment of anything above a 7 panel test.

d. Income from Other: The Budget reflects that this testing makes up 10.6% of the monthly income. The Debtor has not provided information which indicates what constitutes "Other". Therefore, McLaren is unable to determine if this category of income accurately reflects the projected revenues.

e. Reimbursement Rate Adjustments: McLaren has requested documentation from the Debtor in order to analyze this entry. As of this Objection, that information has not been provided. McLaren believes that negative reimbursement rate adjustments are greater than 25%, and more appropriately should be at 50%.

14. Issues with the Debtor's Disbursements:

a. Marketing Fees: The fees of $31,250 per week are excessive.

b. Lab Fees: If the Debtor expects that its current volume of testing will continue, the fees of roughly $15,000 per week (total for the 4-week period of the Budget of $46,560.00) are not nearly sufficient to cover the Services that McLaren provides (which averaged almost two and half times the amount of that number during the first 2 weeks of this proceeding), let alone that of other laboratories.

c. <u>Medical Billing</u>: The fees of $26,000 per week are excessive.

15. The Debtor's Schedules indicate that the current value of its Accounts receivable is $7,490,816.89, against a face amount of $17,080,470.03, for a collection rate of 43.86%. However, the general reimbursement rate for the types of claims that the Debtor submits for payment is a minimum of 50%. (McLaren's experience is that the reimbursement rate adjustment can be as high as 75%.)

16. The Debtor has stated that it has "cash flow issues caused by a combination of the following four factors: 1. Declining Medicare reimbursements, 2. A decrease in Covid testing, 3. Debtor's cost structure, and 4. Erroneous denials of claims by Meridian and Blue Cross." See *Further Verified Declaration of James Grossi in Support of Use of Cash Collateral* (the "Declaration") [Doc. No. 36]. These issues remain, and will not be solved by the filing of this Chapter 11 case. Moreover, to the extent that the Debtor has any issues with collection from Medicare, the Bankruptcy Court is not the proper forum to resolve such issues, as it lacks jurisdiction to adjudicate Medicare reimbursement disputes. See, *Nichole Medical Equipment & Supply, Inc. v. TriCenturion, Inc.*, 694 F. 3d 340 (3d Cir. 2012) and *United States v. Bayou Shores SNF, LLC (In re Bayou Shores SNF, LLC)*, 828 F. 3d. 1297 (11th Cir. 2016).

17. As the Debtor is directly responsible to McLaren for payment under the Agreement, and the Debtor is having difficulty with its collections, McLaren

questions whether the Debtor will have the ability to fund its operations and pay McLaren the full amount due as an administrative expense.

18. On April 27, 2023, McLaren requested that the Debtor provide (1) documents that support the contracted payment rate for each insurance company with whom the Debtor has a contract, (2) the Debtor's fee schedule for testing, and (3) the historical contract rates for reimbursement. As of the filing of this Objection, that information has not been provided.

19. McLaren believes that the Debtor will not be able to demonstrate that it can support its continued operation and pay its expenses of administration in full. The Debtor should not be permitted to operate when there is a high risk of administrative insolvency.

20. The Debtor should be denied the continued use of cash collateral. If the Court determines that the Debtor should be provided the opportunity to continue to use cash collateral, McLaren requests that the Court should require the Debtor to immediately bring current payment for all post-petition Services to date, and require the Debtor to make weekly payments to McLaren for additional post-petition Services by Friday of each week.

WHEREFORE, McLaren requests that this Court deny the Debtor continued use of cash collateral, or, alternatively, require the Debtor to immediately bring current payment for all post-petition Services to date, and require the Debtor to make

weekly payments to McLaren for additional post-petition Services provided by Friday of each week.

>Respectfully submitted,
>
>MADDIN, HAUSER, ROTH & HELLER, P.C.
>
>By: */s/ Julie Beth Teicher*
>    Julie Beth Teicher (P34300)
>    David M. Eisenberg (P68678)
>    Attorneys for McLaren Medical Laboratory
>    28400 Northwestern Hwy., 2nd Floor
>    Southfield, MI 48034
>    (248) 354-4030
>    jteicher@maddinhauser.com
>    deisenberg@maddinhauser.com

DATED: May 8, 2023