**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| In re: | Case No. 23-43403-mlo |
|  | Chapter 11 |
| Ark Laboratory, LLC, | Hon. Maria L. Oxholm |
| Debtor. |  |

**STIPULATED FINAL ORDER**
**AUTHORIZING USE OF CASH COLLATERAL**
**AND GRANTING ADEQUATE PROTECTION**

This matter having come before the Court upon the Stipulation to Entry of Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection, and various Stipulations to Entry of Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection, (the "Stipulation"), objections regarding entry of the Interim Cash Collateral Order having been filed by the Official Committee of Unsecured Creditors (the "Committee"), the Office of the U.S. Trustee ("U.S. Trustee") and McLaren Medical Laboratory ("McLaren") (collectively, the "Objections"), the Court having reviewed the Stipulation and having heard the statements of counsel in support of the relief requested and any objections and any evidence offered; and the Court being fully advised in the premises;

THE COURT FINDS THAT:

A.    Ark Laboratory LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. ("Bankruptcy Code") on April 12, 2023 ("Petition Date").

B.    This Order resolves the Objections.

C.    Without limitation, Debtor is indebted to Comerica Bank ("Comerica") under a certain Master Revolving Note executed by Debtor to the order of Comerica on February 28, 2022 in the original principal amount of $6,750,000    (as amended, the "Prepetition Revolving Note").  Without limitation, the indebtedness under the Prepetition Revolving Note as of the Petition Date includes principal of $6,376,908.51, interest of $23,360.32, plus accrued and accruing interest, costs, fees and expenses,

D.    The liabilities evidenced by the Prepetition Revolving Note and the other loan and collateral documents, including interest, costs, fees and expenses, are identified as the "Prepetition Indebtedness."

E.    Under a Guaranty dated June 4, 2022 (the "Guaranty"), James Grossi ("Guarantor") guaranteed a portion of the Prepetition Indebtedness, limited to the principal sum of $500,000 "plus interest on that amount and all costs and expenses (including reasonable attorneys' fees) incurred by [Comerica] in enforcing [the] Guaranty or in collecting the Indebtedness [(as defined in the Guaranty)]."

F.     The documents, instruments and agreements executed in connection with the prepetition financing arrangements from Comerica to Debtor and Guarantor are identified collectively as the "Prepetition Loan Documents."  Capitalized terms not defined in this Order shall have the meanings set forth in the Prepetition Loan Documents.

G.     The Prepetition Indebtedness is secured by all assets of Debtor, including without limitation: (a) existing and future accounts, chattel paper, contract rights, deposit accounts, general intangibles, instruments, documents, software, rights to payment evidenced by chattel paper, documents or instruments, commercial tort claims, letters of credit, letter of credit rights, supporting obligations and rights to payment for money or funds advanced or sold; (b) presently owned and hereafter acquired inventory; (c) presently owned and hereafter acquired investment property; (d) presently owned and hereafter acquired property in possession or control of Comerica; (e) presently owned and hereafter acquired machinery, equipment, furniture, fixtures, tools, parts and accessories, and all proceeds and products of and accessions to all of the foregoing (collectively, "Prepetition Collateral"), all as more particularly described in the Security Agreement (All Assets) executed by Debtor in favor of Comerica dated January 19, 2021 ("Security Agreement").

H.     Comerica's security interest in the Prepetition Collateral (the "Comerica Prepetition Liens") is valid, perfected, first in priority and unavoidable

and the Prepetition Indebtedness is a valid, binding and unavoidable obligation of Debtor and Guarantor and there are no setoffs, counterclaims or defenses to the Prepetition Indebtedness.

I.      In addition to the Prepetition Indebtedness, Debtor is obligated to The Peninsula Fund VII Limited Partnership ("Peninsula") under a certain Note Purchase Agreement and other loan and collateral documents ("Subordinate Loan Documents"). The liabilities evidenced by the Subordinate Loan Documents, including interest, costs, fees and expenses, are identified as the "Subordinate Debt".

