UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ARK LABORATORY, LLC,

        Debtor.

_____/

Chapter 11
Case No. 23-43403
Hon. Maria L. Oxholm

**OBJECTION OF MCLAREN MEDICAL LABORATORY
TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §§105(a) AND 363**

McLaren Medical Laboratory ("McLaren"), a subsidiary of McLaren Health Care Corporation, by its undersigned counsel, states its Objection to the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§105(a) and 363 pursuant to *Debtor's Motion to Approve (1) Bidding Procedures and Form of Asset Purchase Agreement Relating to Sale of Substantially All of the Debtor's Assets: (2) the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§205(a) and 363; (3) Assumption and Assignment of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C.*

*§365; and (4) Granting Related Relief* [ECF Doc. No. 145] (the "Motion") as follows:

1.      McLaren and the Debtor are parties to a certain Laboratory Services Agreement dated August 23, 2021(the "Agreement").  Pursuant to the Agreement, McLaren provides to the Debtor, on a daily basis, certain clinical and anatomic pathology diagnostic testing services (the "Services").

2.      The Agreement is listed in the Motion on page 83 of 136 as a contract to be assumed and assigned by the Debtor.

3.      On July 10, 2023, Debtor filed its *Motion of Debtor to Reject Certain Executory Contracts and Unexpired Leases, and for Related Relief* [Doc. No. 154] (the "Rejection Motion"), wherein it has now indicated that it will reject the Agreement.  McLaren filed an Objection to the Rejection Motion [Doc. No. 165], as, per the proposed order, it appears that Debtor and Purchaser seek to have the benefits of rejecting the Agreement without the requirement to cure any deficiencies.

4.      As is typical, the sale procedures proposed by the Motion provide for a Stalking Horse Bidder.  Here, the Stalking Horse Bidder is Auxo Investment Partners, LLC ("Auxo"), who apparently has a first perfected lien in all of the Debtor's assets after purchasing Comerica Bank's and The Peninsula Fund VII Limited Partnership's secured positions.

5.      As Stalking Horse Bidder, Auxo entered into an Asset Purchase Agreement (the "APA") with the Debtor, a copy of which is attached to the Motion as Exhibit A.   Among other things, the APA sets forth a purchase price of $6,410,000.00, plus amounts necessary to pay all executory contract cure amounts (the "Cure Amounts"), and to fund a Carve Out, as discussed below (the "Purchase Price").[1]

6.      Pursuant to Section II.3 of the APA (page 33 of 136), Auxo may pay the Purchase Price via a "credit in the amount of the Purchase Price against the Debtor-in-Possession financing Buyer obtained from Comerica, the full debt, secured and unsecured of Peninsula…."

7.       As set forth in Schedule B of the APA (beginning on page 69 of 136), all of the Debtor's assets (the "Assets") are being sold to Auxo (or whomever the winning bidder is), including the Debtor's account receivables.

8.      Attached to the Motion as an exhibit at page 102 of 136 is the Debtor's proposed sale order (the "Sale Order").   Among other things, the Sale Order provides, in paragraph 13, that the Carve Out shall be transferred to the DIP Professionals Account as defined in the *Stipulated Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection* [Doc. No. 144] (the "Final Cash Collateral Order").   The Carve Out consists of (a) all fees required to be paid to the

---

[1] Although the Purchase Price is numerically set forth as $6,376,908.51.

Clerk of the Court and to the U.S. Trustee, calculated at $111,000.00, and (b) amounts due to the Debtor's Professionals and the Committee's Professionals under the Final Cash Collateral Order.

9.  While it is not completely clear from the Motion, APA, and Sale Order, McLaren presumes that, should it result that Auxo purchases the Assets, the only cash the Debtor receives will be limited to the amounts necessary to satisfy the Carve Out and Cure Amounts, as the remainder of the Purchase Price will be satisfied via a credit against the amounts owed to Auxo.

10. The proposed sale is problematic for a number of reasons.  First, the Sale Order does not address any unpaid post-petition administrative expenses other than those of the Clerk of the Court, the U.S. Trustee, and the Debtor's and Committee's professionals. While McLaren does not know the extent of the Debtor's unpaid administrative expenses to date, the Debtor has accrued significant post-petition liabilities to McLaren.   The Debtor has continued to utilize McLaren's services during the course of this proceeding which has aided the Debtor in generating the receivables that the Debtor proposes to sell to Auxo.  As of July 17, 2023, the Debtor owes McLaren approximately $160,287.29 for post-petition services rendered. Additionally, McLaren estimates an additional $20,000.00 in

unbilled testing was performed at the Debtor's request, and without the requisite

payment. [2]

11.     While McLaren doesn't object to use of the sale proceeds to pay the

Clerk of the Court, the U.S. Trustee, and the Debtor's and Committee's

Professionals, McLaren notes that Paragraph 16 of the Final Cash Collateral Order

provides as follows:

> Notwithstanding anything in this Order to the contrary, to the extent
> that there are items set forth in the Budget from the furnishing of goods
> or services to the Debtor prior to the date substantially all of Debtor's
> assets are sold or this case is converted to a Chapter 7 proceeding (other
> than professional fees addressed in paragraph 16 [sic], above) which
> have not been paid as of such date, Auxo shall fund such budgeted
> amounts to pay such incurred claims such that all budgeted, allowed
> Chapter 11 administrative claims are paid in full.

