UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Ark Laboratory, LLC            Case No. 23-43403-MLO
                                   Chapter 11

      Debtor.                   Hon. Maria L. Oxholm
_____/

**COMBINED DISCLOSURE STATEMENT**
**AND PLAN OF LIQUIDATION OF ARK LABORATORY, LLC**

**IMPORTANT! THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT ARK LABORATORY, LLC's JOINT PROPOSED PLAN OF LIQUIDATION. THUS, PLEASE READ THIS DOCUMENT WITH CARE.**

1

NOW COMES, Ark Laboratory, LLC (the "<u>Debtor</u>"), through counsel, and states as follows:

## INTRODUCTION TO PLAN

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, the Debtor proposes the following Plan pursuant to Chapter 11 of the Bankruptcy Code.

The Plan is a liquidating plan. Debtor filed a motion to sell substantially all of its assets in a Bankruptcy Court approved Sale. The Plan provides for the distribution of certain proceeds from the Sale and the creation of a Liquidating Trust that will administer all remaining property of the Debtor, including the Avoidance Actions and the Covid Testing Claims. If the Sale has not been consummated prior to the Effective Date, the Sale may occur and be consummated by the Liquidating Trustee, after consultation with Auxo. The Plan provides that the Committee shall be reconstituted on the Effective Date as the Post-Confirmation Committee.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.** **Rules of Interpretation**

1. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be part of or to affect the

2

interpretation hereof; (g) the rules of construction set forth in section 103 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## B.      Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "Accrued Professional Compensation" means, at any given moment, all accrued and/or unpaid fees and expenses (including, but not limited to, fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under, inter alia, sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise rendered prior to the Effective Date by all Retained Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Retained Professional's fees or expenses, then those amounts shall be turned over to the Liquidating Trustee for payment of professional fees incurred by the Liquidating Trustee in administering the Liquidating Trust.

2.      "Administrative Claims" means Claims or rights to payment as an administrative expense that have been timely filed, pursuant to the deadline and procedure set forth in the Plan (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) or 507(b) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.   For purposes of clarification, administrative expenses are Administrative Claims for purposes of the Plan.

129020580v2
128957553v4

3.     "Administrative Claims Bar Date" is a date to be set by the Court pursuant to a motion to be filed by Debtor which will propose that the deadline to file motions for the payment of administrative expenses be forty-five (45) days from entry of an order by the Court establishing a deadline for filing a motion for allowance of an Administrative Claim arising on or before the Administrative Claims Bar Date.  For claims arising after the Administrative Claims Bar Date and prior to confirmation, the Administrative Claims Bar Date for such administrative expenses shall be thirty (30) days after the Effective Date, subject to a motion filed with the Bankruptcy Court and served on the Liquidating Trustee.

4.     "Allowed" means, with respect to any Claim (including Administrative Claim) or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtor in the Schedules as other than Disputed as to which the Debtor or other party in interest has not filed an objection by the applicable bar date established under the Plan or the Liquidating Trust; (b) a Claim or Equity Interest that either is not Disputed or has been Allowed by a Final Order; (c) a Claim or Equity Interest that is Allowed: (i) in any stipulation and order approved by the Bankruptcy Court, or (ii) in any stipulation with the Liquidating Trustee executed on or after the entry of a Final Confirmation Order; (d) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (e) a Disputed Claim as to which a proof of Claim or request for allowance has been timely filed and as to which no objection has been timely filed.

5.     "Allowed Amount" means the agreed upon or adjudicated amount of an Allowed Claim.

6.     "Auxo" means Auxo Investment Partners, LLC, as successor in interest to Comerica and Peninsula.

7.     "Avoidance Actions" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542-553 of the Bankruptcy Code.

8.     "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

9.     "Bankruptcy Rules" or "Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

10.     "Beneficiary" or "Beneficiaries" or "Liquidating Trust Beneficiary or Liquidating Trust Beneficiaries" mean(s) the holder of an Allowed Claim or Interest that receives a beneficial interest in the Liquidating Trust in accordance with the Plan.

11.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed.R.Bankr.P. 9006(a)).

12.     "Carveouts" means that amount Auxo has agreed to carve out from its collateral pursuant to orders of the Court for the payment of (i) Accrued Professional Compensation, (ii) United States Trustee Fees, (iii) Allowed Administrative Expenses that have not been paid prior to the Effective Date, (iv) Allowed Priority Claims that have not otherwise been paid prior to the Effective Date, and (iv) the cost of an E&O Insurance Policy for the Liquidating Trustee.

13.     "Cash" means legal tender of the United States of America or the equivalent thereof.

14.     "Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, including, but not limited to, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code, including Avoidance Actions and those actions set forth on **Exhibit B** to this Plan, in the Plan Supplement or that may be pending on the Confirmation Date,  assigned to Liquidating Trustee on the Confirmation  Date, or instituted by the Liquidating Trustee after the Confirmation Date against any entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

5

15. "Chapter 11 Case" means the case commenced when the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, under Case Number 23-43403.

16. "Claim" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtor, and administrative expenses.

17. "Claims Objection Bar Date" means the bar date for objecting to proofs of Claim or administrative expense Claims. The bar date for objecting to prepetition claims shall be nine (9) months days after the Effective Date; provided, however, that the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court. Administrative Claims have a different bar date as set forth herein.

18. "Class" means a class of holders of Claims or Interests described in Article III of this Plan.

19. "CMS" means Centers for Medicare and Medicaid Services.

20. "Comerica" means Comerica Bank, N.A.

21. "Committee" means the Official Committee of Unsecured Creditors that was appointed by the U.S. Trustee pursuant to section 1102(a)(1) of the Bankruptcy Code in this Chapter 11 Case.

22. "Confirmation Date" means the date that the Confirmation Order is entered.

23. "Confirmation Hearing" means the hearing on the confirmation of the Plan.

24. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25. "Covid Testing Claims" means those outstanding Covid-19 testing claims with each of the Debtor's health insurance providers and governmental entities that are being pursued by Special Counsel.

26. "Credit Bid" means the $2,000,000 amount bid for substantially all of the assets pursuant to the Sale Motion, as modified.

6

27.  "Debtor" means Ark Laboratory, LLC.

28.  "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent: (b) as to which Debtor or another party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by Debtor or a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

29.  "Distribution" means any distribution pursuant to the Plan and the Liquidating Trust to the holders of Allowed Claims or pursuant to Bankruptcy Court Order.

30.  "Distribution Amount" means the amount of a distribution made to holders of Allowed Claims entitled to receive Distributions in accordance with the terms and provisions of this Plan and the Liquidating Trust Agreement

31.  "Distribution Date" means the date upon which a Distribution is made by the Liquidating Trustee in accordance with the Plan to holders of Allowed Claims entitled to receive Distributions under the Plan or under the Liquidating Trust Agreement.

32.  "Distribution Reserve" means those accounts that may be established by the Liquidating Trustee with sufficient income to pay holders of Disputed Claims if such Disputed Claims become Allowed Claims.

33.  "Distribution Schedule" means the payments set forth in ARTICLE II TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN, and ARTICLE III, SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN of the Plan.

34.  "Effective Date" means the first date that is a Business Day after the Confirmation Order becomes a Final Order.

35.  "Entity" includes any and all persons as defined in 11 U.S.C § 101(15), estates, trusts, governmental units, and the United States Trustee.

36.   "Equity Interest" or "Interest" mean(s) any equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to: (a) any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal contractual or equitable rights to purchase or acquire such interests at any time; and (b) any preferred equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of preferred stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

37.   "Estate" means the estate of the Debtor created on the Petition Date by, inter alia, section 541 of the Bankruptcy Code.

38.   "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

39.   "Grossi" means Jim Grossi, the principal and sole member of the Debtor and the person authorized to perform the duties of the debtor in possession during the Chapter 11 Case.

40.   "Initial Distribution Date" means the first Distribution Date following the Effective Date, as set by the Liquidating Trustee.

41.   "IRS" means the Internal Revenue Service.

42.   "IRS Claim" means that proof of Claim [Claim No. 17-1] filed by the Internal Revenue Service asserting, inter alia, a Priority Tax in the amount of $2.0 million or any amended proof of Claim filed by the Internal Revenue Service.

43.   "Lien" means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

8

44. "Liquidating Trust" means the trust created pursuant to the Liquidating Trust Agreement which will be part of the Plan Supplement.

45. "Liquidating Trust Agreement" means that agreement approved under the Plan through entry of the Confirmation Order by which the Liquidating Trustee is appointed to administer the Liquidating Trust.

46. "Liquidating Trustee" means Paul R. Hage, the Liquidating Trustee under the Liquidating Trust, who is being appointed pursuant to this Plan or any Successor Trustee as defined by and provided for under the Liquidating Trust Agreement.

47. "Other Priority Claims" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

48. "Peninsula" means The Peninsula Fund VII Limited Partnership,

49. "Petition Date" means April 12, 2023.

50. "Plan" means this plan of liquidation, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement (if any), which is incorporated herein by reference.

51. "Plan Supplement" includes the compilation of documents and forms of documents, schedules and exhibits to be filed prior to the hearing at which the Bankruptcy Court considers whether to confirm the Plan, comprising of, without limitation, the following documents: (a) the Liquidating Trust Agreement; (b) the list of preserved Causes of Action; and (c) the list of executory contracts to be assumed.

52. "Post-Confirmation Committee" means the reconstituted Committee that is willing to serve after the Confirmation Date to advise and to consult with the Liquidating Trustee.

53. "Priority Tax Claims" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

54.  "Priority Claim" means a Claim under or entitled to priority under section 507(a) of the Bankruptcy Code.

55.  "Priority Creditor" means a Creditor who asserts a Priority claim.

56.  "Professional Fee Escrow Account" means that account established by the Debtor under the Final Cash Collateral Order [ECF No. 144] and First Amended Cash Collateral Order [ECF No. ___] in the aggregate amount of $600,000 for the payment of Accrued Professional Compensation to the Retained Professionals, with $350,000 being allocated to the Committee Retained Professionals and $250,000 being allocated to the Debtor Retained Professionals, fifty percent (50%) of which shall be funded by Auxo by September 28, 2023 and fifty percent (50%) of which shall be funded by Auxo by December 1, 2023. To the extent that any amounts remain in the Professional Fee Escrow Account after all Accrued Professional Compensation is approved by Final Order of the Bankruptcy Court, such remaining amounts shall be transferred to the Liquidating Trustee for payment of professional fees and expenses incurred by the Liquidating Trustee and his professionals in administering the Liquidating Trust, including the prosecution of Causes of Action assigned to the Liquidating Trust.

57.  "Qui Tam Complaint" means that complaint filed by the United States of America against the Debtor and Grossi, alleging violations under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the Michigan Medicaid False Claims Act, MCL 400.601 *et seq.*

58.  "Remaining Assets" means those assets of the Estate that are not transferred by the Sale, and, thus, ownership of which shall be vested in the Liquidating Trust on the Effective Date.

59.  "Representatives" means with regard to an Entity, its officers, directors, employees, advisors, attorneys, professionals, including Retained Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, agents, members and professionals).

60.  "Retained Professional" means a person or entity employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code, to be compensated for services rendered prior to the Effective Date, pursuant to sections 327-331 of the Bankruptcy Code.

10

61.  "Sale" means the Debtor's Motion to Approve (I) Bidding Procedures and Form of Asset Purchase Agreement Relating to Sale of Substantially All of the Debtor's Assets; (2) The Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 105(A) and 363; (3) Assumption and Assignment of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (4) Granting Related Relief [ECF No. 145].

62.  "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtor in the Chapter 11 Case, as may be amended from time to time.

63.  "Secured Claim of Auxo" means the Allowed Claim of Auxo (as reflected in the proofs of Claim filed by Comerica and Peninsula, plus such amounts advanced by Auxo to provide funding to the Debtor during the Chapter 11 Case, less the Credit Bid.

64.  "Secured Claims" means: (a) Claims that are secured by a lien on property in which the Estate has an interest, to the extent of the value of the Claim holder's interest in the Estate's interest in such property, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, as determined pursuant to the Bankruptcy Code, including Allowed Setoff and Recoupment Claims, and (b) Claims which are Allowed under the Plan as a Secured Claim.

65.  "Setoff and Recoupment Claims" means Allowed Claims that are (a) subject to setoff under section 553 of the Bankruptcy Code, and (b) recoupment claims arising under contracts with the Debtor arising before the Effective Date.

66.  "Special Counsel" means Amy Thomas, Esq. and Only One Hub d/b/a Primus Health, appointed by the Court.

67.  "USA" means the United States of America.

68.  "U.S. Trustee" means Office of the United States Trustee.

69.  "U.S. Trustee Fees" means those statutory fees owed to the U.S. Trustee under 28 U.S.C. § 1930(a)(6).

129020580v2
128957553v4

70.     "Unsecured Claim" means a Claim that is not a Secured Claim, an Administrative Claim nor a Priority Claim.

71.     "Unsecured Creditor" shall mean any Creditor that holds an Unsecured Claim.

**ARTICLE II**
**TREATMENT OF CLAIMANTS NOT SUBJECT TO**
**CLASSIFICATION OR OTHERWISE NOT REQUIRED**
**TO VOTE FOR OR AGAINST THE PLAN**

For the purposes of approval and implementation of this Plan and the resultant liquidation of the Debtor, Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below.

2.1     **ADMINISTRATIVE EXPENSES.**  It is estimated that there are approximately $1,170,477 in unpaid Administrative Claims that have been asserted against the Debtor's estate, exclusive of United States quarterly fees and Accrued Professional Compensation.  Unless paid prior to the Effective Date, the Allowed Administrative Claims shall be paid the full amount of their Allowed Claims, on such date as may be mutually agreed upon between Liquidating Trustee and the holder of the Administrative Claim, or, if no such date is agreed upon, the latest of (i) thirty (30) days after the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between Debtor and the holder of such Administrative Claim, (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving Debtor's payment of such Allowed Administrative Claim, or (iv) by the Liquidating Trustee upon entry of an order approving the allowance and payment of such Administrative Claim.  The amounts owed to the United States Trustee prior to the Effective Date shall be paid as they come due, but in no event, no later than thirty (30) days after the Effective Date, and sufficient monies shall be escrowed by the Liquidating Trustee for the payment of such amounts that come due after the Effective Date.

The Administrative Expenses shall also include the Accrued Professional Compensation that shall be paid from the Professional Fee Escrow Account upon the entry of a Final Order approving the Accrued Professional Compensation.  If there are insufficient funds in the Professional Fee Escrow Account to pay the

12

Allowed amount of the Accrued Professional Compensation, then the remaining Allowed amount shall be paid from the proceeds of the Causes of Action.

2.2    **PRIORITY CLAIMS.**    Priority Creditors entitled to receive priority for their Allowed Claim under section 507(a) of the Bankruptcy Code shall be paid upon the later of thirty (30) days after the Effective Date or when such claims are Allowed.

