# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In the Matter of:

ARK LABORATORY, LLC,                    Case No. 23-43403-mlo
                                        Chapter 11
                Debtor.                 Hon, Maria L. Oxholm

_____/

**ORDER: (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO § 363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTOR'S ASSET PURCHASE AGREEMENT AND RELATED AGREEMENTS AND AUTHORIZING CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED THEREIN INCLUDING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN SPECIFIED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Ark Laboratory, LLC. (the "Debtor"), having filed on June 23, 2023 its *MOTION TO APPROVE (1) BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; AND (2) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105(A) AND 363; ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY*

1

*CONTRACT PURSUANT TO 11 U.S.C. § 365; AND RELATED RELIEF* (the "Sale Motion")[1], seeking, pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>" ) and Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorization to sell substantially all its operating assets and assign certain executory contracts and unexpired leases except the Excluded Assets as defined in the Amended Asset Purchase Agreement filed with the Court [ECF No. 261] (the "<u>Transaction</u>" or "<u>Transactions</u>"); and this Court having entered on June 29, 2023, its *ORDER (1) APPROVING BIDDING PROCEDURES AND OTHER MATTERS RELATING TO THE SALE OF THE DEBTOR'S ASSETS; (2) FORM OF ASSET PURCHASE AGREEMENT AND (3) SCHEDULING A SALE HEARING* (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures with respect to, and notice of, including the Sale Notice, as amended [ECF No. 247] of the

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Amended Asset Purchase Agreement (the "<u>Agreement</u>") by and between the Debtor and Auxo Investment, LLC, (the "Purchaser"), dated as of June 22, 2023 (a copy of which was attached as <u>Exhibit A to the Sale Motion</u>), as amended, the Sale Motion, or the Bidding Procedures Order, as the case may be, in that order of priority, unless the context clearly requires otherwise.

Transaction; and the Auction having been conducted in all material respects in accordance with the Bidding Procedures Order on July 31, 2023; and Debtor, having determined that Purchaser has submitted the highest or otherwise best bid for the Purchased Assets and has been designated as the Successful Bidder pursuant to the Bidding Procedures Order; and a hearing having been held on September 28, 2023 (the "Sale Hearing") to consider approval of the sale of the Purchased Assets to Purchaser (as well as the assumption by Purchaser of the Assigned Contracts and Assumed Liabilities) pursuant to the terms and conditions of the Agreement, and adequate and sufficient notice of the Bidding Procedures, the Agreement, and the Transaction having been given to parties in interest in this case; and such parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the objections to the Sale Motion; and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing, after due deliberation thereon; and good and sufficient cause appearing therefor, and it appearing that the relief requested in the Sale Motion, insofar as it pertains to this Order, is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; all objections

3

filed to the Sale Motion having been withdrawn, resolved or denied; and the Court being fully advised in the premises;

## IT HEREBY IS FOUND AND DETERMINED THAT:[2]

A.     This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory bases for the relief sought in the Sale Motion are §§ 105(a), 363, and 365 of the Bankruptcy Code, together with Bankruptcy Rules 2002, 6004, 9007, and 9014.

C.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

D.    As evidenced by the proofs of service on file with this Court, due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, the Sale Hearing, the Transaction, and the Auction, have been provided in accordance with §§ 102(1), 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014, and in compliance with the Bidding Procedures and the Purchase Agreement, to interested persons and entities, including, but not limited to: (1) the Office of the United States Trustee; (2) Purchaser and its counsel; (3) the Creditors' Committee and its counsel; (4) all entities, known to Debtor that assert any Liens against or other interests in the Purchased Assets (or any portion thereof); (5) all parties known to the Debtor who expressed in writing to Debtor an interest in purchasing all or a portion of the Purchased Assets; (6) all non-Debtor parties to any Purchased Contracts; (7) all relevant taxing authorities; (8) the United States Department of Health and Human Services ("HHS"), Centers for Medicare & Medicaid Services ("CMS," together with HHS, the "Regulatory Authorities").; and (9) all entities required to receive notice pursuant to Bankruptcy Rule 2002, including, without limitation, those entities that have filed a notice of appearance and request for service of

5

papers in these cases.