J.      Under a Senior Subordination Agreement dated January 19, 2021 (as amended, "Senior Subordination Agreement"), subject to the terms therein, Comerica's security interest in the Prepetition Collateral is senior to the Subordinate Lender's security interest in the same (the "Peninsula Prepetition Liens", and together with the Comerica Prepetition Liens, the "Prepetition Liens").

K.      Under a Merchant Cash Advance Agreement dated March 10, 2023 ("MCA Agreement"), Diesel Funding LLC ("Diesel") advanced funds to Debtor characterized as a purchase from Debtor of certain future receivables.

L.      Auxo Investment Partners, LLC ("Auxo") acquired by purchase and assignment on June 2, 2023 as the successor in interest to the Prepetition Indebtedness owed by the Debtor to (i) Comerica under the Prepetition Loan Documents and (ii) Peninsula under the Subordinate Loan Documents.

M.    In order for Debtor to continue to operate its business, and preserve its goodwill and going concern value, it is necessary for Debtor to use cash collateral to enable it to pay normal operating expenses (including, without limitation, wages, salaries, insurance premiums, utilities, rent and taxes) and to purchase inventory and supplies, and pay accruing administrative expenses.

N.    Debtor has not been, and will continue to be unable, in the ordinary course of business or otherwise, to obtain unsecured credit under § 503(b)(1) of the Bankruptcy Code and needs use of cash collateral in order to continue its operations. The parties with an interest in cash collateral are willing to permit use of cash collateral by Debtor under § 363 of the Bankruptcy Code, subject to the terms of this Order.

Upon consideration of the above findings, which are incorporated into this Order, it is ORDERED:

1.    Debtor is authorized to use cash collateral, subject to the terms of this Order. The use of cash collateral will be governed by the Prepetition Loan Documents (which shall include but shall not be limited to the following documents: the Prepetition Revolving Note, the Guaranty, the Security Agreement, the Forbearance Agreement dated January 17, 2023 among Debtor, Guarantor and Comerica (the "Forbearance Agreement") and all other Prepetition Loan Documents), now held by Auxo, subject to the following modifications:

(a)     Debtor may use cash collateral to fund payment of expenses as and when budgeted, with a variance of up to 10% per line item allowed, provided the aggregate cumulative amount of expenditures does not exceed the aggregate budget, in the budget [filed on June 8, 2023 as an Exhibit to Docket No. 142] ("Final Budget"). Debtor will continue to maintain its Debtor-in-Possession account (collectively, the "Cash Collateral Account") at Comerica and Debtor may use ACH (provided that all ACH transactions are pre-funded) to make payments of budgeted expenses and shall have online access to view the account and process the ACH payments, and Comerica shall allow Debtor to deposit funds received electronically through Comerica. Collections received in the form of physical checks shall be deposited at Comerica through a branch; the Business Deposit Capture (BDC) treasury management service at Comerica shall no longer be available to Debtor. By the earliest of (a) confirmation of a Chapter 11 plan, (b) conversion of Debtor's case to Chapter 7, or (c) 60 days after entry of this Order, Debtor shall close its bank accounts maintained at Comerica and, if applicable, open a Debtor-in-Possession account at another approved financial institution.

(b)     Debtor's use of cash collateral for any particular line item in the Budget may not exceed the cumulative budgeted amount set forth in such line item. Debtor shall not use cash collateral except as provided in this Order. Debtor shall supply Auxo, the U.S. Trustee, the Committee and McLaren with an updated

Budget, and a reconciliation of postpetition performance to the Budget, not less often than once every week. If approved by Auxo, the U.S. Trustee, the Committee and McLaren in writing, Debtor's updated Budget shall become the "Budget" under this Order.

(c)     Debtor's ability to use cash collateral under this Order shall terminate on an uncured default by Debtor as described below ("Termination Date"), unless the Termination Date is extended by written stipulation of Auxo and Debtor.

(d)     Interest on the Prepetition Revolving Note shall continue to accrue at the non-default rate specified in the Prepetition Loan Documents.