12.     Post-petition payments to McLaren were in fact budgeted and provided

for in the following paragraph of the Final Cash Collateral Order (Paragraph 17) and

the Budget filed in support of the same [Doc. No. 142].    Paragraph 17 states:

> The Budget provides that McLaren shall receive a weekly
> payment of $13,035 per week, which shall be allocated as follows: (i)
> up to $7500 to be applied to current, weekly laboratory fees, which
> weekly laboratory services shall not exceed fees of $7,500 per week,
> and (ii) the balance shall be applied to the accrued but unpaid
> postpetition laboratory fees owed to McLaren.  In the event Debtor
> determines that it needs to contract with McLaren for an amount greater
> than $7,500 in any given week, Debtor may do so, provided that such
> additional amount is paid by the following week, in addition to the
> presently weekly budgeted amount of $13,035.  In the event this

---

[2] There is an approximately seven-day lag time for the testing provided to catch up
with the billings.

budgeted amount does not satisfy the Debtor's postpetition accrued administrative expenses to McLaren, Auxo agrees to satisfy any unpaid amount in accordance with paragraph 16 of this Order, as if same were specifically budgeted.

13.     Thus, for the 6-week period from June 5, 2023 until July 14, 2023, McLaren was to receive no less than $78,210.00, with the assurance that additional unpaid amounts would be covered pursuant to the Final Cash Collateral Order.   It was on this basis that McLaren agreed to continue to work with the Debtor.

14.     The Sale Order should comply with the Final Cash Collateral Order and require Auxo to pay the budgeted administrative expenses, or otherwise require that accounts receivable be retained by the Debtor sufficient to satisfy the budgeted administrative expenses.

15.     Like the Debtor and Committee Professionals, McLaren's post-petition services (i) were budgeted for and were to be paid out of Auxo's collateral, (ii) were essential to the Debtor's continued operations, and (iii) created value to support a sale of the Assets.  It is therefore unreasonable and unfair for the Debtor's and Committee's Professionals to be paid with sale proceeds while, McLaren remains uncertain that it will be paid at all.

16.     The sale should be conditioned on the full payment of the administrative expenses owed to McLaren.  And, if sale proceeds and/or retained account receivables cannot be utilized for this purpose, McLaren asserts that any unused portion of the Carve Out must be used to pay McLaren.

17.     In addition to the foregoing, should the purchaser of the Assets elect to assume the Agreement, McLaren objects to certain provisions of the Sale Order because they may operate to limit payment of the full Cure Amount due a contract counter-party.

18.     Paragraph 14 of the Sale Order states:

> The Purchaser shall be responsible for curing all allowed pre-petition monetary and non-monetary defaults relating to the Assigned Contracts. Pursuant to Section 365 of the Bankruptcy Code, the Debtor is authorized to assume the Assigned Contracts designated in the Agreement, cure the same (in the Cure Amounts set forth in the notice relating to such contracts or by further order of the Court) and assign same to Purchaser.

19.     Cure Amounts must include all amounts due under the Assigned Contracts, whether due pre-petition or post-petition.  Or else, the Purchase Agreement and the Sale Order should specifically provide that any post-petition obligations that remain unpaid at the time of the sale will be the obligation of and paid by the Purchaser pursuant to contract/invoice terms.  Absent this provision, between the provisions of Sale Order at Paragraph 15 ("Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and Assumption by the Purchaser") and Paragraph 16 ("Purchaser shall have no liability or obligation arising or accruing under the Assigned Contracts prior to the Closing Date, except as otherwise expressly provided in the Agreement")  contract

counter-parties who have unpaid post-petition/administrative expenses could find that those amounts will remain unpaid.

20.     Moreover, Paragraph 17 of the Sale Order states "provided that the Purchaser pays the applicable Cure Amount, each nondebtor party to an Assigned Contract hereby is forever barred from asserting against Purchaser or the Purchased Assets, any default existing as of the Closing Date or any counterclaim, defense, setoff, or any other claim asserted or assertable [sic] against the Debtor as of the Closing Date."

21.     All of these provisions, when taken together, limit the recovery or payment of the full Cure Amount that may be due to a contract counter-party.

WHEREFORE, McLaren requests that the Sale be denied unless (1) as a condition of the Sale, Purchaser pays the budgeted and accrued expenses of administration to McLaren; or (2) accounts receivable of the Debtor are retained by the Debtor for the specific purpose of paying the accrued and unpaid administrative expenses of McLaren. Further, McLaren requests that any amount remaining from the Carve Out that is not utilized for payment of allowed professional fees or payment to the U.S. Trustee be paid to McLaren.

Respectfully submitted,

MADDIN, HAUSER, ROTH & HELLER, P.C.

By: */s/ Julie Beth Teicher*
      Julie Beth Teicher (P34300)
      David M. Eisenberg (P68678)
      Mariel G. Newhouse (P85473)
      Attorneys for McLaren Medical Laboratory
      28400 Northwestern Hwy., 2nd Floor
      Southfield, MI  48034
      (248) 354-4030
      jteicher@maddinhauser.com
      deisenberg@maddinhauser.com

Dated:  July 27, 2023