**ARTICLE III**
**SPECIFICATION OF TREATMENT OF**
**CLASSES OF CLAIMS OR INTERESTS**

The Plan divides Claims and Interests into Classes and treats them as follows, all of which are impaired unless noted:

| Class | Claimant | Treatment for Claims in this Class |
|---|---|---|
| Class 1 | Auxo | This Class shall be paid the amount of its Secured Claim, less any credit bid that it made pursuant to the Sale if consummated, plus any amounts advanced by it during the Chapter 11 Case to fund administrative expenses, to be paid pursuant to the priority provisions of the Bankruptcy Code, less the Carveouts. Auxo shall retain its Lien until it has been paid in full. Auxo has a first priority Lien on all assets of the Debtor, prepetition and postpetition, other than the Causes of Action.<br><br>This Class is impaired. |
| Class 4 | LABarrington | LABarrington has asserted a security interest in the following equipment: One (1) UN-3000N Automated Urinalysis System. Debtor will surrender its interest in this equipment to LABarrington in full satisfaction of its Claim. |

13

| | | |
|---|---|---|
| | | This Class is impaired. |
| Class 5 | Team Financial Group | Team Financial Group has asserted a security interest in the equipment listed in proofs of claim #60-#71. Debtor will surrender its interest in this equipment to Team Financial Group in full satisfaction of its Claim. <br><br> This Class is impaired. |
| Class 6 | Unsecured Claims | This Class shall be paid pro rata pursuant to the priority of payment as set forth in the Bankruptcy Code to the extent of available funds. <br><br> This Class is impaired. |
| Class 7 | Class of United States of America | This Class has asserted potential offset and recoupment rights regarding the IRS Claim and the Qui Tam Complaint. The Plan preserves the rights, if any, of the United States of America to offset and recoupment. Debtor does not stipulate that any such rights exist; provided, however, this Class shall have the right to offset on the Effective Date $5,000 against funds it held on the Petition Date and on which it implemented an administrative freeze in the amount of $180,494, attributed to overpayment of claims submitted by the Debtor prior to the Petition Date under the as a Medicare Part B provider, pursuant to the provisions, regulations, policies, and procedures promulgated under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et. seq. (collectively, the "Medicare Statute"), administered by |

14

| | | the Centers for Medicare and Medicaid Services ("CMS"), a component of the United States Department of Health and Human Services. |
| --- | --- | --- |
| | | This Class is impaired. |
| Class 8 | Class of Equity Security Holders | This Class shall retain its Interest and shall be paid pro rata consistent with the priority of payment as set forth in the Bankruptcy Code to the extent of available funds, subject to any recoveries from Causes of Action brought by the Committee or the Liquidating Trustee under the Plan and the Liquidating Trust. |
| | | This Class is impaired. |

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Implementation on the Effective Date

The Plan shall become effective on the Effective Date, unless otherwise provided in the Plan or the Confirmation Order.

### B.    Means of Implementing the Plan

#### 1.    Sale Proceeds.

Under the terms of the amended notice of Sale Motion [ECF No. 247], Auxo reduced the Purchase Price as the Successful Purchaser from $6,400,000 to $4,857,477 and, assuming that it remains the Successful Purchaser at the Sale Hearing, the Purchase Price will be allocated as follows: a credit bid of $2,000,000 as the Credit Bid; plus the following amounts being paid on behalf of the estate: (a) $600,000 for the Professional Fee Carveout, (b) $1,170,477 for the payment of Allowed Administrative Claims, (c) $162,000 for payment of Allowed Priority Claims, (d) such amounts as required to pay the U.S. Trustee's Fees for the distributions to be made to the Allowed Administrative Claims, the Allowed

15

Priority Claims and the Accrued Professional Compensation under the Plan; plus funding in the amount of $1,025,000 provided by Auxo under the Final Cash Collateral Order through the closing on the Sale, and (e) funding the costs of an E&O Insurance Policy for the Liquidating Trustee on the Effective Date.

**2.      Covid Testing Claims.**

The net recoveries from the Covid Testing Claims, after payment of such amounts owed to Special Counsel, if recovered prior to the Effective Date, shall be distributed by the Debtor and, if recovered after the Effective Date, shall be distributed by the Liquidating Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo, (b) the next $1.0 million to the Liquidating Trustee for payment of the  Allowed Claims of the Unsecured Creditors and any remaining Administrative Expenses, (c) then, once Auxo receives eighty percent (80%) of the amount owed on its Allowed Secured Claim, each dollar received thereafter by the Liquidating Trustee shall be split with fifteen percent (15%) of such recoveries for payment of the Allowed Claims of the Unsecured Creditors and eighty-five percent (85%) of such recoveries for payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim.  Thereafter, all such recoveries, net of fees and expenses of the Liquidating Trust, shall be paid to the Allowed Claims of the Unsecured Creditors.

**3.      Transfer of Proceeds.** On the Confirmation Date, any proceeds of the Sale after satisfaction of the Allowed Administrative Claims, the Allowed Priority Claims and the Accrued Professional Compensation, shall be transferred to the Liquidating Trustee.

**4.      Causes of Action and Covid Testing Claims.** The Liquidating Trustee shall prosecute the Causes of Action and the Covid Testing Claims to the extent practicable and to the extent it determines that pursuing some or all of the Causes of Action and the Covid Testing Claims are prudent and will maximize the value of the assets held by the Liquidating Trust for distribution to the Beneficiaries of the Liquidating Trust, as provided under the Liquidating Trust Agreement.  The Liquidating Trustee shall make such determinations after consultation with the Post-Confirmation Committee, and Auxo (until Auxo is paid in full on its Secured Claim).  Upon the Confirmation Date, Special Counsel and its rights under its order authorizing its retention entered by the Bankruptcy Court shall be assigned to the Liquidating Trustee, upon the same terms and conditions as authorized by the Bankruptcy Court, including its rights to compensation for

16

prosecuting and recovering the Covid Testing Claims that are preserved and shall survive the Effective Date of the Plan.

5.    **Preservation of Causes of Action.** Except as expressly provided herein, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, or an agreement entered into or delivered in connection with the Plan, the Liquidating Trust will exclusively retain and may enforce, as the representatives of the Estate under section 1123(b)(3)(B), and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, all Causes of Action, including but not limited to those set forth on **Exhibit B** to the Plan and in any Plan Supplement, that the Debtor or the Estate may hold against any person or entity, which shall vest in the Liquidating Trust, under the control of the Liquidating Trustee. Accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action by virtue of, or in connection with, the confirmation, consummation of effectiveness of this Plan. The Liquidating Trustee or his successors or assigns exclusively may pursue such retained claims, demands, rights or Causes of Action, per the terms of the Liquidating Trust.  For purposes of clarification, Debtor's rights pursuant to the Sale and the Asset Purchase Agreement authorized by the Sale, are preserved.

6.    **Vesting of Assets of Estate.** Upon the Confirmation Date and subject only to the terms of this Plan, all Remaining Assets of the Debtor and the Estates, wherever situated, shall vest in the Liquidating Trust, free and clear of all liens, claims, encumbrances and interests, except as otherwise expressly provided herein. The Remaining Assets will continue to be administered, liquidated, and distributed by the Liquidating Trustee pursuant to the Plan and the Liquidating Trust Agreement.  If the Sale has not been consummated by the Confirmation Date, the Liquidating Trustee shall consummate the Sale.

7.    **Execution of the Liquidating Trust Agreement**. On or before the Confirmation Hearing, the Liquidating Trustee and the Debtor on behalf of themselves and the Estate, will execute the Liquidating Trust Agreement.

8.    **Appointment of the Liquidating Trustee**. Upon entry of the Confirmation Order, the Liquidating Trustee shall be authorized to execute

129020580v2
128957553v4

documents on behalf of the Debtor and the Estate. Paul R. Hage, a partner with Taft Stettinius & Hollister, LLP, shall be the Liquidating Trustee.

### 9. Powers and Responsibilities of Liquidating Trustee

The Liquidating Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Plan and the Liquidating Trust Agreement and will have those responsibilities created by this Plan and the Liquidating Trust Agreement upon the terms and conditions summarized therein, and will, for the benefit of the Beneficiaries, exercise the rights and powers vested in it by this Plan and the Liquidating Trust Agreement in the same manner, and use the same degree of care and skill in his exercise as a prudent person would exercise and use under the circumstances in the conduct of the Liquidating Trustee's own affairs, and further agrees to receive and disburse all of the Remaining Assets in accordance with the terms of this Plan and the Liquidating Trust Agreement. More specifically, without limitation, the Liquidating Trustee shall have the right, power, authority, standing, and approval, and shall be empowered to:

(a) perform all of the obligations and agreements of the Plan and the Liquidating Trust Agreement provided for herein;

(b) keep and maintain in a trust account for the benefit of the Liquidating Trust into which proceeds resulting from the initial receipt or from the Sale or other disposition of, or from the income resulting from, all or any part of the liquidation of Debtor's Assets and/or the prosecution of Causes of Action and/or the proceeds of the Covid Test Claims;

(c) keep and maintain trust accounts for the benefit of the Liquidating Trust into which accounts the Liquidating Trustee may place Disputed Claim Reserves;

(d) establish and maintain Distribution Reserve Accounts for the holders of Disputed Claims;

(e) commence, continue, prosecute, litigate, and/or settle and compromise Claims. Causes of Action and the Covid Test Claims, by or against the Debtor and third parties on behalf of the Liquidating Trust and for the benefit of the Beneficiaries thereof (except as expressly provided in the Plan or any order entered in the Chapter 11 Case (including the Confirmation Order), the Liquidating Trustee will have and shall retain after the Confirmation Date any and all rights and

18

defenses that the Debtor had with respect to any Claim as of the Petition Date. All Claims of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes the Debtor or the Estate;

(f) object to any Claims (disputed or otherwise) at any time prior to the Distribution Date and to settle, compromise, withdraw, or litigate to judgment, objections to any and all Claims, regardless of whether the Claim was scheduled by Debtor and classified as undisputed, liquidated, and non-contingent, or otherwise, and to seek subordination of any Claim under the Bankruptcy Code or any other authority;

(g) make Distributions in respect of Allowed Claims subsequent to the Effective Date in accordance with the Plan and the Liquidating Trust Agreement;

(h) take any actions necessary to the collection, receipt, or disposition of any Remaining Assets;

(i) execute and deliver all releases, satisfactions, and termination statements as may be required in connection with full payment of any debt obligation secured by any Lien or security interest;

(j) retain and/or terminate professional persons without Bankruptcy Court approval, in the Liquidating Trustee's discretion, to assist in the duties and responsibilities ascribed to him under this Plan and the Liquidating Trust Agreement. The reasonable fees and expenses of all professionals retained by the Liquidating Trustee shall be paid from the Remaining Assets without Bankruptcy Court approval or as provided in the Liquidating Trust Agreement;

(k) satisfy all reporting requirements for the Liquidating Trust, and all assets held by or on behalf of the Liquidating Trust, to the relevant reporting authority;

(l) file with the Bankruptcy Court reports regarding the liquidation or other administration of property comprising the Remaining Assets, the distributions made by the Liquidating Trust, and other matters required to be included in such report; and

(m) except as otherwise ordered by the Bankruptcy Court, and subject to the terms of the Plan and the Liquidating Trust Agreement, pay any fees and expenses

19

incurred by the Liquidating Trust on or after the Effective Date in accordance with the Liquidating Trust Agreement and without Bankruptcy Court approval.

**9. Sources for Plan Distribution.** It is contemplated that all of the funds necessary for the Debtor or the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (a) the Debtor's Cash on hand, (b) the proceeds of the Sale, (c) Cash funding provided by Auxo to pay the Allowed Administrative Claims, the Allowed Priority Claims and the Accrued Professional Fees, (d) Cash received in liquidation of the Remaining Assets of the Debtor, and (e) the proceeds of Causes of Action and the Covid Testing Claims.

**10. Exculpation and Indemnification.** Neither the Liquidating Trustee nor the firms or corporations representing him, or any of his employees, professionals or agents, shall in any way be liable for any acts of any of his employees, professionals or agents, except for acts undertaken by them in bad faith, gross negligence or willful misconduct, in the performance of their respective duties.

### 11. Equity of Debtor

As of the Confirmation Date, Mr. Grossi will continue to be the sole member of the Debtor.

### 12. Corporate Action

(a) On, or after the Confirmation Date, as applicable, all matters provided for hereunder that would otherwise require approval of the members or managers of the Debtor shall be deemed to have been so approved pursuant to applicable state law, without any requirement of further action by members or managers of the Debtor.

(b) The Debtor and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof.

### 13. Allowed Claims

129020580v2
128957553v4

Notwithstanding any provision herein to the contrary, the Liquidating Trustee shall only make Distributions to holders of Allowed Claims. No holder of a Disputed Claim will receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claim holder until the Claims Objection Deadline to enable a timely objection thereto to be filed. Any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan and the Liquidating Trust Agreement. The Debtor and the Liquidating Trustee have no obligation to object to claims where there are insufficient monies to pay those claims. The Liquidating Trustee shall have the standing accorded to the Debtor after the Confirmation Date.

**14**. **Confirmation where a class of claims has not accepted their treatment under the Plan or where a party in interest has objected to confirmation**

Debtor reserves the ability to confirm the Debtor's Plan, as amended, over the objection of any party in interest, and any class of claims that has not accepted their treatment under the Plan pursuant to, inter alia, 11 U.S.C section 1129(b).

# ARTICLE V
# TREATMENT OF EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

**A.** **Assumption and Rejection of Executory Contracts and Unexpired Leases**

1. Any executory contracts and unexpired leases that are listed in the Plan Supplement as executory contracts or unexpired leases to be assumed, or are to be assumed pursuant to the terms hereof, shall be deemed assumed by the Debtor as of date of entry of the Confirmation Order, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions pursuant to section 365(a) and 1123 of the Bankruptcy Code. To the extent necessary, any such executory contracts shall be treated as being assigned to

21

the Liquidating Trustee, and any requirements to demonstrate adequate assurance of future performance shall be deemed to have been satisfied.

2.     Any executory contracts and unexpired leases that have not expired by their own terms on or prior to the Effective Date, which the Debtor has not assumed or rejected during the Chapter 11 Case, which are not identified on **Exhibit C** to the Plan as executory contracts or unexpired leases to be assumed, which are not assumed pursuant to the terms hereof, and which are not subject of a motion pending as of the Effective Date to assume the same, shall be deemed rejected by the Debtor as of the entry of the Confirmation Order, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to the Bankruptcy Code.

**B. Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of Claim arising from the rejection of executory contracts or unexpired leases must be filed within thirty (30) days after the later of: (i) the date of entry of an order of the Bankruptcy Court approving any such rejection; or (ii) the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estate, the Liquidating Trust, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the provisions in Article IX of the Plan, including the permanent injunction.

**C. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan**

Any monetary amounts by which any executory contract and unexpired lease to be assumed pursuant to the Plan or otherwise is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on or as soon as practicable after the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding the amount of a cure payment, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other matter pertaining to assumption or assignment: (i) the Debtor or Liquidating Trustee, as applicable, retains the right to reject the applicable executory contract or unexpired lease at any time prior to the resolution of the dispute; and (ii) cure payments shall only be made following the entry of a Final Order resolving the dispute or the agreement of the counter-party and the Debtor or Liquidating Trustee.