E.    Such notice with respect to the Sale Motion and the relief requested therein, the Sale Hearing, the Transaction, and the Auction was (i) reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction, and (ii) good, sufficient, and appropriate under the circumstances. Accordingly, no other or further notice of the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures, the Sale Notice, as amended, or the Auction is or shall be required.

F.    As demonstrated by the testimony and other evidence, if any, proffered or adduced at the Sale Hearing, the Debtor has conducted the sale process in compliance, in all material respects, with the Bidding Procedures Order.

G.    No consents or approvals are required for the Debtor to consummate the Transaction other than the consent and approval of this Court and those set forth in the Agreement. Neither the execution of the Agreement nor the consummation of the Transaction in accordance with its terms will constitute a violation of any provision of the Debtor's organizational documents or any other instrument, law, regulation, or

ordinance by which the Debtor is bound.

H.    The bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Debtor and Purchaser. The Debtor received a Qualifying Bid from Auxo Investment Partners, LLC, and no other bids were received, and thus, no Auction for the Purchased Assets was conducted. Accordingly, Auxo Investment Partners, LLC is the Successful Bidder for the Purchased Assets.

I.    The Debtor is the legal and equitable owner of the Purchased Assets and, upon entry of this Sale Order, the Debtor shall have full authority to consummate the Transaction contemplated by the Agreement.

J.    The Agreement and the Transaction have been duly and validly authorized by all necessary corporate action, as the case may be, of the Debtor.

K.    Approval of the Agreement and consummation of the Transaction is in the best interests of the Debtor, its estate, creditors, and other parties in interest, and the Debtor has demonstrated (i) good, sufficient, and sound business purpose and justification, (ii) compelling circumstances for the Sale pursuant to § 363(b) of the Bankruptcy Code

7

prior to, in contemplation of, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate, and (iii) the sale will provide the means for the Debtor to maximize distributions to creditors. To maximize the value of the Purchased Assets, it is essential that the Transaction occur within the time constraints set forth in the Agreement. Time is of the essence in consummating the Transaction.

L.     The Debtor, with the assistance of its professionals, diligently and in good faith marketed the Purchased Assets to secure the highest and best offer therefor by, among other things, making its books and records and the Purchased Assets available to potential buyers for due diligence and providing potential buyers with access to management. In addition, the Debtor served the Bidding Procedures Order, the Sale Motion, the Agreement and the notice of sale, as amended, on each of the entities that had previously expressed an interest in some or all of the Purchased Assets and published notice of the sale in the Detroit News and Crain's Detroit, and the amended notice in Crain's Detroit.

M.     The procedures set forth in the Bidding Procedures Order, including the Auction, were designed to and achieved a fair and reasonable

8

purchase price constituting the highest and best offer obtainable for the Purchased Assets.

N.    A sale of the Purchased Assets at this time pursuant to § 363(b) of the Bankruptcy Code will preserve the existing value of the Purchased Assets and maximize the Debtor's estate for the benefit of all constituencies.

O.    The Agreement between the Debtor and the Purchaser was negotiated, proposed and entered into by the Debtor and the Purchaser in good faith and from arm's-length bargaining positions and without collusion, fraud, or unfair advantage.

P.    At the Sale Hearing on September 28, 2023, no evidence was presented that either the Debtor or the Purchaser engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, no evidence was presented that the Purchaser acted in a collusive manner with any person and no evidence was presented that the aggregate price paid by the Purchaser for the Purchased Assets was controlled by any agreement among the bidders.

Q.    The Successful Bidder is purchasing the Purchased Assets in

good faith and is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser complied with the provisions in the Bid Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) the Purchaser in no way induced or caused the chapter 11 filing by the Debtor; (e) the negotiation and execution of the Agreement was at arm's-length and in good faith, and at all times each of the Purchaser and the Debtor were represented by competent counsel of their choosing, (f) the Purchaser has not acted in a collusive manner with any person, and (g) all payments to be made by the Purchaser in connection with the sale have been disclosed. The Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Transactions contemplated by the Agreement.