(e)     Debtor shall supply financial information and information relating to the collateral as required by the Prepetition Loan Documents and at the request of Auxo, the U.S. Trustee, and the Committee.  Without limitation, Debtor shall deliver to Auxo, the U.S. Trustee and the Committee: (i) the information and reports required under the Forbearance Agreement and other Loan Documents; (ii) as and when filed, all reports and other documents and pleadings filed by Debtor with the Bankruptcy Court or the Office of the U.S. Trustee; (iii) a weekly cash flow statement and integrated projections, comparing actual receipts and disbursements to the projected receipts and disbursements set forth in the Budget; and (iv) on a weekly basis a report on Debtor's "Ending Supplies" and "Ending A/R" (as shown on Debtor's Weekly Cash Flow Forecast prepared on April 13, 2023).

(f)     All cash and cash equivalents which are now in or hereafter come into Debtor's possession shall be deposited in the Cash Collateral Account.

(g)     Guarantor ratifies and affirms his Guaranty.

(h)     It is a default under this Order if as of the end of any week, the sum of (i) Debtor's cash on deposit in the Cash Collateral Account at Comerica, plus (ii) an amount equal to the lesser of (A) the amount of Debtor's "Ending Supplies" or (B) $581,698, plus (iii) the amount of Debtor's "Ending A/R" is less than the sum of (x) the amount of Debtor's cash as of the Petition Date, plus (y) the amount of Debtor's "Ending Supplies" as of the Petition Date, plus (z) the amount of Debtor's "Ending A/R" as of the Petition Date.  For purposes of this covenant, in order to be consistent with the figure used to calculate "Ending A/R" as of the Petition Date, the expected collectible percentage of Debtor's accounts receivable used in calculating the "Ending A/R" as of any particular week subsequent to the Petition Date shall not be greater than 46%.

(i)     In the Forbearance Agreement, "Borrower is not required to deliver a Covenant Compliance Report for the quarter ending December 31, 2022" and shall continue to not have to deliver a Covenant Compliance Report pending further agreement between the parties.  Moreover, through the Cash Collateral Period, Debtor shall not be required to comply with the following financial covenants set forth in the Prepetition Loan Documents: (i) Interest Coverage Ratio;

(ii) Fixed Charge Coverage Ratio; (iii) Senior Debt to EBITDA Ratio; and (iv) Total Debt to EBITDA Ratio.

2. As adequate protection under § 363 of the Bankruptcy Code for Debtor's use of cash collateral and any diminution in value in other collateral to the extent of any diminution in the value of interest in Auxo's Prepetition Collateral, Auxo is granted a continuing and replacement security interest and lien to the same extent, validity and priority as existed on the Petition Date in all of the property of Debtor (collectively, the "Postpetition Collateral" and identified together with the Prepetition Collateral as the "Collateral"), including without limitation: (a) all of the following, whether now owned or existing or hereafter created or acquired, wherever located, together with all additions and accessions and all proceeds and products thereof: all accounts, accounts receivable, instruments, documents, drafts, notes, acceptances, chattel paper, general intangibles (including, without limitation, all goodwill, copyrights, patents, trademarks, trade names and franchises), software, contract rights, rights to payment evidenced by chattel paper, documents or instruments, deposit accounts, rights to payment for money or funds advanced or sold, causes of action, choses in action, commercial tort claims, letters of credit, letter of credit rights, supporting obligations, investment property or other property in possession or control of Auxo, all personal property received as returns and repossessions, all other forms of receivables, tax refunds of any form, all inventory,

including all goods held for sale and documents evidencing inventory, all equipment (together with spare and repair parts, special tools and equipment and replacements), the proceeds of credit and other forms of insurance coverage of any of the foregoing and all books and records pertaining to all of the foregoing; and (b) all interests in real property and fixtures; provided, however, that if Debtor's interest in any of the foregoing property as of the Petition Date was encumbered by a valid, binding and unavoidable lien senior to the prepetition lien held by Auxo, the lien on that property granted to Auxo under this Order shall be junior to such existing senior lien only (the "Postpetition Liens"); provided, however, claims under the avoidance provisions of §§ 544, 547, 548, 549 and 550 of the Bankruptcy Code (the "Chapter 5 Causes of Action") shall not be subject be part of the Collateral or otherwise subject to the Prepetition Liens or Postpetition Liens of Auxo.