**D. Assumption of D&O Insurance Policies**

As of the Confirmation Date, the Debtor shall be deemed to have assumed all of the Debtor's unexpired directors' and officers' liability insurance policies in place with outside carriers pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the foregoing assumption of each of the unexpired directors' and officers' liability insurance policies, whether or not such policies are identified on **Exhibit C** to the

23

Plan or scheduled in the Debtor's schedules. All claims and rights granted under all such policies shall transfer to the Liquidating Trust and the Liquidating Trustee is authorized to pursue recovery against insurance policies for any Causes of Action that are covered claims and/or covered wrongful acts as provided herein and as further set forth in the Liquidating Trust Agreement.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, the Liquidating Trustee shall make distributions as soon as reasonably practicable on account of all Allowed Claims that are entitled to receive distributions under the Plan and shall make further distributions to holders of Claims that subsequently are determined to be Allowed Claims. Distributions shall be made pursuant to the Distribution Schedule. The order of priority shall be as set forth in Articles II and III herein.

### B.    Delivery of Distributions

#### 1.    Delivery of Distributions

Distributions to holders of Allowed Claims shall be made to the holder of such Claim as of the date of Distribution.

#### 2.    Address of Record

The address of the holder of a Claim shall be, for purposes of Distributions made pursuant to the Plan, the address set forth in any proof of Claim filed by such holder or request for payment of an administrative expense, or, in the absence of such a proof of Claim or request, the address set forth in the Debtor's books and records.

#### 3.    Undeliverable Distributions

**(a)    Holding of Certain Undeliverable Distributions.** If any Distribution to a holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further Distributions shall be made to such holder unless and

24

129020580v2
128957553v4

until the Liquidating Trustee is notified in writing of such holder's then-current address. Undeliverable Distributions shall remain in the possession of the Liquidating Trustee until such time as any such Distributions become deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Liquidating Trustee shall make all Distributions that become deliverable. If the Liquidating Trustee is not able to deliver a Distribution to a holder of an Allowed Claim, and more than six (6) months has elapsed since the initial Distribution was returned as undeliverable, the Liquidating Trustee may distribute those funds pursuant to the Distribution Schedule to other holders of Allowed Claims.

### C. Minimum Distribution

Any other provision of the Plan notwithstanding, the Liquidating Trustee will not be required to make Distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be deemed satisfied in full.

### D. Setoffs

The Debtor and Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant hereto on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), the rights and Causes of Action of any nature that the Estate and the Liquidating Trust may hold against the holder of any such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any such rights and Causes of Action that the Debtor or the Liquidating Trustee may possess against any such holder, except as specifically provided herein.

## ARTICLE VII
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A. Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date that must be satisfied:

1.     Entry of the Confirmation Order; and

2.     The Confirmation Order becoming a Final Order.

**B.     Waiver of Conditions**

Intentionally omitted.

**C.     Non-Occurrence of Conditions**

If the Effective Date does not occur by March 31, 2024, the Debtor may determine upon notice to the Bankruptcy Court that the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Cause of Action or Claim; (ii) constitute an admission, acknowledgement, offer or undertaking in any respect by any party, including the Debtor; or (iii) otherwise prejudice in any manner the rights of any party, including the Debtor.

## ARTICLE VIII
## ALLOWANCE AND PAYMENT OF PROFESSIONAL FEE CLAIMS

All final requests for payment of Accrued Professional Compensation must be filed no later than sixty (60) days after the Effective Date. After notice and a hearing, the Allowed amounts of Accrued Professional Compensation shall be determined by the Bankruptcy Court. Any Retained Professional may also seek authority to file an interim fee application seeking allowance and payment of Accrued Professional Compensation prior to the Effective Date.

## ARTICLE IX
## INJUNCTIVE AND RELATED PROVISIONS

**A.     Release of Claims and Termination of Equity Interests**

Except as otherwise provided in this Plan and the Liquidation Trust Agreement, the rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of, and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Estate, or any of their respective Assets. Except as otherwise

26

provided in this Plan, (i) on the Effective Date, all Claims against the Debtor will be deemed satisfied and released in full and (ii) all entities shall be precluded from asserting any Claims against the Liquidating Trustee or the Debtor and the Estate, their respective successors or assigns, or the Assets. The Confirmation Order shall be a judicial determination of release of all liabilities of the Debtor. Except as otherwise provided in the Plan, neither the Plan, nor entry of the Confirmation Order, nor any failure to object to a Claim shall have any res judicata, estoppel, or other preclusive effect as to the Debtor, the Liquidating Trustees, or their successors or assigns, with respect to any Cause of Action against any party.

## B. Injunction

(a)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold a Claim, Equity Interest, or other debt or liability that would be discharged upon Confirmation but for the provisions of section 1141(d)(3) of the Bankruptcy Code or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following action on account of any such Claims, debts or liabilities or terminated Equity Interests or rights: (i) commencing or continuing in any manner any action or other proceedings against the Liquidating Trust other than to enforce any right to a distribution pursuant to the Plan; (ii) enforcing attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or Liquidating Trust other than as permitted pursuant to clause (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor, or Liquidating Trust; (iv) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to the Debtor or the Liquidating Trust; and (v) commencing or continuing any action, in any manner in any place that does not comply with or is inconsistent with the provisions of the Plan or the Liquidating Trust Agreement.

(b)     As of the Effective Date, all entities that have held, currently hold, or may hold any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against the Debtor or Liquidating Trust on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceedings; (ii) enforcing, attaching, collecting or recovering in any manner, any judgment, award,

27

decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to any released entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with, or is inconsistent with, the provisions of the Plan.

(c)   By accepting Distributions, or the possibility of receiving Distributions, pursuant to the Plan, each holder of a Claim or person or Entity asserting a Claim will be deemed to have specifically consented to the injunctions set forth in Article IX.B of the Plan. The permanent injunction under Article IX.B of the Plan shall apply to and inure to the benefit of, without limitation, the Debtor and the Liquidating Trust.

## C.    No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge the Debtor.

**ARTICLE X**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, to the fullest extent legally permissible, including but not limited to, jurisdiction to:

1.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.   Grant or deny any applications for allowance of compensation or reimbursement of fees or expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.   Resolve any matters related to the assumption of assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or

28

with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date, and adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

4.    Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, and otherwise adjudicate any matters preserved under the terms of the Plan and the Liquidating Trust, provided, however, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

6.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, and other agreements or documents adopted in connection with the Plan and Disclosure Statement and any Plan Supplement;

7.    Resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, modification, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.    Issue injunctions, enforce them, enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.    Resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

10.    Enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

129020580v2
128957553v4

11.     Supervise collection of all Remaining Assets;

12.     Resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust or any contract, instrument, release, or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

13.     Enter an order and/or the decree concluding the Chapter 11 Case; and

14.     Otherwise enforce the provisions of the Plan and the Liquidating Trust Agreement.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

### A.     Post-Effective Date Professionals' Fees and Final Fee Applications

The Liquidating Trustee may pay reasonable, documented fees of Retained Professionals incurred after the Effective Date, pursuant to and subject to the terms of the Liquidating Trust Agreement, without the necessity for Court approval.  The Liquidating Trustee shall retain current counsel for the Committee, Taft, Stettinius & Hollister, LLP.  The Liquidating Trustee shall retain the current financial advisor for the Debtor, O'Keefe & Associates, and Debtor waives any potential conflict of interest.

### B.     Payment of Statutory Fees

The Liquidating Trustee shall continue to pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. §1930(a)(6) after the Effective Date until such time as the Chapter 11 Case is closed by the Court.

### C.     Modification of Plan

Subject to the limitations contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor may, and upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section

30

1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### D.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans. If the Debtor revokes or withdraws the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

### E.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### F.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflict of laws thereof.

### G.    Closing of the Case

The Liquidating Trustee, after consultation with the Office of the United States Trustee, shall file a motion for the underlying Chapter 11 Case to be closed when it deems closure to be prudent.

### H.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the

129020580v2
128957553v1
23-43403-mlo    Doc 249    Filed 09/19/23    Entered 09/19/23 00:19:30    Page 31 of 79

filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of Debtor or any party-in-interest prior to the Effective Date.

## I.     Section 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax, transfer tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation, instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Any transfers in connection with the Plan are deemed transferred subject to section 1146(a).  To the extent that the Sale has not been consummated prior to the Effective Date, the Sale may be consummated by the Liquidating Trustee subject to the section 1146(a) exemption as set forth herein.

## J.     Section 1125(e) Good Faith Compliance

The Debtor and its Representatives shall be deemed to have acted in "good faith" under, inter alia, section 1125(e) of the Bankruptcy Code.

## K.     Further Assurances

The Debtor, all holders of Claims receiving Distributions hereunder and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the plan or the Confirmation Order.

## L.     Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

129020580v2
128957553v4

### M.    No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable.

### N.    Compromises and Settlements

Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various Claims (i) against it and (ii) that it has against other persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and Claims that it may have against other persons up to and including the Confirmation Date. After the Confirmation Date, such right shall pass to the Liquidating Trustee and the Liquidating Trust shall be governed by the terms of the Liquidating Trust Agreement.

### O.    Payments on Disputed Claims

Notwithstanding anything in this Plan to the contrary, neither the Debtor nor the Liquidating Trustee shall be obligated to make any Distribution towards any Disputed Claim.  Further, neither the Debtor nor the Liquidating Trustee shall be required to make any payments for an Allowed Claim to any Creditor if the Debtor or the Liquidating Trustee has filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with §502(d) of the Code.

### P.    Records Retention.

Debtor and the Liquidating Trustee shall comply with the provisions of the proposed Sale Order regarding the retention of records, and any other applicable Court Orders.

### Q.    Inconsistency/What Governs.

To the extent there is any inconsistency between the Plan, the Disclosure Statement, the Liquidating Trust Agreement and the Confirmation Order, the Confirmation Order shall control.

# DISCLOSURE STATEMENT

The Debtor[1] submits as follows for its disclosure statement (the "<u>Disclosure Statement</u>") to accompany its Plan[2] concurrently filed herewith:

## I.    DESCRIPTION OF DEBTOR

Debtor, which was organized on June 29, 2012, is a Michigan limited liability company.

### A.    <u>The Debtor-In-Possession</u>

On the Petition, the Debtor filed a voluntary petition ("<u>Petition</u>") for relief under the Bankruptcy Code in the Bankruptcy Court, commencing this Chapter 11 Case. This Case was assigned to the Honorable Maria Oxholm. Upon filing the Petition for Chapter 11 Case, the Debtor became a "Debtor-in-Possession" as that term is understood in the Bankruptcy Code.

### B.    <u>Debtor's Principals and Management</u>

### 1.    <u>*Background*</u>

Debtor is currently managed by Mr. Grossi, who is the Debtor's sole member and its CEO. Upon confirmation, the remaining Debtor's assets will be transferred to a liquidating trust, with Paul Hage as the Liquidating Trustee pursuant to the Liquidating Trust Agreement.

Mr. Hage is Co-Chair of the Business Restructuring, Bankruptcy and Creditors' Rights Group at Taft, Stettinius & Hollister, LLP ("<u>Taft</u>"). Taft is the appointed counsel for the Unsecured Creditors Committee and shall be counsel for the Liquidating Trustee. Mr. Hage is also a member of the firm's Diversity, Equity and Inclusion Committee. Mr. Hage obtained his law degree from Loyola University of Chicago School of Law and an LL.M. in Bankruptcy Law from St.

---

[1] Capitalized terms not otherwise defined herein are defined in the. Plan filed with this Disclosure Statement.

[2] All terms and conditions of the Plan of Liquidation are incorporated herein by reference.

23-43403-mlo   Doc 249   Filed 09/19/23   Entered 09/19/23 00:19:30   Page 34 of 79

John's University School of Law. Mr. Hage represents parties in bankruptcy and other insolvency proceedings nationwide. Mr. Hage frequently speaks and writes on bankruptcy issues for organizations such as the American Bankruptcy Institute, the American Bar Association Business Bankruptcy Committee, the Federal Bar Association and Norton Institutes on Bankruptcy Law.

Mr. Hage is a Fellow of the American College of Bankruptcy. He is the Secretary and a member of the Executive Committee of the American Bankruptcy Institute. He serves as the President of Access to Bankruptcy Court, a non-profit that raises funds to provide experienced bankruptcy counsel, free of charge, to low-income individuals residing in the Eastern District of Michigan. He is also a member of the Board of Directors of CARE (Credit Abuse Resistance Education), a national nonprofit that provides financial literacy education to students and young adults. Additionally, Mr. Hage serves as Co-Director of the Conrad B. Duberstein National Bankruptcy Moot Court Competition, the largest single-site moot court competition in the country.

Mr. Hage currently serves as the court-appointed Plan Administrator/Wind-Down Trustee for Voyager Digital, LLC and its affiliates in their chapter 11 bankruptcy proceedings pending in the United States Bankruptcy Court for the Southern District of New York. Prior to its bankruptcy filing, Voyager had over $1.5 billion in assets and over $2.0 billion in liabilities.

## 2. *Compensation*

In 2021, Mr. Grossi received $676,153.77 for his compensation and in 2022 Mr. Grossi received $241,153.85 in compensation. Since the Petition Date, Mr. Grossi received $40,384.68 in compensation. While Mr. Grossi is no longer an employee of Debtor, he remains the sole member of Debtor and manages its corporate affairs and is the Debtor's responsible person.

Post confirmation Mr. Hage as Liquidating Trustee will be compensated from the Liquidating Trust at an hourly rate as set forth in the Liquidating Trust Agreement. By operation of the terms of the Plan, the assets will transfer to the Liquidating Trust on the Confirmation Date and will be administered by the Liquidating Trustee, or any successor Liquidating Trustee as provided for in the Liquidating Trust Agreement. Following the Confirmation Date, Mr. Grossi will no longer administer the Debtor's assets.

35

### 3.  *Legal Relationships*

Mr. Grossi owns 100% of the equity of Debtor. Mr. Grossi worked for the Debtor as an employee until mid-August of 2023 and Mr. Grossi currently manages the Debtor's corporate affairs.

Mr. Grossi guaranteed the following obligations of the Debtor: a. the commercial real estate lease of between the Debtor and its landlord, Medical Real Estate Group, LLC and 6600 Highland LLC; and b. the Debtor's secured loan by Comerica.

### C.  Description of Debtor's Business and Causes for Chapter 11 Filing

Debtor is a CLIA certified, CAP proficient, COLA accredited, medical laboratory in Waterford, Michigan which had approximately 112 employees as of the Petition Date and currently has 75 employees. Debtor specializes in substance abuse, blood and molecular testing.

Debtor operates at 6620 Highland Road, Waterford, MI 48327 pursuant to the lease with Medical Real Estate Group, LLC (the "Operating Lease"). Previously, Debtor also leased commercial property at 6600 Highland Road, Waterford, MI 48327, however, it rejected that lease on July 24, 2023 pursuant to the Order Granting 6600 Highland, LLC Relief from Stay [ECF No. 167] because it no longer needed that location.

### D.  Secured Debt:

Prepetition, Debtor owed 2 primary secured obligations to Comerica and Peninsula.

On the Petition Date, Debtor was indebted to Comerica under the Master Revolving Note executed by Debtor to the order of Comerica on February 28, 2022 in the original principal amount of $6,750,000 (as amended, the "Prepetition Revolving Note"). The indebtedness under the Prepetition Revolving Note as of the Petition Date included principal of $6,376,908.51, interest of $23,360.32, plus accrued and accruing interest, costs, fees and expenses,

Under a Guaranty dated June 4, 2022 (the "Guaranty"), Mr. Grossi guaranteed a portion of the Prepetition Indebtedness, limited to the principal sum of $500,000 "plus interest on that amount and all costs and expenses (including reasonable attorneys' fees) incurred by [Comerica] in enforcing [the] Guaranty or in collecting the Indebtedness [(as defined in the Guaranty)]."