R.     The consideration to be provided by Purchaser, in this case being, inter alia, a credit bid of the Purchaser's indebtedness owed by the

Debtor to it, pursuant to the Agreement: (i) is valid, due and outstanding by the Debtor to the Purchaser, (ii) is fair and reasonable; (iii) is the highest or otherwise best offer for the Purchased Assets; (iv) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative; and (v) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code. In addition, the Purchaser is funding the administrative claims and the priority claims of the Debtor's estate, thereby providing additional value to the Debtor. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtor's estate.

S.    The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code.

T.    The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Transaction does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor.

U. Subject to the terms of this Order, the transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and, except as expressly provided in the Purchase Agreement, will vest the Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all: (i) Liens; (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, "Claims"); (iii) encumbrances and (iv) interests of any kind, including, without limitation, the following: (A) interests that purport to give to any party or entity a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or the Purchaser's interest in the Purchased Assets, or any similar rights; (B) interests relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the Closing Date; and (C) interests relating to Liens, claims, and encumbrances on the Purchased Assets or against the Debtor

12

(collectively (ii)-(iv) from time to time herein "Interests"); provided, however, that all such Interests shall attach to the proceeds of the Sale, in order of priority as set forth under applicable law unless modified by this Order.

V. The Purchaser would not have entered into the Agreement and would not consummate the Transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Purchased Assets to the Purchaser and the assignment of the Purchased Contracts to the Purchaser were not free and clear of all Liens and Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Liens or Interests not expressly assumed by the Purchaser.

W. Subject to the provisions of this Order, the Debtor may sell the Purchased Assets free and clear of all Liens and other Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in §§ 363(f)(1) through (5) of the Bankruptcy Code has been satisfied. Those (i) holders of Interests and (ii) non-debtor parties to Purchased Contracts who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code. Those (i) holders of Interests and (ii) non-

debtor parties to Purchased Contracts who did object fall within one or more of the other subsections of § 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale attributable to the property against or in which they claim Interests.

X. Under §363 of the Bankruptcy Code, unless otherwise expressly included in Permitted Encumbrances under the Purchase Agreement, the Purchaser shall not be responsible for any Liens or Interests, including in respect of the following: (1) any labor or employment agreements; (2) all mortgages, deeds of trust and security interests; (3) intercompany loans and receivables between the Debtor and any non-Debtor affiliate, (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim of anyone other than the United States, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National

14

Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtor or any of their respective predecessors; (6) any liabilities of the Debtor other than the Assumed Liabilities as defined in the Agreement, the "Excluded Liabilities"; (7) any bulk sales or similar law; (8) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (9) any theories of successor liability.

Y. Under 11 U.S.C. § 363(f), the (i) transfer of the Purchased Assets to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assigned Contracts will not deem the Purchaser to be a "successor," or subject the Purchaser to any liability whatsoever with respect to, or on account of, the operation of the Business prior to the Closing Date or by reason of such transfer under any applicable laws, whether based, in whole or in part, directly or indirectly, on any theory of

15

law or equity, including, without limitation, any theory of equitable law, any theory of implied assumption of any liabilities other than the Assumed Liabilities, any theory of constructive consolidation or merger of the Purchaser and the Debtor, any theory that Purchaser's acquisition is a mere continuation or reincarnation of the Debtor's business, any theory that the Transaction is fraudulent or lacks good faith, or any other theory of antitrust, vicarious, successor, or transferee liability.

Z. The Debtor has demonstrated that it is an exercise of its sound business judgment to enter into the Transaction, consummate the Sale, and assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Purchased Contracts is in the best interests of the Debtor, its estate, and its creditors. The Assigned Contracts being assumed and assigned to the Purchaser are an integral part of the assets being purchased by the Purchaser and, accordingly, such assumption and assignment of the Assigned Contracts are reasonable, enhance the value of the Debtor's estate, and do not constitute unfair discrimination.