3.     As adequate protection under § 363 of the Bankruptcy Code for Debtor's use of cash collateral and any diminution in value in other collateral to the extent of any diminution in the value of Peninsula's interest in its collateral, Auxo is granted a continuing and replacement security interest and lien in all of the Collateral to the same extent, validity and priority as existed on the Petition Date, provided, however, the Chapter 5 Causes of Action shall not be subject be part of the Collateral or otherwise subject to the Prepetition Lien or Postpetition Liens of Auxo.

4.     As adequate protection under § 363 of the Bankruptcy Code for Debtor's use of cash collateral and any diminution in value in other collateral, to the extent of any diminution in the value of Diesel's interest in its collateral, Diesel is granted a continuing and replacement security interest in all of Debtor's accounts receivable to the same extent, validity and priority as existed on the Petition Date; provided, however, Diesel's interest in Debtor's accounts receivable under this Order is junior to the liens and interests of Auxo; and provided, further, the Debtor and the Committee reserve the right to object to Diesel's asserted secured claim in the Debtor's accounts receivable.

5.     Auxo reserves the right in the event that the adequate protection provided to Auxo is insufficient to protect Auxo for Debtor's use of cash collateral or for a diminution in value of Auxo's other collateral, then to the extent that the automatic stay of § 362 of the Bankruptcy Code or Debtor's use of cash collateral or Auxo's other collateral results in any diminution in the value of Auxo's interest in Auxo's Prepetition Collateral, to seek to allow Auxo's claim to have priority under § 507(b) of the Bankruptcy Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) of the Bankruptcy Code, other than unpaid, budgeted administrative expenses, professional fees, and United States Trustee quarterly fees and paid administrative expenses, professional fees, and United States Trustee quarterly fees.  Auxo also reserves the right in the event

that the adequate protection provided to Auxo under the Subordinate Lender Documents is insufficient to protect Auxo for Debtor's use of cash collateral or for a diminution in value of Auxo's other collateral, then to the extent that the automatic stay of § 362 of the Bankruptcy Code or Debtor's use of cash collateral or Auxo's other collateral results in any diminution in the value of Auxo's interest in its collateral, to seek to allow Auxo's claim to have priority under § 507(b) of the Bankruptcy Code over all administrative expenses incurred in this Chapter 11 proceeding of the kind specified in § 503(b) of the Bankruptcy Code, other than budgeted and paid administrative expenses, professional fees, and United States Trustee quarterly fees (but junior to any claim of Auxo, including any § 507(b) claim of Auxo, and in all respects subject to the Senior Subordination Agreement). The foregoing provision shall not restrict nor provide for disgorgement of Debtor's payment of administrative expenses, including professional fees, to the extent such expenses are provided for in the Budget and a written notice of default have been tendered by Auxo, as provided for under Paragraph 15 of this Order.

6.     The security interest and lien granted to Auxo under this Order shall be evidenced by the entry of this Order, and except as otherwise provided herein, shall be deemed to be first, valid and perfected as against all third parties upon entry of this Order, without regard to applicable federal, state or local filing and recording statutes, as of the Petition Date, provided, however, that Auxo may take such steps

as it deems appropriate to comply with such recording statutes and Debtor shall execute and deliver such additional documents and shall take any and all additional action to comply with such recording statutes as Auxo may request. At Auxo's discretion, it may attach this Order to financing statements bearing Debtor's name as the debtor and file them with any state or local office to further evidence the liens granted hereby without the signature of Debtor.