The Prepetition Indebtedness was secured by all assets of Debtor, including without limitation: (a) existing and future accounts, chattel paper, contract rights, deposit accounts, general intangibles, instruments, documents, software, rights to payment evidenced by chattel paper, documents or instruments, commercial tort claims, letters of credit, letter of credit rights, supporting obligations and rights to payment for money or funds advanced or sold; (b) presently owned and hereafter acquired inventory; (c) presently owned and hereafter acquired investment property; (d) presently owned and hereafter acquired property in possession or control of Comerica; (e) presently owned and hereafter acquired machinery, equipment, furniture, fixtures, tools, parts and accessories, and all proceeds and products of and accessions to all of the foregoing (collectively, "Prepetition Collateral"), all as more particularly described in the Security Agreement (All Assets) executed by Debtor in favor of Comerica dated January 19, 2021 ("Security Agreement").

In addition to the Comerica Prepetition Indebtedness, Debtor was obligated to Peninsula on the Petition Date under the Note Purchase Agreement and other loan and collateral documents ("Subordinate Loan Documents") for $14,940,749.14. The liabilities evidenced by the Subordinate Loan Documents, including interest, costs, fees and expenses, are identified as the "Subordinate Debt".

Under a Senior Subordination Agreement dated January 19, 2021 (as amended, "Senior Subordination Agreement"), subject to the terms therein, Comerica's security interest in the Prepetition Collateral is senior to the Subordinate Lender's security interest in the same (the "Peninsula Prepetition Liens", and together with the Comerica Prepetition Liens, the "Prepetition Liens").

Under a Merchant Cash Advance Agreement dated March 10, 2023 ("MCA Agreement"), Diesel Funding LLC ("Diesel") advanced funds to Debtor characterized as a purchase from Debtor of certain future receivables. Debtor believes that Diesel is owed no more than $258,577.50 and does not have a valid

37

lien on any assets of the Debtor, nor did it actually purchase any of Debtor's receivables, whether existing receivables or future receivables.

Auxo acquired by purchase and assignment on June 2, 2023 as the successor in interest to the Prepetition Indebtedness owed by the Debtor to (i) Comerica under the Prepetition Loan Documents and (ii) Peninsula under the Subordinate Loan Documents.

### E.    The Chapter 11 Filing

Debtor filed its bankruptcy because of cash flow issues caused by a combination of factors, including, but not limited to: (a) declining Medicare reimbursements; (b) a decrease in Covid testing; (c) Debtor's cost structure; (d) erroneous claims denials by Meridian and Blue Cross; and (e) Comerica's offset of Debtor's Comerica accounts following Comerica's declaration of default against Debtor that prevented Debtor from making payroll or paying its other necessary operating expenses.

Mr. Grossi and Peninsula advanced significant operating cash to the Debtor in 2022 in order to attempt to stabilize operations.

### II.    POST-PETITION EVENTS OF SIGNIFICANCE

### A.    Post-Petition Transfers Outside the Ordinary Course of Business

Except as set forth on the list of Preserved Causes of Action filed with the Plan or as set forth on the Plan Supplement, Debtor has made no post-petition transfers outside the ordinary course of business.  Debtor filed its Sale Motion as a sale not in the ordinary course of business for substantially all of Debtor's assets pursuant to Section 363(b) of the Bankruptcy Code, and as part of the Sale Motion sought to assume and assign certain executory contracts and unexpired leases and to reject certain executory contracts and unexpired leases under Section 365 of the Bankruptcy Code.  The Court has scheduled a hearing on the Sale Motion for September 28, 2023 at 11:00 a.m.

### B.    Chapter 11 Events

This Disclosure Statement is not designed to provide a full, detailed description of the motions filed and orders entered or other developments in the bankruptcy proceeding. Further, the Disclosure Statement does not address every motion filed or order entered in the Chapter 11 Case. Rather, the Disclosure Statement merely provides a summary of the significant post-petition events, motions filed, or orders of the Bankruptcy Court. Creditors are urged to review the Bankruptcy Court docket, which lists every document filed and each docket event in the Bankruptcy Case.

### C.   *Creditors' Committee*

The Committee was appointed on May 1, 2023 [ECF No. 68], and the following unsecured creditor representatives were appointed to serve on the Committee pursuant to the amended appointment on May 2, 2023 [ECF No. 70]

Matthew George
Gemini Lab Group, LLC
8470 S. Shore Drive
Clarkston, MI 48348
248-310-4724
matt@geminilabgroup.com

Dorian Wright, CFO
The Sports Marketing Agency
13 N. Washington #706
Ypsilanti, MI 48198
313-800-0040
lwright@thesportsma.com

Maribeth Thomas, Esq., Counsel for Fisher Healthcare,
a division of Fisher Scientific
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
412-594-3949
mthomas@tuckerlaw.com

129020580v2
128957553v4

On May 18, 2023, the Bankruptcy Court entered its Order employing Taft as counsel to the Committee [ECF No. 112].

### D.    *Special Counsel*

On September 6, 2023, Amy Thomas, Esq. and Only One Hub d/b/a Primus Health were appointed as special counsel to pursue Debtor's outstanding Covid-19 Testing Claims with each health insurance provider and governmental entity [ECF No. 229]. Debtor filed amended bankruptcy schedules on August 28, 2023 [ECF No. 206], indicating "The [Covid Testing] Claims are valued at no less than $4.0 million to the bankruptcy estate (exclusive of contingent fees owed to special counsel to be retained by the Debtor, in the amount of 30% of the amount recovered). The face amount of the claims may be over $40 million, however, that amount does not take into account collectability nor the contingent fee that will be owed to special counsel."

### E.    *Cash Collateral and Adequate Protection*

Debtor, Auxo, as the holder of an interest in Debtor's cash collateral, McLaren Medical Laboratory, the Committee and the U.S. Trustee agreed to the use of cash collateral that was approved by the Court and memorialized in the Stipulated Final Order Authorizing Use Of Cash Collateral And Granting Adequate Protection entered on June 9, 2023 (ECF 144). Pursuant to agreed budgets filed throughout the Chapter 11 Case, the Debtor, Auxo, the Committee, and U.S. Trustee have agreed to Debtor's use of cash for payment operating expenses, including payroll.

Debtor has experienced several budget shortfalls post-petition due to ongoing claims denials and a reduction in anticipated receivables. Auxo has agreed, through the Sale Closing, as well as any other administrative expenses incurred for the benefit of the Debtor prior to the Effective Date, to fund Debtor's budgeted operating expenses that Debtor was unable to fund pursuant to the Final Cash Collateral Order [ECF No. 144], the Stipulated Extension Order [ECF No. 180] and an Amended Cash Collateral Order to be submitted to the Court [ECF No. ___].

129020580v2
128957553v4

Moreover, the Final Cash Collateral Order provides for a carve-out for professional payments and payment of U.S. Trustee Fees from the first priority position of the secured claims held by Auxo.

### F.    *Negotiated Resolution Between Committee, Auxo and Debtor*

The Committee, Auxo and the Debtor met and negotiated the following resolution to address outstanding issues including how the net Covid Testing Claims would be divided (the "Resolution"). Subject to Court approval, they agreed to the following:

1.     A revised notice of sale with certain modified provisions was filed and served on all Entities on the Bankruptcy Court's mailing matrix for the Debtor to give notice to all counsel of record [ECF No. 247].

2.     At the Sale Hearing on September 28, 2023, the Debtor, the Committee and Auxo will ask the Court to ratify, authorize and approve the Resolution as having provided adequate notice to parties in interest. By proceeding in this manner, parties in interest will have the maximum amount of notice of the proposed changes. At the Sale Hearing, the Court would still have to find that fair and adequate consideration was being paid for the Property being sold pursuant to the Sale Motion, as well as the other statutory requisites under the Bankruptcy Code for approving the Sale.

3.     Under the terms of the amended notice of sale [ECF No. 247] and subject to Bankruptcy Court approval, Auxo agreed to reduce the Purchase Price as the Successful Purchaser from $6,400,000 to $4,857,477 and, assuming that it remains the Successful Purchaser at the Sale Hearing, the Purchase Price will be allocated as follows: a credit bid of $2,000,000; plus the following amounts being paid on behalf of the estate: (a) $600,000 for the Professional Fee Carveout; (b) $1,170,477 for the payment of Allowed Administrative Claims; (c) $162,000 for payment of Allowed Priority Claims; (d) such amounts as required to pay the U.S. Trustee's Fees for the distributions to be made to the Allowed Administrative Claims, the Allowed Priority Claims and the Accrued Professional Compensation under the Plan; plus funding in the amount of $1,025,000 provided by Auxo under the Final Cash Collateral Order through the closing on the Sale; and (e) funding the

129020580v2
128957553v4

costs of an E&O Insurance Policy for the Liquidating Trustee, estimated to be approximately $50,000.

4.       An agreement to exclude the Covid Testing Claims as "Excluded Assets" from the Sale pursuant to a revised Asset Purchase Agreement is being drafted to amend the Purchase Price and make clear that the Covid Testing Claims are excluded from the Property being purchased by Auxo under the Asset Purchase Agreement.

5.       Keeping the sale date of September 28, 2023 and mailing the amended notice to the matrix and any parties that previously expressed an interest in the assets by September 18, 2023.  Debtor will seek to have the amended notice published as soon as possible online by Crains.

6.       The re-notice of sale provides, in pertinent part:

> "PLEASE BE ADVISED that the Debtor is authorized to solicit competitive bids for the Property. Auxo has been granted certain bid protections, so that any competitive bid must be at least the Purchase Price as defined in the Agreement plus $200,000.  The Purchase Price is $4,857,477 which is derived by adding the credit bid that Auxo is making of $2,000,000 for the Property, plus funds that it is paying on behalf of the bankruptcy estate in the amount of $2,857,477.   Note that the Property being sold will be excluding the following "Excluded Assets": Debtor's outstanding Covid-19 testing claims with each health insurance provider and governmental entity which are being pursued by appointed Special Counsel, Amy Thomas, Esq. and Only One Hub d/b/a Primus Health."

7.The parties also reached an agreement regarding the Distribution of the proceeds of the Covid Testing Claims.   The net recoveries from the Covid Testing Claims, after payment of such amounts owed to Special Counsel, if recovered prior to the Effective Date, shall be distributed by the Debtor and, if recovered after the Effective Date, shall be distributed by the Liquidating Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo, (b) the next $1.0 million to the Liquidating Trustee for payment of the  Allowed Claims of the Unsecured Creditors, (c) then, once Auxo receives 80% of the amount owed on its Allowed Secured Claim, each dollar received thereafter

by the Liquidating Trustee shall be split with 15% of such recoveries for payment of the Allowed Claims of the Unsecured Creditors and 85% of such recoveries for payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim. Thereafter, all such recoveries, net of fees and expenses of the Liquidating Trust, shall be paid to the Allowed Claims of the Unsecured Creditors.

### G.        *Motions for Relief from Stay*

Two motions for relief from stay have been filed.

The motion for relief from stay filed by Medical Real Estate Group LLC [ECF No. 230] regarding Debtor's lease for its operating location is pending. Debtor, the Committee and Auxo are attempting to arrive at a consensual resolution with Medical Real Estate Group. Absent an agreement, the Court will determine what the effect of rejection will be.

The second motion for relief from stay was filed by Younis Enterprises, LLC [ECF No. 176], a counterparty to an executory contract/unexpired lease regarding the use of its premises for a specimen collection site. The Debtor has agreed to consent to stay relief effective as of Sale closing date when the contract is set to be rejected. After the Sale has closed, Debtor will have no further use for the premises leased from Younis Enterprises, LLC.

### H.        *Motions regarding sales of assets and assuming and assigning executory contracts*

#### 1.    Sale Motion

On June 23, 2023, Debtor filed the Sale Motion [ECF No. 145]. Pursuant to the Sale Motion, Debtor proposed the sale of substantially all of its assets, including, but not limited to all assets disclosed in Debtor's Schedule A/B [ECF No. 145]. The Bidding Procedures Order was entered on June 29, 2023 [ECF No. 151].[3] The Sale excludes Causes of Action which include claims under Chapter 5

---

[3] The formal title of this document is "Order (1) Approving Bidding Procedures And Other Matters Relating To The Sale Of The Debtors' Assets; (2) Form Of

43

of the Bankruptcy Code. Pursuant to the Amended notice of sale [ECF 247], the Debtor, Auxo and Committee proposed the exclusion of the Covid Testing Claims.

McLaren Medical Laboratory objected to the Sale Motion [ECF No. 171]. The Committee filed a limited objection to the Sale Motion and an amended limited objection [ECF Nos. 177 and 203]. Creditor, The Sports Marketing Agency, filed a concurrence in the Committee's limited objections [ECF No. 288].

No qualified bidders other than Auxo came forward. It is contemplated that the Amended Notice of the Sale Motion will be published online in Crain's to provide an additional bidding opportunity in advance of the adjourned hearing on the Sale Motion. The adjourned hearing on the Sale Motion is set for September 28, 2023 at 11:00 a.m.

### 2. *Omnibus Assumption Motion*

Debtor filed an omnibus motion to assume the following contracts and unexpired leases on July 10, 2023 (the "Omnibus Assumption Motion") [ECF No. 153] with the indicated proposed cure costs to cure any prepetition defaults;

| Name | Description | Cure Costs |
|---|---|---|
| Medical Real Estate Group LLC 29580 Northwestern Hwy Suite 1000 Southfield MI 48034 | Space Lease; Lab Building | $256,060.34 |
| Orchard Software Corporation 701 Congressional Blvd. Ste 360 Carmel, IN 46032 | Laboratory Information System | $101,094.20 |

---

Asset Purchase Agreement; And (3) Scheduling A Sale Hearing; And Granting Related Relief."

44

| | | |
|---|---|---|
| MedCare MSO 150 Washington Avenue Suite #201 Santa Fe New Mexico 87501 | Laboratory Billing | $642,090.65 |
| MedSpeed LLC 140 Industrial Drive, Elmhusrt, IL 60126 | Courier Transport Services | $867,141.99 |

Orchard Software Corporation filed an objection to the Omnibus Assumption Motion, arguing that its contract was not assumable and the cure amount was incorrect [ECF No. 156]. Medical Real Estate Group, LLC also objected, on the basis that its cure amount was incorrect [ECF No. 160]. Debtor withdrew its requested assumption of the Medical Real Estate Group operating lease [ECF No. 222] and filed a motion to reject that lease [ECF No. 205] which was objected to by Medical Real Estate Group [ECF 218]. The hearing on the Omnibus Assumption Motion is September 28, 2023 at 11:00 a.m.