Z. The consummation of the Transaction (the "Closing") pursuant to the Agreement and the terms of this Order will be a legal, valid, and effective transfer of the Purchased Assets to Purchaser, and will

vest Purchaser with all right, title, and interest in and to the Purchased Assets and the Assigned Contracts, free and clear of all Liens and Interests, other than Permitted Encumbrances (as such term is defined in the Purchase Agreement) in accordance with § 363(f) of the Bankruptcy Code.

AA.   The Agreement is a valid and binding contract between the Debtor and Purchaser, which is and shall be enforceable according to its terms.

BB.   All of the provisions of the Agreement are non-severable and mutually dependent.

CC.   Notice of the Sale Motion has been provided to each non-debtor party to an Assigned Contract, together with a statement from the Debtor with respect to the amount, if any, to be paid by the Purchaser to such non-debtor party to cure any defaults under, and to otherwise comply with the requirements of § 365(b) of the Bankruptcy Code with respect to the Assigned Contract to which such non-debtor is party (the "Cure Amounts"). As to each Assigned Contract, payment of the Cure Amount by the Purchaser as determined in accordance with the procedures provided in the Bidding Procedures Order will be sufficient for the Debtor to comply

fully with the requirements of § 365(b) of the Bankruptcy Code.

DD.   Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Assigned Contracts within the meaning of § 365(f) of the Bankruptcy Code.

**NOW, THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.   The Sale Motion is **GRANTED** on the basis set forth herein (other than with respect to matters already addressed by the Bidding Procedures Order).

2. Any objections to the entry of this Sale Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are **DENIED and OVERRULED.**

**Approval Of The Agreement,
Transaction And Ancillary Agreements**

3.   The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4.   Pursuant to sections 363(b) and (f) of the Bankruptcy Code and subject to the terms of this Order, the Debtor is authorized and

18

empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Agreement, (ii) close the Sale as contemplated in the Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement, and close fully the Agreement, including the assumption and assignment to the Purchaser of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary to implement the Agreement and the Sale. The Purchaser shall not be required to seek or to obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement or any other Sale related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

5.      This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Liens or Interests in, against or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, the Purchased

19

Assets and any trustee, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case, and all parties in interest and those otherwise bound by applicable law. This Order and the Agreement shall inure to the benefit of the Debtor, its estate, creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

6.     Upon the Closing, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Purchased Assets to the Purchaser and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title to the Purchased Assets and, upon the Debtor's receipt of the Purchase Price, other than Permitted Encumbrances and Assumed Liabilities, shall be free and clear of all Liens or Interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims and Interests in respect of the Purchased Assets, with all such Liens or Interests to attach to the cash proceeds ultimately attributable to the property against or in which such Liens or Interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens or Interests now have against

20

the Purchased Assets, subject to any rights, claims and defenses the Debtor or its estate, as applicable, may possess with respect thereto. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Permitted Encumbrances and Assumed Liabilities.

7. Except with respect to Permitted Encumbrances and Assumed Liabilities, all persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing. Upon Closing or as soon as possible thereafter, subject to the terms of this Order, each of the Debtor's creditors is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be reasonably necessary to release such creditor's Liens or Interests in the Purchased Assets, if any, as such Liens or Interests may have been recorded or may otherwise exist.

8. The Debtor is hereby authorized to take any and all actions necessary to consummate  the Agreement, including any actions that otherwise would require further approval by its members or its board of directors without the need of obtaining such approvals.

9. Upon Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in the Purchased Assets or a bill (or bills) of sale transferring good and marketable title in such Purchased Assets to the Purchaser. Upon Closing, this Order also shall be construed as, and constitute for any and all purposes, a complete and general assignment of all right, title, and interest of the Debtor and its bankruptcy estate to the Purchaser in the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement.

10. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, and the cancellation of any liens and other encumbrances of any kind whatsoever except those assumed as Assumed Liabilities or Permitted Encumbrances.

11. If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all

or any portion of the Purchased Assets (other than statements or documents with respect to Permitted Encumbrances) shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Purchaser is hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

12.     This Order is and shall be effective as a determination that, upon Closing, all Liens or Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, other than Permitted Encumbrances and Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement.

## Distribution of Sale Proceeds

13.    Upon Closing, any cash sale proceeds consisting of (a) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) calculated at $111,000 based on the valuation of the Debtor's assets in Schedule A/B (the "U.S. Trustee Fees"), and (b) amounts due to the Debtor's Professionals and the Committee's Professionals under the Stipulated Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "Final Cash Collateral Order") [Doc. No. 144] and the Stipulated Amended Final Order Authorizing Use Of Cash Collateral  And Granting Adequate

Protection [Doc. No. 269] (the "Professional Fee Carve Out") shall be remitted directly to the Debtor, as follows: (i) the U.S. Trustee Fees will be transferred to and held in a segregated DIP Account, (ii) the Professional Fee Carve Out will be transferred to and held in the DIP Professionals Account as defined under the Final Cash Collateral Order; and (iii) the balance will be transferred to and held in a segregated DIP account for which Debtor's financial advisor, Russell Long of O'Keefe & Associates, will be made an additional signatory (the "DIP Sale Proceeds Account"). All distributions and withdrawals from the DIP Sale Proceeds Account will require 2 signatures.

## Assumption And Assignment Of Assigned Contracts

14.     The Purchaser shall be responsible for curing all allowed pre-petition monetary and non-monetary defaults relating to the Assigned Contracts. Pursuant to Section 365 of the Bankruptcy Code, the Debtor is authorized to assume the Assigned Contracts designated in the Agreement, cure the same (in the Cure Amounts set forth in the notice relating to such contracts or by further order of the Court) and assign the same to Purchaser.

15.     The Assigned Contracts, consistent with the provisions

contained herein, shall be transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchaser.

16. All defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured, subject to the satisfaction of the provisions of Paragraph 14 (relating to payment by the Purchaser of the applicable Cure Amounts), above, and Purchaser shall have no liability or obligation arising or accruing under the Assigned Contracts prior to the Closing Date, except as otherwise expressly provided in the Agreement.

17. Under §365 of the Bankruptcy Code, provided that the Purchaser pays the applicable Cure Amount, each nondebtor party to an

Assigned Contract hereby is forever barred from asserting against Purchaser or the Purchased Assets, any default existing as of the Closing Date or any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtor as of the Closing Date.

18.     The failure of the Debtor or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtor's and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

## Prohibition of Actions Against the Purchaser

19.     The Transaction has been, and is undertaken by the Debtor and Purchaser in good faith, as that term is used in § 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to Purchaser, unless such authorization is duly stayed pending such appeal. Purchaser is in all respects a good-faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by § 363(m) of the Bankruptcy Code.

20.     Under § 363 of the Bankruptcy Code, except for the Permitted

Encumbrances and Assumed Liabilities, or as otherwise expressly provided for in this Order or the Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing and subject to § 363 of the Bankruptcy Code, the Purchaser shall not be liable for any Claims or Interests against the Debtor or any of its predecessors or affiliates, other than the Assumed Liabilities, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtor and any non-Debtor affiliate, liabilities relating to or arising from any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing. For purposes of clarification, any administrative taxes shall be

28

paid by Auxo.

21.     Neither the purchase of the Purchased Assets by the Purchaser nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtor will cause the Purchaser to be deemed a successor in any respect to the Debtor's businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule, or regulation or doctrine.