7. Subject to 11 U.S.C. § 506, Auxo's secured claim shall include all reasonable fees and out-of-pocket disbursements incurred by Auxo, in any way arising from or in connection with this Order, including, without limitation, the reasonable fees of counsel for Auxo for the preparation, examination and approval of this Order, for the payment of all fees and out-of-pocket disbursements incurred by Auxo, including reasonable attorney fees or consultant fees incurred by Auxo, in any way arising from or in connection with any action taken by Auxo to monitor, advise, enforce or collect the Prepetition Indebtedness, or enforce any obligations of Debtor under this Order, the Prepetition Loan Documents or any other document or agreement arising from or relating to the business relationship between Auxo and Debtor, including any actions to lift the automatic stay or otherwise in any way participate in this bankruptcy proceeding. Subject to 11 U.S.C. § 506, Auxo's secured claim shall also include such fees and disbursements of Auxo for any defense of any litigation instituted by Debtor, Guarantor or any third party against

Auxo arising from or relating to the Prepetition Indebtedness, this Order, the Prepetition Loan Documents or the business relationship among Debtor, Guarantor, or any of them, and Auxo. Payment of such fees and expenses shall be made pursuant to line items in the Budget, upon stipulation of Debtor, Auxo, the Committee and the U.S. Trustee or upon further Court order.

8.     The terms of this Order constitute a "finding of fact" as to the "adequate protection necessary" for Debtor's use of both cash and non-cash Prepetition Collateral of Auxo under § 363 of the Bankruptcy Code. This Order is in lieu of all further hearings on the issue of adequate protection with respect to Auxo. The Court also finds that Auxo is acting in good faith.

9.     In consideration for the agreement of Auxo to entry of this Order, and the agreements of Peninsula and Comerica to sell their loans to Auxo, Debtor and Guarantor (each, a "Releasing Party") fully and forever remise, release and discharge Auxo, Peninsula and Comerica, and each and all of their respective parent, subsidiary and affiliated corporations, companies and divisions together with its or their respective predecessors, successors and assigns, and each and all of their respective directors, officers, employees, attorneys, accountants, consultants and other agents (collectively, "Releasees"), of and from any and all claims, demands, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, accounts, damages, judgments, losses, liabilities and

defenses, of whatsoever kind or nature, in law, equity or otherwise, whether known or unknown, whether concealed or hidden, which any Releasing Party has had, may have had or now has, or which any of its predecessors, successors or assigns hereafter can, shall or may have, for or by reason of any matter, cause or thing whatsoever, whenever arising, to and including the date this Order is entered, concerning (a) claims arising from or in any way related to this Order, the Prepetition Indebtedness, the Prepetition Loan Documents or the business relationship among Debtor, Guarantor and Auxo or Comerica or Peninsula, and (b) claims under the avoidance provisions of §§ 544, 547, 548, 549 and 550 of the Bankruptcy Code that exist as of the date of the entry of this Order. Debtor and Guarantor admit that they have no defenses, offsets or counterclaims with respect to the payment of any sum owing to Auxo, with respect to the validity or enforceability of the Prepetition Loan Documents, or with respect to the Prepetition Indebtedness as of the date of the entry of this Order. In addition, Debtor and Guarantor irrevocably waive any right, without the prior written consent of Auxo, (a) to grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens or security interests in any Collateral, whether senior, equal or subordinate to Auxo's liens and security interests; (b) or to modify or affect any of the rights of Auxo under this Order or the Prepetition Loan Documents by any plan of reorganization confirmed in these cases or subsequent Order entered in these cases.

10.     Defaults have occurred under the Prepetition Loan Documents.  Except as provided under this Order, Debtor and Guarantor, to the fullest extent allowed under applicable law, waive all notices that Auxo might be required to give but for this waiver, including any notices otherwise required under Section 6 of Article 9 of the Uniform Commercial Code as enacted in the State of Michigan or other relevant state (the "UCC") concerning the Collateral.  Furthermore, Debtor and Guarantor waive (a) the right to notification of disposition of the Collateral under § 9-611 of the UCC, (b) the right to require disposition of the Collateral under § 9-620(e) of the UCC and (c) all rights to redeem any of the Collateral under § 9-623 of the UCC.