### 3. *Omnibus Rejection Motion*

Debtor filed an omnibus motion to reject executory contracts and unexpired leases (the "Omnibus Rejection Motion") [ECF No. 154]. McLaren Medical Laboratory filed an objection to the Omnibus Rejection Motion [ECF No. 165]. The hearing on McLaren's objections to the Omnibus Rejection Motion is set for September 28, 2023 at 11:00 a.m. The list of contracts to be rejected was attached to the Omnibus Rejection Motion. Pursuant to the Omnibus Rejection Motion, counterparties with leases or contracts that were rejected have thirty (30) days from entry of the Order rejecting their contract or lease to file a proof of claim or amend a previously filed proof of claim. The list of counterparties of contracts and leases to be rejected which was attached to the Omnibus Rejection Motion follows:

Abbott Laboratories INC., D-943, CP1-4 100 Abbott Park Road Abbott Park, Illinois 60064-6095 Allscripts 305 Church at North Hills St Raleigh, NC 27609
Amazing Charts 1600 Division Rd, Suite 2000 West Warwick, RI 02893
Arkstone Medical Solutions, LLC 7000 W Palmetto Park Road Boca Raton, FL 33433
Atlassian, Inc. 350 Bush St. Floor 13 San Francisco, CA 94104

129020580v2
128957553v4

Bio-Rad 2000 Alfred Nobel Drive Hercules, CA 94547

Comcast Business Agreement 5728 Schaefer Rd. Ste 203 Dearborn MI 48126

Comcast Business Agreement 6620 Highland Rd. STE 200 Waterford MI 48327

Data Innovations, LLC PO Box 101978 Atlanta, GA 30392-1978

Ellkay, LLC 200 Riverfront Blvd., 3rd Floor Elmwood Park, NJ 07407

eMDs, Inc. 10901 Stonelake Blvd #200 Austin, TX 10901

LabSoft Inc. 2202 Westshore Blvd. Ste 115 Tampa, FL 33607

Lifepoint Informatics 65 Harristown Rd. Glen Rock, NJ 07452

Medent Lab Clearinghouse Interface, 15 Hulbert St. P.O. Box 980, Auburn, NY 13021

Microsoft Corporation One Microsoft Way Redmond, WA 98052

Netalytics, LLC POBOX 969, Greer, SC 29650

Translational Software Incorporated 7683 SE 27th Street #352 Mercer Island, WA 98040

Triarq Health 424 E 4th Street Royal Oak, MI 48067

Dr. Fredric Neumann Sr. 39880 VanDyke Rd Sterling Heights, MI 48313

Little Sonia Real Estate LLC 9171 Lapeer Road, Suite 100, Davison MI 48423

Newbsknob, LLC 6310 Sashabaw Rd. Clarkston, MI 48346

Younis Enterprises, 5728 Schaefer Rd. Dearborn MI 48126

Abbott Clinical Lab Solutions 5990 142nd Ave. N Clearwater, FL 33760

Abbott Laboratories INC., D-942, CP1-4 100 Abbott Park Road Abbott Park, Illinois 60064-6095 Abbott Laboratories, Inc., 1300 East Touhy Avenue, Des Plaines, IL. 60018 Agena Bioscience, 4755 Eastgate Mall, San Diego, CA 92121

Beckman Coulter INC. Mail Stop A2-SW-12 250 South Kraemer Blvd P.O. Box 8000 Brea, CA 92822-8000

Evoqua Water Technologies 1451 East 9 Mile Road Hazel Park, MI 48030 Leasing Associates of Barrington, Inc. 220 North River Street, East Dundee, IL. 60118 Life Technologies Corporation, 5781 Van Allen Way Carlsbad, CA 92008

Med Water Systems, 2262 South 1200 West Suite 101, Woods Cross, UT. 84087

Microgenics Corporation 46500 Kato Road, Fremont, CA 94538

Siemens Healthcare Diagnostics, Inc. 2089 Gregson Drive, Cary, NC. 27511

Sysmex America, Inc., 577 Aptakisic Road, Lincolnshire, IL. 60069

Amro Almradi MDPC PLLC 612 Deauville Ln. Bloomfield Hills, MI 48304 The Sports Marketing Agency, 13 N. Washington St, #706, Ypsilanti, MI 48197-2617

Cintas, ,1065 Hanover St. Suite 105 | Wilkes Barre, PA 18706

Cintas Fire Protection Services, 232 E Maple Rd Troy, MI 48083

Clarity X, 1000 Brickell Avenue, Suite #715, Miami, FL 33131

46

CoreBioLabs, 7956 Tyler BLVD, Mentor, OH 44060-4806

Great Lakes Express Delivery LLC, 3055 Cass Rd., Ste 123, Traverse City, MI 49684-7904

iCare, 29919 Jefferson Ave, St. Clair Shores, MI 48082-1823

iOpen 1101 Pennsylvania Avenue, NW Washington DC 20004

Iron Mountain 1101 Enterprise Dr. Royersford, PA 19468

LabPath Consulting, 105 4th Street E, Tierra Verde, FL 33715-2241

LabCorp 531 South Spring Street Burlington, North Carolina 27215

McLaren Medical Laboratory 4000 S. Saginaw St. Flint MI 48507

Solaris 110 Dewey Dr. Suite A, Nicholasville, Kentucky 40356

Stericycle, 2355 WAUKEGAN ROAD, BANNOCKBURN IL 60015-5501

Superior Medical Waste Disposal LLC P.O. Box 700797 Plymouth, MI 48170

UPS, P.O. Box 809488, Chicago, IL 60680-9488

### 4. *Debtor's Motion to Reject Operating Lease*

As indicated above, Debtor withdrew its requested assumption of the Medical Real Estate Group operating lease [ECF No. 222] and filed a motion to reject that lease [ECF No. 205] that was objected to by Medical Real Estate Group [ECF No. 218]. The hearing on this matter has been set for September 28, 2023 at 11:00 a.m.

### I. *The Plan and Disclosure Statement*

Debtor is filing its Combined Disclosure Statement and Plan of Liquidation. The Plan provides for the transfer of any remaining assets to the Liquidating Trust, and for the Liquidating Trustee to distribute the proceeds of such assets to those entitled to payment under the Bankruptcy Code as modified by this Court's Orders, in addition to other duties such as determining whether to pursue Avoidance Actions and other Causes of Action. Debtor believes that its Plan is feasible and in the best interest of the Estate.

### J. **Pending and Contemplated Litigation Involving Debtor**

There is no contemplated litigation involving Debtor other than with respect to claims allowance, administrative expense allowance issues, the Causes of Action and the Covid Test Claims. Debtor reserves the ability to assert the Causes of Action and the Covid Test Claim that are not listed herein or in the Exhibit to the Plan Supplement.

Debtor is in the process of undertaking an avoidance action analysis and reserves the right for the Liquidating Trustee to assert such Causes of Action, including the Covid Test Claims, that it determines to be in the best interests of the Estate and the Liquidating Trust. Debtor and the Committee are reviewing potential causes of action by the Estate, and potential Claims against the Estate, including the following:

1. Those claims listed in the avoidance action analysis that Debtor has reserved the ability to file as a Plan Supplement;

2. Prepetition, in January 2021, the membership interests of Nameer Kiminaia Living Trust dated May 31, 2019 ("NK RLT") and Brian Tierney, Trustee of the Tierney Family Trust Dated December 21, 2018 ("BT RLT") were redeemed pursuant to the Membership Interest Redemption Agreement (the "Redemption"). In addition, as part of this redemption, the Debtor sold the name, ION Diagnostics, LLC, one of the names under which it had been operating, to Nameer Kiminaia and Brian Tierney (the "Name Transfer"). The Committee and the Debtor are investigating whether the Redemption and the Name Transfer are avoidable transfers under various theories, including 11 U.S.C. sections 544(b) and 548 and/or whether there are any other Causes of Action resulting from the Redemption or the Name Transfer;

3. Potential litigation to recover amounts owed by third party insurers, including governmental insurers, relating to the Covid Test Claims;

4. Potential claims against Diesel in connection with funds advanced to the Debtor prior to the Petition Date, and paid from the Debtor's funds;

5. Those claims listed, or to be listed, in the exhibit to the Plan and in the Plan Supplement;

48

6. Claims regarding the administrative freeze by the United States of America ("USA") for claims that have been asserted, and that may be asserted, by the USA.

As of the date of the Disclosure Statement, the USA disclosed to Debtor and the Committee it is withholding proceeds in the amount of $184,494 of accounts receivable that were otherwise due to the Debtor prepetition, as further described below. The USA believes that its actions are lawful, and the Committee and Debtor are investigating the Estate's rights regarding the transactions.

The accounts receivable attributed to the USA arose out of the Debtor's laboratory testing services it provided prior to and as of the Petition Date, as a Medicare Part B provider, pursuant to the provisions, regulations, policies, and procedures promulgated under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et. seq. (collectively, the "Medicare Statute"), administered by CMS, a component of the United States Department of Health and Human Services. As a supplier, the Debtor receives payments from WPS Government Health Administrators, one of the Medicare Administrative Contractors ("MACs") that administers the Medicare program on behalf of CMS, for providing services to Medicare beneficiaries.

CMS asserts that Part B suppliers have one year from the date of service to submit claims to the MACs, see 42 C.F.R. § 424.44, and because Medicare Part B claims are processed and approved quickly, CMS maintains that claims are subject to post-payment review and reopening. Therefore, according to CMS, because overpayments for services may not be determined at least one to four years in the future, once the Debtor's assets are sold, payments from which CMS could recoup overpayments may cease resulting in a debt being owed to CMS (a "CMS Claim").

Also as of the Petition Date, the Debtor was a named defendant in a qui tam action in the United States District Court for the Eastern District of Michigan and is subject to certain government

49

subpoenas and investigations issued or commenced by the United States Department Justice ("<u>DOJ</u>"). The DOJ informed the Debtor that it anticipates that the investigations will likely result in prepetition debts being owed to the United States that the DOJ asserts are non-dischargeable under federal law, including section 1141(d)(6) of the Bankruptcy Code (the "<u>DOJ Claims</u>"). The Debtor disputes the United States' assertion that the DOJ Claims are non-dischargeable and does not stipulate that the USA has a claim regarding these matters.

On May 5, 2023, the IRS filed the IRS Claim against the Debtor for prepetition taxes and penalties in the amount of $2,010,331.36 [Claim No. 17]. Debtor believes the IRS Claim will eventually be reduced to zero once it clarifies the claimed outstanding tax returns, however, the IRS Claim remains outstanding. Debtor believes that the amounts claimed relate to withholding that was paid by a PEO [professional employer organization] working on behalf of the Debtor, and thus that the amounts requested in the IRS claim have already been paid. As for the DOJ Claims and CMS Claim, because the governmental unit bar date falls on a federal holiday, the date by which governmental units must file claims is Tuesday, October 9, 2023. See 11 U.S.C. §502(b)(9); Fed.R.Bankr.P. 9006(a)(1)(C).

The DOJ contacted the Debtor asserting that any payments or monies due to the Debtor for Medicare services provided before the Petition Date ("<u>CMS Prepetition Payments</u>") may be recouped by CMS or offset against any prepetition debt owed to the United States, including the IRS Claim and the potential DOJ Claims.

The DOJ requested that the Debtor provide adequate protection to the United States for use of its alleged cash collateral. Since the DOJ made its request for adequate protection, the USA, Debtor and Committee have had on-going discussions and communications regarding the USA's setoff rights and potential claims against the estate. It is Debtor's understanding that the USA has agreed that, at this time, it will not file a motion to

offset the CMS Prepetition Payments from the IRS Claim or any contingent, disputed, or unliquidated debt, including the DOJ Claims and CMS Claim, that the USA alleges is owed by the Debtor. Instead, the parties will endeavor to consensually resolve each party's rights, if any, to the CMS Prepetition Payments, and all rights, defenses and arguments of all parties are preserved by the Plan.

### K. _Insurance Coverage_

Pursuant to the terms of the Plan, the Liquidating Trustee may pursue recovery of covered claims and covered wrongful acts against unexpired directors and officers liability policies that the Debtor will assume and assign to the Liquidating Trust as of the Effective Date.

### L. Proofs of Claim

The following proofs of Claim have been filed as of the date of the Disclosure Statement. The parties do not stipulate as to the allowance of these claims and will undertake an analysis as to whether objecting to any of these claims is appropriate.

| Claim # | | Amount claimed * | Date filed | Creditor number | Creditor name |
|---|---|---|---|---|---|
| 1 | View | $11028.70 | 04/14/20 23 | 27640961 | Staples, Inc. |
| 2 | View | $2915.32 | 04/17/20 23 | 27642990 | Uline |
| 3-2 | View | $243328.93 | 06/27/20 23 | 27641467 | Labcorp |
| 4 | View | $76394.84 | 04/24/20 23 | 27650531 | Claire Ann Richman |
| 5 | View | $57970.00 | 04/25/20 23 | 27641424 | Davis Wright Tremaine LLP |
| 6 | View | $729.63 | 04/26/20 23 | 27653607 | Clean Air Testing, LLC |

129020580v2
128957553v4

| | | | | | |
|---|---|---|---|---|---|
| 7 | View | $62554.91 | 04/26/2023 | 27653769 | Wells Fargo Financial Leasing, Inc. |
| 8 | View | $7500.00 | 04/27/2023 | 27654595 | JSW Consulting LLC |
| 9 | View | $99.13 | 04/27/2023 | 27654802 | Bio-Rad Laboratories, Inc. |
| 10-2 | View | $32944.59 | 09/01/2023 | 27654894 | UnitedHealthcare Insurance Company |
| 11 | View | $57692.31 | 04/28/2023 | 27656350 | Rachel Brown |
| 12 | View | $17315.50 | 04/28/2023 | 27658792 | Axiom Diagnostics, inc. |
| 13 | View | $3315.98 | 05/01/2023 | 27659542 | Brehob Corporation |
| 14 | View | $1873.87 | 05/04/2023 | 27662140 | Change Healthcare |
| 15 | View | $6410750.83 | 05/04/2023 | 27662297 | Comerica Bank |
| 16 | View | $8482.00 | 05/05/2023 | 27641393 | Benkoff Health Law, PLLC |
| 17 | View | $2010331.36 | 05/05/2023 | 27661216 | INTERNAL REVENUE SERVICE |
| 18 | View | $8412.26 | 05/11/2023 | 27641391 | BCC Distribution, Inc. |
| 19 | View | $56956.72 | 05/12/2023 | 27670105 | Chris Pittenturf |
| 20-2 | View | $5437.00 | 06/13/2023 | 27670161 | Superior Medical Waste Disposal, LLC |
| 21 | View | $13453.56 | 05/12/2023 | 27670658 | Dell Marketing L.P. |
| 22 | View | $12862.50 | 05/16/2023 | 27641522 | Seyburn Kahn Attorneys & Counselors |

129020580v2
128957553v4

| | | | | | |
|---|---|---|---|---|---|
| 23-2 | View | $231210.94 | 05/17/2023 | 27641369 | 6600 Highland, LLC |
| 24 | View | | 05/17/2023 | 27675054 | Hartford Fire Insurance Company |
| 25 | View | $272679.09 | 05/17/2023 | 27675096 | Medical Real Estate Group, LLC |
| 26 | View | $18000.00 | 05/18/2023 | 27641493 | Michigan Legislative Consultants, Inc. |
| 27 | View | $14684.25 | 05/22/2023 | 27678988 | Kerr, Russell and Weber, PLC |
| 28 | View | $258577.50 | 05/22/2023 | 27679594 | Diesel Funding, LLC |
| 29 | View | $8533.12 | 05/23/2023 | 27681926 | EXAGEN INC. |
| 30 | View | $4412.19 | 05/23/2023 | 27682072 | Sigma-Aldrich, Inc |
| 31 | View | $5330.30 | 05/23/2023 | 27641407 | Cerilliant Corporation |
| 32 | View | $56500.00 | 06/05/2023 | 27641468 | LabPath Consulting |
| 33 | View | $42000.00 | 06/08/2023 | 27696584 | Gena's Timeless Cleaning, LLC |
| 34 | View | $5964.28 | 06/09/2023 | 27696695 | FISHMAN STEWART PLLC |
| 35 | View | $64013.79 | 06/10/2023 | 27641439 | Empirical Biosciences |
| 36 | View | $906848.00 | 06/11/2023 | 27697804 | Detroit Pistons Basketball Company |
| 37 | View | $4307.50 | 06/12/2023 | 27698308 | HealthCare Appraisers, Inc. |
| 38 | View | $4929.46 | 06/12/2023 | 27641389 | AVL-Creative |