22.     Under § 363 of the Bankruptcy Code, except with respect to Permitted Encumbrances and Assumed Liabilities and subject to paragraph 26, all persons and entities, including, but not limited to, all debt security holders, equity security holders, unions, governmental tax and the Regulatory Authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens or Interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated,

29

senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred from asserting against the Purchaser, any of its affiliates, its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens or Interests in and to the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, any of its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, any of its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; (vi) revoking, terminating or

30

failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets, or (vii) any action seeking to hold the Purchaser liable as a successor under any collective bargaining agreement of the Debtor. On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens or Interests in or on the Purchased Assets (except Permitted Encumbrances and Assumed Liabilities), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

23.     Except to the extent expressly included in the Assumed Liabilities, or by applicable law or statue, the Purchaser and its affiliates shall have no liability, obligation or responsibility under any foreign, state or local labor law by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

24.     Under §363 of the Bankruptcy Code, all persons and entities are hereby forever barred from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the

31

Purchased Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

25. Based on the evidence proffered at the Sale Hearing on September 28, 2023, the Purchaser has given substantial consideration under the Agreement for the benefit of the Debtor, its estate, and creditors. Under §§363(f), (n), and (m) of the Bankruptcy Code, the consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against the Debtor or any of the Purchased Assets, other than holders of Liens or Claims relating to the Assumed Liabilities. Based on the evidence proffered at the Sale Hearing on September 28, 2023, the Purchaser is a good faith purchaser of the Purchased Assets and the consideration provided by the Purchaser for the Purchased Assets under the Agreement is fair and reasonable.

26. For the avoidance of doubt, nothing in this Order shall limit, modify, or in any way affect the Secretary (the "Secretary") of the U.S. Department of Health and Human Services' authority to regulate Debtor's or the Purchaser's enrollment or participation as a Medicare

supplier (to the extent the Purchaser enrolls or participates as a Medicare supplier) or the right and authority of the Secretary, CMS or its contractors to review, approve, deny, or pay Medicare claims in the ordinary course of business in accordance with the provisions of, and regulations, policies and procedures promulgated under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395kkk (collectively, the "Medicare Program"). The United States takes no position with respect to, and nothing herein shall be construed as, the Secretary's consent to, or acceptance of, the Agreement or any underlying transactions described in or supporting the Agreement].

27.    For the avoidance of doubt, notwithstanding anything to the contrary in this Order or the Agreement, (i) Debtor shall not assume and assign or otherwise transfer any national provider identifier, provider transaction access number or Medicare enrollment agreement to the Purchaser; (ii) Debtor shall not loan or otherwise permit the Purchaser to use or submit claims under Debtor's provider transaction access number or Medicare enrollment agreement; and (iii) nothing shall restrict or limit the United States' rights of setoff and recoupment.

28.    Further, nothing in this Order or the Agreement  discharges, releases, enjoins, bars, impairs or otherwise precludes (a) any obligation

33

or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any claim of the United States arising after the Sale Date, (c) any obligation or liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Sale Date; (d) any right, defense, claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor; or (e) the enforcement of the United States' police or regulatory powers. Nothing in this Order or the Agreement authorizes the transfer to the Purchaser of any licenses, permits, registrations, or governmental authorizations and approvals without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

29.     Debtor is the subject of an ongoing investigation by the U.S. Attorney's Office, and the U.S. Department of Health and Human Services, and was issued Civil Investigative Demand No. 23-070, requiring the production of certain documents and responses to interrogatories. The Debtor and the estate have an obligation to preserve any and all documents, tangible items, and electronically stored

information ("ESI") that may be relevant to the aforementioned investigation. The obligation to preserve extends to Purchaser and covers all records particularly relevant to the ongoing investigation including all records responsive to the CID. In the event that potentially responsive electronically stored information resides in locations Debtor or Purchaser may deem not reasonably accessible, such as deleted files or disaster-recovery systems, Debtor and Purchaser agree to preserve such not reasonably accessible ESI so as not to deprive the United States of the right to seek its production in the future. This preservation obligation includes safeguarding of records that could potentially be destroyed in the event Purchaser or Debtor decides to change its computer software systems, or winds down its operations. The preservation obligation also includes intervening to prevent loss of records due to routine operations.