11.     Debtor shall keep the Collateral maintained by sufficient insurance coverage reasonably acceptable to Auxo, with Auxo named as the mortgagee, loss payee and/or additional insured on all such policies.

12.     Debtor shall provide Auxo, the Committee and the U.S. Trustee, and their respective attorneys, accountants, employees and agents with access to Debtor's books and records for the purpose of audit, examination and inspection thereof, and observation of Debtor's operations, and shall provide all reasonable information and documents requested by Auxo, the Committee and the U.S. Trustee, and their designated agents, subject to any applicable privileges.  Auxo, the Committee and the U.S. Trustee, and their respective attorneys, accountants, employees and agents shall have the right to enter Debtor's business premises during

reasonable business hours for the purpose of examining and appraising Auxo's Collateral. Subject to 11 U.S.C. § 506, Auxo's secured claim shall include the reasonable costs of any audit requested or performed by Auxo.

13. The covenants and other terms of this Order in favor of Auxo are for the sole benefit of Auxo; Auxo, in its sole discretion, may in writing waive any such covenant or term.

14. In the event that Debtor defaults in performance of any of its obligations under this Order or under the Prepetition Loan Documents (excluding existing defaults under the Prepetition Loan Documents) of which Auxo has been notified in writing, or upon the entry of an order dismissing this case, appointing a trustee in this case, converting this case to a case under Chapter 7 of the Bankruptcy Code, or transferring the venue of this case to another district, Debtor's right to use cash collateral under this Order and the Prepetition Loan Documents shall terminate, Debtor shall segregate and account for all cash collateral then in its possession or control, and Auxo shall have the right to apply for relief from the stay under § 362 of the Bankruptcy Code; provided, however, Auxo shall provide Debtor, with a copy to the Committee, with two (2) business days' notice of default in writing and the opportunity to cure such default prior to seeking relief from the stay under § 362 of the Bankruptcy Code. Any such application by Auxo may be scheduled for an expedited hearing on two (2) business days' notice without objection by any of the

parties who stipulated to entry of this Order (or as soon thereafter as practicable, depending on the Court's schedule and availability) and at such hearing, Debtor shall have the right to contest the existence of a default.

15.    The Prepetition Liens, the Postpetition Liens and the adequate protection granted to Auxo under this Order shall, in any event, in all cases be subject and subordinate to a carve-out (the "Carve-Out"), which shall be comprised of the following: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) (which will be paid in full and not be subject to distribution pari passu with administrative expenses), (ii) subject in all cases to the limitations set forth in the Prepetition Loan Documents and to Court approval, the sum of (A) and (B), where (A) is the aggregate amount of the Debtor's professional fees and disbursements which have been incurred, accrued, or invoiced (but remain unpaid) prior to the date on which Auxo provides written notice that an Event of Default has occurred and has triggered the Carve-Out (a "Carve Out Trigger Notice") for any professional retained by an order of the Court under Sections 327 or 328 of the Bankruptcy Code, and (B) is the aggregate amount of fees and disbursements of the Debtors' retained professionals accrued after delivery of the Carve Out Trigger Notice, up to $150,000.00 (which will be paid in full and not be subject to distribution pari passu with administrative expenses), and (iii) subject in all cases to the limitations set forth in the Prepetition Loan Documents and to Court