53

| 39 | View | $13941.00 | 06/12/2023 | 27641491 | Mercedes Scientific |
|---|---|---|---|---|---|
| 40 | View | $3405.00 | 06/15/2023 | 27641547 | UHY, LLP |
| 41 | View | $12171.51 | 06/16/2023 | 27704494 | DTE ENERGY |
| 42 | View | $412.50 | 06/21/2023 | 27641442 | Ferrellgas |
| 43 | View | $2900.00 | 06/22/2023 | 27641406 | Cerbo, LLC |
| 44 | View | $214601.51 | 06/28/2023 | 27713590 | Hogan Lovells US LLP |
| 45 | View | $236941.46 | 06/28/2023 | 27713788 | McLaren Health Management Group |
| 46 | View | $6970.00 | 06/29/2023 | 27716894 | Polar Ice Co. |
| 47 | View | $1250.80 | 07/05/2023 | 27641444 | Fire Alarm Services |
| 48 | View | $885000.00 | 07/05/2023 | 27641373 | Advancing Health Inc. |
| 49 | View | $7043.29 | 07/06/2023 | 27721557 | Robert G. Read |
| 50 | View | $49307.76 | 07/11/2023 | 27726355 | Mark C. Beauchamp |
| 51 | View | $46324.45 | 07/14/2023 | 27730363 | Abbott Diagnostics Division |
| 52 | View | $180266.91 | 07/14/2023 | 27730546 | Abbott Molecular Division of |
| 53 | View | $89500.00 | 07/17/2023 | 27641503 | Orchard Software Corporation |
| 54 | View | $165000.00 | 07/21/2023 | 27641478 | Little Sonia Real Estate LLC |

129020580v2
128957553v4

| 55 | View | $100421.60 | 07/25/2023 | 27641476 | Lippitt O'Keefe, PLLC |
|----|------|-----------|------------|----------|----------------------|
| 56 | View | $14834.69 | 07/27/2023 | 27742695 | Labtek, Inc. |
| 57 | View | $15005.89 | 07/31/2023 | 27745590 | Younis Enterprises, LLC |
| 58 | View | $1234050.00 | 08/01/2023 | 27748699 | Gemini Lab Group, LLC |
| 59 | View | $29400.00 | 08/03/2023 | 27641489 | MedMatch |
| 60 | View | $23728.89 | 08/11/2023 | 27641536 | Team Financial Group |
| 61 | View | $45416.59 | 08/11/2023 | 27641536 | Team Financial Group |
| 62 | View | $232683.65 | 08/11/2023 | 27641536 | Team Financial Group |
| 63 | View | $18363.87 | 08/11/2023 | 27641536 | Team Financial Group |
| 64 | View | $42992.49 | 08/11/2023 | 27641536 | Team Financial Group |
| 65 | View | $43027.36 | 08/11/2023 | 27641536 | Team Financial Group |
| 66 | View | $203801.63 | 08/11/2023 | 27641536 | Team Financial Group |
| 67 | View | $267677.69 | 08/11/2023 | 27641536 | Team Financial Group |
| 68 | View | $194504.75 | 08/11/2023 | 27641536 | Team Financial Group |
| 69 | View | $36019.73 | 08/11/2023 | 27641536 | Team Financial Group |
| 70 | View | $26315.52 | 08/11/2023 | 27641536 | Team Financial Group |

129020580v2
128957553v4

| | | | | | |
|---|---|---|---|---|---|
| 71 | View | $1707.66 | 08/11/2023 | 27641536 | Team Financial Group |
| 72 | View | $13500.00 | 08/14/2023 | 27641421 | Darren Cain |
| 73 | View | $26381.00 | 08/15/2023 | 27762006 | Translational Software Inc |
| 74 | View | $2676.00 | 08/16/2023 | 27762835 | Detroit Technical Equipment Co. |
| 75-2 | View | $30012.01 | 08/16/2023 | 27763370 | Cardinal Health 200, LLC |
| 76 | View | $610147.04 | 08/17/2023 | 27764652 | Medspeed LLC |
| 77 | View | $21478.62 | 08/17/2023 | 27764825 | First Insurance Funding, a Division of Lake Forest |
| 78 | View | $29321.93 | 08/18/2023 | 27765191 | United of Omaha Life Insurance Co. |
| 79 | View | $1111587.85 | 08/21/2023 | 27766472 | Coronis Health RCM, LLC |
| 80 | View | $62030.93 | 08/21/2023 | 27766848 | Fisher Healthcare, a division of Fisher Scientific |
| 81 | View | $56539.92 | 08/21/2023 | 27767084 | Microgenics, Inc. |
| 82 | View | $3900.00 | 08/21/2023 | 27641512 | Predictive Health Diagnostics, Inc. |
| 83 | View | $14940749.14 | 08/21/2023 | 27767530 | Auxo Investment Partners LLC |
| 84 | View | $122715.36 | 08/21/2023 | 27641456 | Henry Schein |
| 85 | View | $2629000.00 | 08/31/2023 | 27641540 | The Sports Marketing Agency, INC |
| 86 | View | $914.84 | 09/06/2023 | 27641494 | Microbiologics |

### M.     Insider Transactions

Following the Petition Date, there have been no insider transactions except for payment of compensation to Mr. Grossi for his post-petition services to the Debtor through mid-August 2023. Postpetition, the Debtor compensated Mr. Grossi in the total amount of $40,383.68 for his postpetition services.

## III. ASSETS AND LIABILITIES

### A.     Liquidation Analysis

Debtor(s)' Liquidation Analysis is attached to the Disclosure Statement as Exhibit D.

In the event that the Plan is not accepted by the Creditors or is not otherwise confirmed by the Bankruptcy Court, Debtor believes that its assets would be liquidated in a straight bankruptcy liquidation under Chapter 7 of the Code, with no distribution to general unsecured creditors.

### B.     Risks, Conditions and Assumptions In Liquidation Analysis

Debtor valued its assets based on the filed schedules. Risks, conditions and assumptions are outlined in the Liquidation Analysis.

### C.     Causes of Action

Debtor or the Liquidating Trustee will conduct an avoidance action analysis to determine if any suitable actions exist and will also continue to litigate the Allowance of the Claims and the administrative expense Claims. Debtor reserves the ability to file a preliminary analysis as a Plan Supplement.

### D.     Priority and Secured Claims and Administrative Expenses

There are approximately $22,901,532.00 in Secured Claims and $162,000.00 in Priority Claims that have been asserted against the Debtor, without taking into account any deficiency Claims for undersecured Claims, or the IRS Claim or potential offset/recoupment claims by the USA. It is estimated that the amount of

129020580v2
128957553v4

unpaid Administrative Expenses is $1,770,477, plus Accrued Professional Fees for which no fee applications have yet been filed (but for which Auxo has agreed to provide a Professional Fee Carveout in the aggregate amount of $600,000, with $350,000 being provided to the Committee's Retained Professionals and $250,000 being provided to the Debtor's Retained Professionals).

### E.    Unsecured Claims

There are approximately $8,993,187.00 in scheduled general Unsecured Claims that have been asserted against Debtor, without taking into account deficiency claims of Secured Creditors.

### F.    Guaranteed Debt

The following obligations of the Debtor were guaranteed by Mr. Grossi as indicated below: a. the commercial real estate lease of between the Debtor and its landlord, Medical Real Estate Group, LLC and 6600 Highland LLC;  b. the Debtor's secured loan by Comerica Bank, N.A. ("Comerica").

Debtor did not guarantee any obligations of third parties.

### IV.    IMPLEMENTATION OF PLAN

### A.    Summary of Plan Payments

See Articles II and III of the Plan filed with this Disclosure Statement.

### B.    Financial Information

The information contained in this Disclosure Statement has not been subject to a certified audit.  The information has been compiled from the records of Debtor and is true and accurate to the best of Debtor's knowledge, information and belief.

Accompanying the Plan is a summary of Debtor's financial information relating to the Debtor's post-petition operations.

Accompanying the Plan is a summary of Debtor's financial condition prior to the Petition Date.

Because Debtor will cease to continue to operate, no projections are attached.

## C. **Post-Confirmation Details**

The Liquidating Trustee shall administer the assets remaining in the Debtor on the Confirmation Date.

## D. **Tax Ramifications**

### 1. **To Debtor**

Debtor has retained professionals to make this determination.

### 2. **To Creditors**

The tax consequences to each Creditor resulting from confirmation of the Plan may vary depending upon each Creditor's particular circumstances. Debtor recommends that creditors or holders of Claims obtain independent tax counsel to advise them as to the tax consequences of the Plan.

## V. **LEGAL REQUIREMENTS**

### A. **Voting procedures**

Under the Bankruptcy Code, the only Classes that are entitled to vote to accept or reject a Plan are classes of Claims, or Equity Interest that are impaired under the Plan. Accordingly, Classes of Claims or Interests that are not impaired are not entitled to vote on the Plan.

Creditors that hold Claims in more than one impaired Class are entitled to vote separately in each Class. Such a Creditor will receive a separate ballot for all of its Claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A Creditor who asserts a Claim in more than one Class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

129020580v2
128957553v4

Votes on the Plan will be counted only with respect to Claims:

(1) that are listed on the Debtor's Schedules other than as disputed, contingent or unliquidated; or

(2) for which a proof of Claim was filed on or before the bar date set by the Court for the filing of proofs of Claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order).

However, any vote by a holder of a Claim will not be counted if such Claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the Plan by each holder of a Claim or Interest in an impaired class is important. After carefully reviewing the Plan and Disclosure Statement, each holder of such a Claim or Interest should vote on the enclosed ballot either to accept or to reject the Plan, and then return the ballot by mail to the Debtor's attorney by the deadline previously established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

### B.    <u>Acceptance</u>

The Bankruptcy Code defines acceptance of a Plan by an impaired Class of Claims as acceptance by the holders of at least two thirds (2/3's) in dollar amount, and more than one half (50%) in number, of the Claims of that Class which actually cast ballots. The Bankruptcy Code defines acceptance of a Plan by an impaired Class of Equity Interests as acceptance by holders of at least two thirds (2/3's) in number of the Equity Interests of

that Class that actually cast ballots. If no Creditor or Interest holder in an impaired Class votes, then that Class has not accepted the Plan, in which case, the Debtor will seek to confirm the Plan under Section 1129(b) of the Bankruptcy Code.

### C. Confirmation

Section 1129(a) of the Bankruptcy Code establishes conditions for the confirmation of a Plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a Plan under 11 U.S.C. § 1129(a) are these:

1.      Each class of impaired creditors and interest must accept the Plan, as described in paragraph VI.B., above.

2.      Either each holder of a claim or interest in a class must accept the Plan, or the Plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

### D. Modification

The Debtor reserves the right to modify or withdraw the Plan at any time before confirmation.

### E. Effect of confirmation

If the Plan is confirmed by the Court:

1.      Its terms are binding on the Debtor, all Creditors, Equity Holders and other parties in interest, regardless of whether they have accepted the Plan;

2.      Except as provided in the Plan:

(a)    In the case of a corporation that is reorganizing and continuing business:

(i)    All claims and interests will be discharged;

(ii)    Creditors and shareholders will be prohibited from asserting their claims against or interest in the Debtor or its assets.

(b)    In the case of a corporation that is liquidating and not continuing its business:

(i)    Claims and interests will not be discharged.

(ii)    Creditors and shareholders will not be prohibited from asserting their claims against or interests in the Debtor or its assets.

(c)    In the case of an individual or husband and wife:

(i)    Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 727(a). Unless the Court orders otherwise, the discharge will be entered after completion of Plan payments as provided in § 1141(d)(5)(a). It is the usual practice of the Court to close Chapter 11 cases after confirmation.  It is the responsibility of the individual Debtor to file a motion to reopen the case for entry of discharge upon completion of Plan payments.

(ii)    Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 727(a).

The Plan provides for the entity's liquidation pursuant to the terms of the Liquidating Trust Agreement and therefore, claims against the Debtor will not be discharged.

**DEBTOR**

By:    _____/s/James  Grossi_____
            James Grossi, CEO and Managing
            Member

62

Prepared By:

By:  /s/ Robert N. Bassel
Robert N. Bassel (P 48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
248.677.1234

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In the Matter of:

ARK LABORATORY, LLC,                  Case No. 23-43403-mlo
                                        Chapter 11
        Debtor.                   Hon, Maria L. Oxholm

_____/

**BALLOT FOR ACCEPTING OR REJECTING**
**<u>DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN</u>**

     **Debtor has filed a Combined Disclosure Statement (the "<u>Disclosure Statement</u>") and Plan of liquidation, as amended (the "<u>Plan</u>") for the Debtor in this Chapter 11 Case.**

     **You should review the Disclosure Statement and the Plan before you vote.   You may wish to seek legal advice concerning the Disclosure Statement and Plan and your classification and treatment under the Plan.**

     **To have your vote count, you must complete and send this ballot to Robert Bassel, P.O. Box T, Clinton, MI 49236 by email at <u>bbassel@gmail.com</u> or fax at 248 928 0656  on or before _____- unless extended.  If the Plan is confirmed by the Bankruptcy Court it will be binding on you, whether or not you vote.**

Dated: _____

Name of Entity and Signature: _____

Amount of Claim or Interest: _____ _____

**_____ Accept           _____ Reject**

---

**RETURN THIS BALLOT TO**: Robert Bassel, P.O. Box T, Clinton, MI 49236, (248) 677-1234
bbassel@gmail.com or via Facsimile (248) 928-0656

**<u>EXHIBITS TO THE PLAN</u>**

64

**EXHIBIT A:  LIQUIDATING TRUST AGREEMENT**


**EXHIBIT B:  NON-EXCLUSIVE LIST OF CAUSES OF ACTION AND AVOIDANCE ACTIONS**


**EXHIBIT C:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED TO THE LIQUIDATING TRUSTEE**


**EXHIBIT D:  LIQUIDATION ANALYSIS**


**EXHIBIT E:  PREPETITION FINANCIALS**


**EXHIBIT F:  POSTPETITION FINANCIALS**


**<u>NOTE:</u>**      **To the extent that the foregoing Exhibits are not annexed to this Plan, such Exhibits will be filed with the Bankruptcy Court in Plan Supplement(s).**

129020580v2
128957553v4

**EXHIBIT A**

**LIQUIDATING TRUST AGREEMENT**

129020580v2
128957553v4

# EXHIBIT B

## NON-EXCLUSIVE LIST OF CAUSES OF ACTION AND AVOIDANCE ACTIONS

129020580v2
128957553v4

**EXHIBIT C**

**EXECUTORY CONTRACTS TO BE ASSUMED BY THE DEBTOR AND ASSIGNED TO THE LIQUIDATING TRUSTEE**

**Exhibit D    LIQUIDATION ANALYSIS AS OF PETITION DATE – April 12, 2023
ARK LABORATORY, LLC**

| COLLATERAL | SECURED CREDITOR | MARKET VALUE/ FORCED SALE VALUE[1] | APPROXIMAT E AMOUNT OF SECURED CLAIMS | EQUITY USING FORCED SALE VALUE |
|---|---|---|---|---|
| Real Estate | n.a. | n.a. | n.a. | n.a. |
| Cash | Auxo Investment Partners | $101,027 | $22,901,532 | $0 |
| Accounts Receivable | Auxo Investment Partners/USA [there is a dispute as to the priority and extent of any USA lien on receivables] | $7,490,816/ 1,872,704 | $22,901,532 [an amount no less than] | $0 |
| Inventory | Auxo Investment Partners | $581,697/ 100,000 | $22,901,532 | $0 |
| Furniture, Fixtures and Equipment | Auxo Investment Partners | $2,437,242/ 487,448 | $22,901,532 | $0 |
| Leaseholds and Misc. | Auxo Investment Partners | $479,657/ 0 | $22,901,532 | $0 |
| Covid Testing Claims | Auxo Investment Partners/USA [there is a dispute as to the priority and extent of any USA lien on these claims] | $4,000,000**/ 2,000,000** | $22,901,532 [an amount no less than] | $0 |
| Avoidance Actions | | Unknown | $0 | Unknown |
| **TOTAL** | | $11,028,946/ 4,561,179 | | $0 |

---

[1] Unless otherwise stated, values are not based upon appraisals and are estimated. The receivables are "medical receivables", which are difficult to collect if Debtor were liquidated, and the liquidation value reflects this difficulty in collections.  Because of the type of entity that the Debtor is, there is a significant risk that the liquidation value of the Debtor's assets would be minimal.