## Additional Provisions

30. This Court retains jurisdiction, subject to the terms of this Order, to:

a) Interpret, implement, and enforce the terms and provisions of this Order and the terms of the Agreement, all amendments

thereto, and any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to Purchaser;

b) Protect Purchaser or any of the Assigned Contracts or Purchased Assets against any of the Liens or Interests (other than the Permitted Encumbrances), as provided herein, with respect to the commencement or continuation of any action seeking to impose successor or other liability upon the Purchaser;

c) Enter orders in aid or furtherance of the Sale and the Transaction;

d) Compel delivery of all Purchased Assets to Purchaser;

e) Adjudicate any and all remaining issues concerning the Debtor's right and authority to assume and assign the Assigned Contracts and the rights and obligations of Purchaser with respect to such assignment and the existence of any default (including any Cure Amounts) under any such Assigned Contract;

f) Adjudicate all issues concerning any actual or alleged Liens or Interests in and to the Purchased Assets, including the extent, validity, enforceability, priority, and nature of all such actual or alleged Liens or Interests; and

g) Except as expressly provided for herein, adjudicate any and all issues and/or disputes relating to the Debtor and title or interest in the Purchased Assets and the proceeds of the Sale, the Sale Motion, and/or the Agreement.

31. The consideration provided by the Purchaser to the Debtor pursuant to the Agreement for the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

32. There are no brokers involved in consummating the Sale and no brokers' commissions are due.

33. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

34. The terms and provisions of the Agreement, the ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and Purchaser and their

respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of this case to a case under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding. The Agreement and the Transaction may be specifically enforced against, and shall not be subject to rejection or avoidance by, the Debtor or any Chapter 7 or Chapter 11 trustee of the Debtor.

35. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor or the Debtor's estate.

36. The failure specifically to include any particular provisions of the Agreement or the ancillary agreements in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement and the ancillary agreements be authorized and approved in their entirety.

38

37.    To the extent of any inconsistency between the provisions of this Sale Order, the Agreement, and any documents executed in connection therewith, the provisions contained in this Sale Order and the Agreement and any documents executed or delivered in connection therewith shall govern, in that order.

38.    Except as otherwise provided in the Combined Disclosure Statement and Plan of Liquidation filed by the Debtor (collectively the "Plan")[ECF No. 249],  any amended Plan, and any subsequent order confirming the Plan or any amended Plan, this Order shall not conflict with or derogate from the provisions of the Agreement.  To the extent of any inconsistency between the Plan, an amended Plan, the order confirming the Plan or an amended Plan (collectively, the "Plan Documents") and this Order, the Plan Documents shall govern.

39.    In the event that this chapter 11 case is dismissed or converted to a chapter 7 case, or a trustee is appointed (whether under chapter 11 or 7), neither the dismissal or conversion of this case, nor the appointment of such a trustee, shall affect, in any manner the rights of Purchaser under the Agreement or this Sale Order, or any other agreements executed by the Debtor in conjunction with the Sale and the Transaction, and all of the rights and remedies of Purchaser under this

39

Sale Order, and such agreements shall remain in full force and effect as if the case had not been dismissed or converted or a trustee had not been appointed.

40. The provisions of this Sale Order are non-severable and mutually dependent.

41. To the extent that the Purchaser obtains the business records of the Debtor, in whatever form they exist, electronic or otherwise, as part of the Agreement, the Purchaser shall maintain the business records of the Debtor and shall reasonably cooperate with and provide the records upon request to the Debtor, James Grossi, the Creditor's Committee, the United States, or any Post-Confirmation Committee, and any subsequently appointed liquidation agent and/or trustee until the closing of the case. This preservation obligation includes safeguarding of records that could potentially be destroyed in the event Purchaser or Debtor decides to change its computer software systems, or winds down its operations. The preservation obligation also includes intervening to prevent loss of records due to routine operations.

42. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the

Debtor and Purchaser are authorized to close the Sale immediately upon entry of this Order. Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

**Signed on September 29, 2023**



/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**