approval, the sum of (C) and (D), where (C) is the aggregate amount, of the Committee's professional fees and disbursements which have been budgeted and incurred, accrued or invoiced (but remain unpaid) prior to the receipt by the Committee of a Carve Out Trigger Notice for any professional retained by an order of the Court under Section 1102 of the Bankruptcy Code, and (D) is the aggregate amount of fees and disbursements of any Committee's retained professionals budgeted or accrued after delivery of the Carve Out Trigger Notice, up to $150,000 (which will be paid in full and not be subject to distribution pari passu with administrative expenses). The Carve Out granted hereunder (i) covers all Collateral, including prepetition, postpetition and post-conversion, (ii) subordinates Auxo's liens to the professional fees of Debtor and the Committee awarded at any time by the Court, and (iii) survive conversion of this case to chapter 7. The Carve Out shall be paid to Debtor's professionals and the Committee's professionals. Notwithstanding the foregoing, so long as a Carve Out Trigger Notice has not been provided, Debtor is permitted to pay, subject to and in accordance with the Budget, administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable. At closing of the sale of substantially all of the assets of Debtor, Auxo shall pay the remaining amount of the Carve Out due to the Debtor professionals and the Committee professionals. All Carve Out amounts paid for fees required to be paid to the Clerk of the Court and to

the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) (which will be paid in full), and for approved fees and expenses of the Debtor professionals and the Committee professionals shall be held in a segregated DIP account to be opened by Debtor within 7 business days of entry of this Order and for which Debtor's Financial Advisor Russell Long will be made an additional signatory (the "DIP Professionals Account"), pending application to and approval of their fees by the Court under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In the event of a liquidation of the Debtor estate other than by a sale of substantially all of the assets of Debtor, an amount equal to the Carve-Out shall be reserved from the proceeds of such liquidation, or from the proceeds of Auxo's collateral, with such proceeds or cash to be held in the DIP Professionals Account, prior to the making of any distributions.  All distributions and withdrawals from the DIP Professionals Account shall require 2 signatures.

16.     Notwithstanding anything in this Order to the contrary, to the extent that there are items set forth in the Budget from the furnishing of goods or services to the Debtor prior to the date substantially all of Debtor's assets are sold or this case is converted to a Chapter 7 proceeding (other than professional fees addressed in paragraph 16, above) which have not been paid as of such date, Auxo shall fund such budgeted amounts to pay such incurred claims such that all budgeted, allowed Chapter 11 administrative claims are paid in full.

17.     The Budget provides that McLaren shall receive a weekly payment of $13,035 per week, which shall be allocated as follows: (i) up to $7500 to be applied to current, weekly laboratory fees, which weekly laboratory services shall not exceed fees of $7,500 per week, and (ii) the balance shall be applied to the accrued but unpaid postpetition laboratory fees owed to McLaren. In the event Debtor determines that it needs to contract with McLaren for an amount greater than $7,500 in any given week, Debtor may do so, provided that such additional amount is paid by the following week, in addition to the presently weekly budgeted amount of $13,035. In the event this budgeted amount does not satisfy the Debtor's post-petition accrued administrative expenses to McLaren, Auxo agrees to satisfy any unpaid amount in accordance with paragraph 16 of this Order, as if same were specifically budgeted.

18.     The provisions of this Order, which shall be immediately effective upon entry, and any actions taken under this Order, shall survive entry of, and shall govern with respect to, any conflict with any order which may be entered subsequently, and the terms and provisions of this Order, as well as the liens and security interests under the Prepetition Loan Documents, this Order, and all rights of Auxo and obligations of Debtor created or arising under this Order, shall continue in these proceedings or any superseding proceedings under the Code, and such liens and security interests shall maintain their priority as provided by this Order until satisfied

and discharged. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other court, such stay, modification or vacation shall not affect: (a) the validity of any adequate protection granted to Auxo under this Order; (b) the validity and enforceability of any lien or priority authorized for the benefit of Auxo; or (c) the conduct of Auxo with respect to the rights granted to Auxo in this Order prior to the effective date of such stay, modification or vacation, and notwithstanding such stay, modification or vacation, such adequate protection, liens and rights shall be governed in all respects by the original provisions of this Order and Auxo shall be entitled to all those rights, privileges and benefits.

19.    Debtor shall serve a copy of this Order and the Stipulation within 24 hours after entry of this Order under Bankruptcy Rule 4001(d) and Local Bankruptcy Rule (EDM) 4001-2.

Signed on June 9, 2023



/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**