** The value of the Covid testing claims is unknown, however, Debtor believes that it is at least $4 million and is using that number for liquidation analysis purposes.

## Post-Petition Liabilities

      Chapter 11 Administrative Claims [estimated]:          $ 1,770,477

      Chapter 7 Administrative Claims [estimated]:          $   350,000

## Pre-Petition Liabilities

      Secured Claims:          $22,901,532

      Anticipated Priority Claims          $   162,548

      General Unsecured Claims from bankruptcy schedules:      $ 8,993,187

## Distribution of Proceeds of Assets in Event of Chapter 7 Liquidation

Gross Proceeds from Liquidation:          $ 4,561,179

- Less Total of:
-- Secured Claims:          $ 22,901,532
-- Priority  Claims:          $   162,548
- Less Total of:
-- Admin. Expenses:          $2,120,477

_____

      TOTAL:          $ 0

TOTAL for unencumbered assets
available to unsecured creditors          $ 0

-    Total Unsecured Claims          $8,993,187

- Percent Available to Pre-Petition
  Unsecured Creditors          0%

- Proceeds Available for Equity Interests:          residual

Based upon the Liquidation Analysis set forth above, the Debtor believes that a liquidation would result in a substantially smaller distribution to every class of its creditors than the proposed treatment set forth in the Plan.

| Ark Laboratory Prepetition Financials | Jan - Dec 2020 | Jan - Dec 2021 | Jan - Dec 2022 | Jan 1 - Apr 12, 2023 | Total |
|---|---|---|---|---|---|
| **Income** | | | | | |
| **40000 Sales** | 32,168,395.38 | 46,075,178.76 | 23,593,589.65 | 5,321,791.00 | 107,158,954.79 |
| **40050 Sales - COVID** | 4,395,677.66 | 2,192,322.65 | 91,677.31 | 69,164.08 | 6,748,841.70 |
| **Total 40000 Sales** | **$36,564,073.04** | **$ 48,267,501.41** | **$ 23,685,266.96** | **$ 5,390,955.08** | **$113,907,796.49** |
| **40100 Refunds-Allowances** | -45,028.43 | -57,912.19 | -300.00 | | -103,240.62 |
| **41000 Uncategorized Income** | 24,885.74 | 5,397.28 | 420.56 | | 30,703.58 |
| **42500 Sales of Product Income** | | | 16,621.39 | | 16,621.39 |
| **Unapplied Cash Payment Income** | 0.00 | 400.00 | 1,595.00 | 0.00 | 1,995.00 |
| **Total Income** | **$36,543,930.35** | **$ 48,215,386.50** | **$ 23,703,603.91** | **$ 5,390,955.08** | **$113,853,875.84** |
| **Gross Profit** | **$36,543,930.35** | **$ 48,215,386.50** | **$ 23,703,603.91** | **$ 5,390,955.08** | **$113,853,875.84** |
| **Expenses** | | | | | |
| **50020 Freight & delivery - COS (deleted)** | 7,941.10 | 9,906.26 | | | 17,847.36 |
| **50030 Purchases - COS** | | | 0.00 | | 0.00 |
| **50040 Supplies & Materials - COGS (deleted)** | 91,804.31 | 1,254.62 | | | 93,058.93 |
| **50045 Credit Card Fees** | | 32,797.47 | 14,263.37 | 3,198.54 | 50,259.38 |
| **50060 Cost of labor - COS** | | 6,873,368.07 | | | 6,873,368.07 |
| **50250 Auto** | 26.00 | 135,003.75 | 397.75 | 123.77 | 135,551.27 |
| **50255 Parking** | 122.16 | 525.00 | 594.88 | | 1,242.04 |
| **50260 Car Rental** | | 1,645.50 | 3,666.29 | 543.85 | 5,855.64 |
| **50265 Taxi** | | 334.36 | 25.15 | | 359.51 |
| **50300 Advertising** | 8,563.14 | 21,749.50 | 588.00 | | 30,900.64 |
| **50320 Application Fees** | 10.00 | | | | 10.00 |
| **50500 Bank Charges** | 16,068.20 | 28,559.33 | 30,490.08 | 28,670.65 | 103,788.26 |
| **50600 Bad Debts** | | | 156.15 | | 156.15 |
| **50750 Charitable Donations** | 2,000.00 | 102,295.00 | 37,435.97 | | 141,730.97 |
| **51000 Courier Fee** | 41,200.00 | 51,000.00 | 20,500.00 | | 112,700.00 |
| **51250 Marketing Fees** | 3,163,527.00 | 6,655,648.00 | 5,187,256.57 | 698,000.00 | 15,704,431.57 |
| **51500 Computer Services** | 288,575.73 | 582,864.22 | 113,937.09 | | 985,377.04 |
| **51510 IT Hardware** | | 1,955.56 | 107,421.14 | 3,231.96 | 112,608.66 |
| **51600 Contract Labor** | 23,408.00 | 105,582.64 | 122,934.19 | 21,362.60 | 273,287.43 |
| **51750 Credentialing** | 20,104.05 | 10,143.20 | | | 30,247.25 |

| Ark Laboratory Prepetition Financials | Jan - Dec 2020 | Jan - Dec 2021 | Jan - Dec 2022 | Jan 1 - Apr 12, 2023 | Total |
|---|---|---|---|---|---|
| 51800 Fuel/Mileage | 2,622.16 | 13,685.15 | 305,525.33 | 1,624.55 | 323,457.19 |
| 51850 Disposal Fees | 1,845.50 | 14,689.38 | | | 16,534.88 |
| 51900 Dues & Subscriptions | 23.98 | 26,235.50 | 20,382.12 | 4,957.92 | 51,599.52 |
| 52000 External Labor | 8,081.00 | | | 3,111.36 | 11,192.36 |
| 52100 EMR | 609.96 | | | | 609.96 |
| 52150 Equipment Validation | 29,849.87 | 27,247.57 | 5,064.84 | 1,097.82 | 63,260.10 |
| 52200 Insurance | 2,972.40 | | | | 2,972.40 |
| 52210 Insurance - Disability | 10,669.73 | 2,125.67 | -7,507.38 | -3,772.78 | 1,515.24 |
| 52215 Workers Comp | | 110,906.48 | 90,809.56 | 31,071.06 | 232,787.10 |
| 52220 Insurance - Liability | 22,227.98 | 12,646.32 | 59,324.43 | 84,822.92 | 179,021.65 |
| 52221 Insurance - Property | | | 74,292.00 | | 74,292.00 |
| 52223 Insurance - Employee Portion | | -318,615.04 | -388,390.56 | -57,246.08 | -764,251.68 |
| 52224 Insurance - Cyber | | | 11,679.45 | | 11,679.45 |
| 52250 Insurance - Health | 490,301.87 | 1,047,668.69 | 996,723.09 | 173,523.04 | 2,708,216.69 |
| 52275 Insurance - D & O | | 54,028.00 | 6,368.00 | | 60,396.00 |
| 52300 Insurance - Life/AD&D/Dental/Vision | | 79,440.77 | 157,411.89 | 18,579.01 | 255,431.67 |
| 52500 Insurance - Life | 165,464.26 | 142,658.24 | 54,553.18 | 20,388.61 | 383,064.29 |
| 52750 Interest Expense | 110,022.23 | 1,875,282.95 | 2,209,342.39 | 792,486.29 | 4,987,133.86 |
| 52900 De minimus Asset Purchases | 254.39 | | | | 254.39 |
| 52950 Lab Fees | 87,981.04 | 183,580.57 | 201,832.06 | 74,482.14 | 547,875.81 |
| 53000 Legal & Professional Fees | | | 4,584.29 | 24,965.00 | 29,549.29 |
| 53010 HR Consulting | 58,935.99 | 81,163.80 | 25,437.50 | | 165,537.29 |
| 53030 Outside Legal | 136,343.89 | 230,261.78 | 203,054.49 | -63,900.00 | 505,760.16 |
| 53040 IT Consulting | 135,723.66 | 33,833.44 | 31,834.00 | 16,465.00 | 217,856.10 |
| 53050 Compliance | 4,413.00 | 26,249.00 | 20,666.98 | 9,252.12 | 60,581.10 |
| 53060 Outside CPA | 18,122.00 | 34,435.00 | 51,071.00 | 38,910.00 | 142,538.00 |
| 53090 Outside Consulting | 700,874.85 | 631,552.13 | 374,066.47 | 56,000.00 | 1,762,493.45 |
| 53095 Pension Plan Administration | | 1,000.00 | | | 1,000.00 |
| Total 53000 Legal & Professional Fees | $ 1,054,413.39 | $ 1,038,495.15 | $ 710,714.73 | $ 81,692.12 | $ 2,885,315.39 |
| 53250 Licenses & Fees | 15,860.02 | 112,751.85 | 40,324.01 | 25.00 | 168,960.88 |

| Ark Laboratory Prepetition Financials | Jan - Dec 2020 | Jan - Dec 2021 | Jan - Dec 2022 | Jan 1 - Apr 12, 2023 | Total |
|---|---|---|---|---|---|
| 53260 Licenses & Fees - Infrastructure | | | 52,409.73 | 9,137.17 | 61,546.90 |
| 53270 Licenses & Fees - Business Operations | | | 39,914.16 | 24,680.66 | 64,594.82 |
| 53280 Licenses & Fees - Lab Operations | | | 763,403.39 | 138,641.55 | 902,044.94 |
| 53740 Employee Meals | | 600.77 | 9,663.37 | 350.80 | 10,614.94 |
| 53741 Holiday Party | | 200.00 | 7,403.09 | | 7,603.09 |
| 53750 Meals and Entertainment | 3,620.21 | 32,637.58 | 27,372.89 | 27,372.10 | 91,002.78 |
| 53751 Meals | 1,745.85 | 32,558.72 | 36,681.21 | 9,153.55 | 80,139.33 |
| 53760 Entertainment | | 196,132.82 | 232,162.46 | -250.20 | 428,045.08 |
| 53770 Training/Education | 13,307.67 | 137,180.58 | 76,506.00 | | 226,994.25 |
| 54000 Medical Billing | 1,126,785.97 | 1,620,522.87 | 867,518.50 | 291,000.00 | 3,905,827.34 |
| 54200 Office Expenses | 1,116,678.22 | 448,827.80 | 147,357.34 | 8,955.03 | 1,721,818.39 |
| 54210 Other General and Admin Expenses | | 7,347.48 | 2,585.34 | | 9,932.82 |
| 54250 Medical Directorship | 9,000.00 | 43,000.00 | 41,000.00 | 12,000.00 | 105,000.00 |
| 54300 Rent or Lease | 694,084.04 | 1,049,971.25 | 873,773.46 | 285,098.53 | 2,902,927.28 |
| 54310 Equipment Lease | 2,191.13 | 34,114.51 | 65,568.12 | 25,967.38 | 127,841.14 |
| 54400 Repair & Maintenance | 148,070.89 | 340,347.04 | 325,985.65 | 89,623.83 | 904,027.41 |
| 54500 Payroll | | 6,356,025.39 | 123,509.74 | 703,239.39 | 7,182,774.52 |
| 54510 Hourly | | 181,106.71 | 5,461,348.30 | 288,923.41 | 5,931,378.42 |
| 54520 Salary | | 218,042.93 | 7,047,871.31 | 868,159.00 | 8,134,073.24 |
| 54525 Shift Dif | | 63,936.68 | 64,153.87 | 2,771.84 | 130,862.39 |
| 54530 Overtime | | 17,496.90 | 287,597.20 | 4,591.76 | 309,685.86 |
| 54535 Bonus | | 147,900.00 | 582,653.67 | 4,071.99 | 734,625.66 |
| 54540 Car Allowance | | 21,500.00 | 202,250.00 | 11,500.00 | 235,250.00 |
| 54550 Commissions | 27,250.00 | | | | 27,250.00 |
| 54560 Retro Pay | | | 15,833.29 | 16,289.13 | 32,122.42 |
| 54570 Holiday | | | 271,874.41 | | 271,874.41 |
| Total 54500 Payroll | $ 27,250.00 | $ 7,006,008.61 | $ 14,057,091.79 | $ 1,899,546.52 | $ 22,989,896.92 |
| 54750 Payroll Fees | 4,385.28 | | 19,899.45 | 11,970.77 | 36,255.50 |
| 55000 Payroll Taxes | -262,265.37 | -389.46 | | | -262,654.83 |
| 55010 Payroll Taxes - FUTA | | 13,328.88 | 261,976.80 | 92,267.70 | 367,573.38 |

| Ark Laboratory Prepetition Financials | Jan - Dec 2020 | Jan - Dec 2021 | Jan - Dec 2022 | Jan 1 - Apr 12, 2023 | Total |
|---|---|---|---|---|---|
| 55015 SUTA | | 123,313.47 | 140,958.44 | 21,869.30 | 286,141.21 |
| 55030 Social Security Expense | | 766,405.59 | 674,127.75 | | 1,440,533.34 |
| 55040 Medicare Expense | | 198,862.81 | 162,814.02 | | 361,676.83 |
| 55100 Payroll Taxes - Unemployment | | | | | 0.00 |
| 55107 MI Unemployment | 592.34 | | | | 592.34 |
| Total 55100 Payroll Taxes - Unemployment | $ 592.34 | $ 0.00 | $ 0.00 | $ 0.00 | $ 592.34 |
| Total 55000 Payroll Taxes | -$ 261,673.03 | $ 1,101,521.29 | $ 1,239,877.01 | $ 114,137.00 | $ 2,193,862.27 |
| 55210 PEO Costs | 16,261,741.52 | 141,263.04 | 118,463.33 | | 16,521,467.89 |
| 55250 Promotional | 99,169.23 | 70,235.65 | 17,364.00 | | 186,768.88 |
| 55400 Settlement | 781,354.00 | 523,952.90 | | | 1,305,306.90 |
| 55500 Shipping and delivery expense | 342,010.79 | 283,864.47 | 349,509.96 | 242,234.91 | 1,217,620.13 |
| 55600 Freight & Delivery (deleted) | 500.00 | | | | 500.00 |
| 55650 Recruiting Expense | | 232,165.82 | 183,002.42 | 20,847.00 | 436,015.24 |
| 55700 Specimen Processing | 43,627.00 | | | | 43,627.00 |
| 55750 Stationery & Printing | 216,517.08 | 134,085.91 | 10,797.70 | 1,315.45 | 362,716.14 |
| 55800 Supplies | 4,941,798.87 | 7,378,678.10 | 3,952,816.04 | 828,346.94 | 17,101,639.95 |
| 55900 Taxes & Licenses | | 2,922.14 | 15,543.14 | 1,197.42 | 19,662.70 |
| 56000 Telephone | 4,523.30 | 22,966.57 | 38,453.65 | 5,632.47 | 71,575.99 |
| 56250 Travel | 28,004.91 | 106,625.50 | 45,821.91 | -1,206.76 | 179,245.56 |
| 56500 Travel Meals | | 7,521.53 | 6,224.70 | | 13,746.23 |
| 56600 Utilities | 29,310.66 | 30,313.15 | 84,356.27 | 20,869.40 | 164,849.48 |
| 56650 Security Alarm | 9,164.04 | 7,615.72 | 2,696.94 | | 19,476.70 |
| 56700 Cleaning Service | 26,350.40 | 69,851.54 | 96,340.00 | 24,000.00 | 216,541.94 |
| 56750 Uncategorized Expense | | 842.75 | 15,538.74 | | 16,381.49 |
| 56900 Gifts - employee | | 4,587.82 | 6,140.88 | 182.60 | 10,911.30 |
| 56910 Nondeductible Gifts | | | 85.20 | | 85.20 |
| 56980 Uniforms | 16,367.32 | 44,994.45 | 64,324.40 | 14,229.11 | 139,915.28 |
| 57000 Web Hosting | 5,348.53 | | | | 5,348.53 |
| 59988 Waste Management | 4,838.78 | 47,007.76 | 52,436.53 | 12,154.92 | 116,437.99 |
| 69000 Unapplied Cash Bill Payment Expense | | 121.77 | 11,270.00 | -11,391.77 | 0.00 |

| Ark Laboratory Prepetition Financials | Jan - Dec 2020 | Jan - Dec 2021 | Jan - Dec 2022 | Jan 1 - Apr 12, 2023 | Total |
|---|---|---|---|---|---|
| **71000 941 Pentalties** | | 34,391.45 | | | 34,391.45 |
| **99900 Ask my Accountant** | 5,526.15 | 0.00 | | | 5,526.15 |
| **99999 Expense Reports** | | 222,643.02 | 359,696.68 | 115,578.51 | 697,918.21 |
| **Total Expenses** | $31,368,148.28 | $ 40,455,082.11 | $ 34,505,171.22 | $ 6,203,349.24 | $112,531,750.85 |
| **Net Operating Income** | $ 5,175,782.07 | $ 7,760,304.39 | -$ 10,801,567.31 | -$ 812,394.16 | $ 1,322,124.99 |
| **Other Income** | | | | | |
| **52800 Interest Earned** | 146.30 | 409.22 | 26.91 | 0.04 | 582.47 |
| **90001 Forgiveness of Debt Income** | 742,972.28 | | | | 742,972.28 |
| **Total Other Income** | $ 743,118.58 | $ 409.22 | $ 26.91 | $ 0.04 | $ 743,554.75 |
| **Other Expenses** | | | | | |
| **54100 Depreciation** | 180,968.00 | 721,602.70 | 859,406.70 | 218,026.02 | 1,980,003.42 |
| **57250 Miscellaneous** | | 50,000.00 | | -25.88 | 49,974.12 |
| **57300 Amortization Expense** | 5,000.00 | -5,000.00 | 0.00 | | 0.00 |
| **58000 Transaction Costs** | | 877,400.00 | | | 877,400.00 |
| **60000 Fixed Asset Disposals Gain or Loss** | | 187,063.91 | | | 187,063.91 |
| **75000 Income Tax Expense** | | | 135,300.00 | | 135,300.00 |
| **Total Other Expenses** | $ 185,968.00 | $ 1,831,066.61 | $ 994,706.70 | $ 218,000.14 | $ 3,229,741.45 |
| **Net Other Income** | $ 557,150.58 | -$ 1,830,657.39 | -$ 994,679.79 | -$ 218,000.10 | -$ 2,486,186.70 |
| **Net Income** | $ 5,732,932.65 | $ 5,929,647.00 | -$ 11,796,247.10 | -$ 1,030,394.26 | -$ 1,164,061.71 |

**Ark Laboratory Postpetition Financials**

| | Apr 13-30, 2023 | May 2023 | Jun 2023 | Jul 2023 | Aug 2023 | Total |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| **40000 Sales** | 730,929.94 | 1,509,141.25 | 981,967.76 | 637,471.61 | 664,318.89 | 4,523,829.45 |
| **Total Income** | $ 730,929.94 | $1,509,141.25 | $ 981,967.76 | $ 637,471.61 | $ 664,318.89 | $ 4,523,829.45 |
| **Gross Profit** | $ 730,929.94 | $1,509,141.25 | $ 981,967.76 | $ 637,471.61 | $ 664,318.89 | $ 4,523,829.45 |
| **Expenses** | | | | | | |
| 50045 Credit Card Fees | 29.85 | 651.86 | 931.56 | 603.71 | 778.98 | 2,995.96 |
| 50500 Bank Charges | 3,012.96 | 4,123.31 | 2,545.88 | 1,486.95 | 2,041.28 | 13,210.38 |
| 50650 Background Checks | | 0.00 | | | | 0.00 |
| 51000 Courier Fee | | 104,506.00 | 45,950.00 | 45,668.90 | 48,310.00 | 244,434.90 |
| 51250 Marketing Fees | 62,500.00 | 171,750.00 | 146,000.00 | 61,000.00 | 129,000.00 | 570,250.00 |
| 51510 IT Hardware | | 396.27 | | 178.67 | | 574.94 |
| 51600 Contract Labor | | 2,423.20 | | | 4,158.36 | 6,581.56 |
| 51800 Fuel/Mileage | 2,907.71 | 5,706.20 | 2,543.31 | 2,447.07 | 3,036.90 | 16,641.19 |
| 51900 Dues & Subscriptions | | | | | 2,990.00 | 2,990.00 |
| 52200 Insurance | | | | | -3,539.16 | -3,539.16 |
| 52210 Insurance - Disability | -1,617.60 | -1,397.27 | -1,708.21 | -1,322.62 | -1,346.94 | -7,392.64 |
| 52215 Workers Comp | | 5,912.06 | | | 14,467.46 | 20,379.52 |
| 52220 Insurance - Liability | -10,596.00 | 16,822.50 | 7,379.48 | 8,434.44 | 13,258.97 | 35,299.39 |
| 52223 Insurance - Employee Portion | -14,878.14 | -16,685.63 | -15,627.87 | -12,566.12 | -15,107.93 | -74,865.69 |
| 52250 Insurance - Health | | 63,045.08 | 155.00 | -11,425.47 | | 51,774.61 |
| 52300 Insurance - Life/AD&D/Dental/Vision | | 9,209.89 | 14,365.11 | | 6,569.35 | 30,144.35 |
| 52500 Insurance - Life | -678.16 | -541.51 | -656.81 | -539.23 | -567.13 | -2,982.84 |
| 52750 Interest Expense | 196,292.79 | 252,668.74 | 7,122.67 | 7,122.67 | 7,122.67 | 470,329.54 |
| 52756 Interest Paid - Huntington | -0.17 | | | | | -0.17 |
| 52950 Lab Fees | | 37,245.00 | 7,500.00 | 5,412.50 | 3,187.50 | 53,345.00 |
| 53000 Legal & Professional Fees | | | | | | 0.00 |
| 53030 Outside Legal | | | | 5,000.00 | | 5,000.00 |
| 53040 IT Consulting | | | | 2,148.00 | 1,726.00 | 3,874.00 |
| 53050 Compliance | | 3,114.00 | 721.60 | | 1,415.60 | 5,251.20 |
| **Total 53000 Legal & Professional Fees** | $ 0.00 | $ 3,114.00 | $ 721.60 | $ 7,148.00 | $ 3,141.60 | $ 14,125.20 |

# Ark Laboratory Postpetition Financials

| | Apr 13-30, 2023 | May 2023 | Jun 2023 | Jul 2023 | Aug 2023 | Total |
|---|---|---|---|---|---|---|
| 53250 Licenses & Fees | | 774.15 | | | 100.00 | 874.15 |
| 53260 Licenses & Fees - Infrastructure | | 2,011.51 | 2,268.46 | 2,228.64 | 6,013.97 | 12,522.58 |
| 53270 Licenses & Fees - Business Operations | 1,580.78 | 4,068.77 | 7,196.22 | 1,815.94 | 22,415.39 | 37,077.10 |
| 53280 Licenses & Fees - Lab Operations | | -657.00 | 20,924.25 | 4,275.00 | 54,635.43 | 79,177.68 |
| 53750 Meals and Entertainment | 1,264.82 | 4,525.73 | 8,521.54 | 3,581.92 | 6,912.65 | 24,806.66 |
| 53751 Meals | 794.41 | 287.72 | 5,286.05 | 1,722.48 | 330.56 | 8,421.22 |
| 53760 Entertainment | 2,101.27 | | | 95.00 | | 2,196.27 |
| 54000 Medical Billing | 26,220.00 | 103,772.00 | 14,000.00 | 25,000.00 | 20,000.00 | 188,992.00 |
| 54200 Office Expenses | 182.28 | 913.00 | 546.79 | 1,981.97 | 1,293.87 | 4,917.91 |
| 54250 Medical Directorship | | 0.00 | 4,500.00 | 6,000.00 | | 10,500.00 |
| 54300 Rent or Lease | | 54,525.91 | 60,165.54 | 82,352.58 | 106,523.62 | 303,567.65 |
| 54310 Equipment Lease | | 1,087.16 | | | | 1,087.16 |
| 54400 Repair & Maintenance | | 355.00 | 10,067.95 | 16,630.04 | 7,480.00 | 34,532.99 |
| 54500 Payroll | 65,984.52 | 118,816.33 | | | | 184,800.85 |
| 54510 Hourly | 256,947.25 | 203,392.08 | 174,050.87 | 167,778.77 | 165,435.38 | 967,604.35 |
| 54520 Salary | 118,206.69 | 174,022.63 | 395,916.52 | 274,564.33 | 243,561.79 | 1,206,271.96 |
| 54525 Shift Dif | 3,396.72 | 2,770.72 | 2,654.63 | 2,486.51 | 2,644.93 | 13,953.51 |
| 54530 Overtime | 4,138.70 | 3,177.10 | 2,992.76 | 2,955.32 | 2,180.55 | 15,444.43 |
| 54535 Bonus | -1,428.01 | 4,880.62 | 5,000.00 | | | 8,452.61 |
| 54540 Car Allowance | 2,000.00 | 5,500.00 | 8,000.00 | 4,500.00 | 5,800.00 | 25,800.00 |
| 54560 Retro Pay | | | | 1,282.07 | 641.03 | 1,923.10 |
| Total 54500 Payroll | $ 449,245.87 | $ 512,559.48 | $ 588,614.78 | $ 453,567.00 | $ 420,263.68 | $ 2,424,250.81 |
| 54750 Payroll Fees | 3,115.95 | 3,476.03 | 2,523.51 | 2,322.11 | 2,287.87 | 13,725.47 |
| 55000 Payroll Taxes | | | | | | 0.00 |
| 55010 Payroll Taxes - FUTA | 35,129.93 | 38,360.63 | 42,453.41 | 32,362.61 | 30,345.27 | 178,651.85 |
| 55015 SUTA | 13,336.21 | 4,814.27 | 1,322.27 | 430.93 | 784.77 | 20,688.45 |
| Total 55000 Payroll Taxes | $ 48,466.14 | $ 43,174.90 | $ 43,775.68 | $ 32,793.54 | $ 31,130.04 | $ 199,340.30 |
| 55500 Shipping and delivery expense | 0.00 | 9,031.19 | 3,886.47 | 1,188.35 | 7,564.71 | 21,670.72 |
| 55650 Recruiting Expense | | | | 898.00 | 449.00 | 1,347.00 |

**Ark Laboratory Postpetition Financials**

| | Apr 13-30, 2023 | May 2023 | Jun 2023 | Jul 2023 | Aug 2023 | Total |
|---|---|---|---|---|---|---|
| **55800 Supplies** | 30,720.05 | 289,689.46 | 109,350.83 | 76,139.46 | 220,437.19 | 726,336.99 |
| **56000 Telephone** | | 1,200.00 | 1,232.41 | 2,358.91 | 1,585.97 | 6,377.29 |
| **56250 Travel** | | | 1,850.04 | 1,462.68 | 892.44 | 4,205.16 |
| **56600 Utilities** | | 4,240.78 | 4,469.33 | | 10,608.94 | 19,319.05 |
| **56700 Cleaning Service** | | 531.61 | | | | 531.61 |
| **59988 Waste Management** | 1,300.00 | | 3,554.00 | 165.84 | 1,687.00 | 6,706.84 |
| **69000 Unapplied Cash Bill Payment Expense** | | 0.00 | 0.00 | 0.00 | | 0.00 |
| **99999 Expense Reports** | 1,868.58 | 7,707.15 | 11,235.97 | 17,863.25 | | 38,674.95 |
| **Total Expenses** | $ 803,833.39 | $1,702,224.25 | $1,121,191.54 | $ 848,092.18 | $1,140,114.24 | $ 5,615,455.60 |
| **Net Operating Income** | -$ 72,903.45 | -$ 193,083.00 | -$ 139,223.78 | -$ 210,620.57 | -$ 475,795.35 | -$ 1,091,626.15 |
| **Other Expenses** | | | | | | |
| **54100 Depreciation** | 72,675.34 | 72,675.34 | 72,675.34 | 76,450.53 | 76,450.53 | 370,927.08 |
| **57250 Miscellaneous** | | | | | 9.12 | 9.12 |
| **Total Other Expenses** | $ 72,675.34 | $ 72,675.34 | $ 72,675.34 | $ 76,450.53 | $ 76,459.65 | $ 370,936.20 |
| **Net Other Income** | -$ 72,675.34 | -$ 72,675.34 | -$ 72,675.34 | -$ 76,450.53 | -$ 76,459.65 | -$ 370,936.20 |
| **Net Income** | -$ 145,578.79 | -$ 265,758.34 | -$ 211,899.12 | -$ 287,071.10 | -$ 552,255.00 | -$ 1,462,562.35 |