**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Ark Laboratory, LLC

      Debtor.

_____/

Case No. 23-43403-MLO
Chapter 11
Hon. Maria L. Oxholm

<u>**SECOND AMENDED PLAN OF LIQUIDATION**</u>
<u>**OF ARK LABORATORY, LLC**</u>

NOW COMES, Ark Laboratory, LLC (the "Debtor"), through counsel, and states as follows:

## INTRODUCTION TO PLAN

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., the Debtor proposes the following Plan pursuant to Chapter 11 of the Bankruptcy Code.

The Plan is a liquidating plan. Debtor filed a motion to sell substantially all of its assets in a Bankruptcy Court approved Sale. The Plan provides for the distribution of certain proceeds from the Sale and the creation of a Liquidating Trust that will administer all remaining property of the Debtor, including the Avoidance Actions and the Covid Testing Claims. If the Sale has not been consummated prior to the Effective Date, the Sale may occur and be consummated by the Liquidating Trustee, after consultation with Auxo. The Plan provides that the Committee shall be reconstituted on the Effective Date as the Post-Confirmation Committee.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 103 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to

2

that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "Accrued Professional Compensation" means, at any given moment, all accrued and/or unpaid fees and expenses (including, but not limited to, fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under, inter alia, sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise rendered prior to the Effective Date by all Retained Professionals in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Retained Professional's fees or expenses, then those amounts shall be turned over to the Liquidating Trustee for payment of professional fees incurred by the Liquidating Trustee in administering the Liquidating Trust.

2.    "Administrative Claims" means Claims or rights to payment as an administrative expense that have been timely filed, pursuant to the deadline and procedure set forth in the Plan (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) or 507(b) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930. For purposes of clarification, administrative expenses are Administrative Claims for purposes of the Plan.

3.    Administrative Claims Bar Date" is a date to be set by the Court pursuant to a motion to be filed by Debtor for allowance of an Administrative Claim arising on or before the Administrative Claims Bar Date. For claims arising after the Administrative Claims Bar Date and prior to confirmation, the Administrative

Claims Bar Date for such administrative expenses shall be thirty (30) days after the Effective Date, subject to a motion filed with the Bankruptcy Court and served on the Liquidating Trustee.

4. "Allowed" means, with respect to any Claim (including Administrative Claim) or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtor in the Schedules as other than Disputed as to which the Debtor or other party in interest has not filed an objection by the applicable bar date established under the Plan or the Liquidating Trust; (b) a Claim or Equity Interest that either is not Disputed or has been Allowed by a Final Order; (c) a Claim or Equity Interest that is Allowed: (i) in any stipulation and order approved by the Bankruptcy Court, or (ii) in any stipulation with the Liquidating Trustee executed on or after the entry of a Final Confirmation Order; (d) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (e) a Disputed Claim as to which a proof of Claim or request for allowance has been timely filed and as to which no objection has been timely filed.

5. "Allowed Amount" means the agreed upon or adjudicated amount of an Allowed Claim.

6. "Auxo" means Auxo Investment Partners, LLC, as successor in interest to Comerica and Peninsula.

7. "Avoidance Actions" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542-553 of the Bankruptcy Code.

8. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

9. "Bankruptcy Rules" or "Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

10. "Beneficiary" or "Beneficiaries" or "Liquidating Trust Beneficiary or

"Liquidating Trust Beneficiaries" mean(s) the holder of an Allowed Claim or Interest that receives a beneficial interest in the Liquidating Trust in accordance with the Plan.

11.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed.R.Bankr.P. 9006(a)).

12.     "Carveouts" means that amount Auxo has agreed to carve out from its collateral pursuant to orders of the Court for the payment of (i) Accrued Professional Compensation, (ii) United States Trustee Fees, (iii) Allowed Administrative Expenses that have not been paid prior to the Effective Date, (iv) Allowed Priority Claims that have not otherwise been paid prior to the Effective Date, and (iv) the funds advanced by Auxo for insurance and other costs for the Liquidating Trustee pursuant to the Second Amended Stipulated Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection [ECF No. 370].

13.     "Cash" means legal tender of the United States of America or the equivalent thereof.

14.     "Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, including, but not limited to, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code, including Avoidance Actions and those actions set forth on **Exhibit B** to this Plan, in the Plan Supplement or that may be pending on the Confirmation Date, assigned to Liquidating Trustee on the Confirmation Date, or instituted by the Liquidating Trustee after the Confirmation Date against any entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

15.     "Chapter 11 Case" means the case commenced when the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, under Case Number 23-43403.

16.     "Claim" means a "claim" (as that term is defined in section 101(5) of

5

the Bankruptcy Code) against the Debtor, and administrative expenses.

17.    "Claims Objection Bar Date" means the bar date for objecting to proofs of Claim or administrative expense Claims. The bar date for objecting to prepetition claims shall be nine (9) months days after the Effective Date; provided, however, that the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court. Administrative Claims have a different bar date as set forth herein.

18.    "Class" means a class of holders of Claims or Interests described in Article III of this Plan.

19.    "CMS" means Centers for Medicare and Medicaid Services.

20.    "Comerica" means Comerica Bank, N.A.

21.    "Committee" means the Official Committee of Unsecured Creditors that was appointed by the U.S. Trustee pursuant to section 1102(a)(1) of the Bankruptcy Code in this Chapter 11 Case.

22.    "Confirmation Date" means the date that the Confirmation Order is entered.

23.    "Confirmation Hearing" means the hearing on the confirmation of the Plan.

24.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.    "Covid Testing Claims" means those outstanding Covid-19 testing claims with each of the Debtor's health insurance providers and governmental entities that are being pursued by Special Counsel.

26.    "Credit Bid" means the $2,000,000 amount bid for substantially all of the assets pursuant to the Sale Motion, as modified.

27.    "Debtor" means Ark Laboratory, LLC.

28.    "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or

6

contingent: (b) as to which Debtor or another party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by Debtor or a party in interest in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

29.     "Distribution" means any distribution pursuant to the Plan and the Liquidating Trust to the holders of Allowed Claims or pursuant to Bankruptcy Court Order.

30.     "Distribution Amount" means the amount of a distribution made to holders of Allowed Claims entitled to receive Distributions in accordance with the terms and provisions of this Plan and the Liquidating Trust Agreement

31.     "Distribution Date" means the date upon which a Distribution is made by the Liquidating Trustee in accordance with the Plan to holders of Allowed Claims entitled to receive Distributions under the Plan or under the Liquidating Trust Agreement.

32.     "Distribution Reserve" means those accounts that may be established by the Liquidating Trustee with sufficient income to pay holders of Disputed Claims if such Disputed Claims become Allowed Claims.

33.     "Distribution Schedule" means the payments set forth in ARTICLE II TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN, and ARTICLE III, SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN of the Plan.

34.     "DOJ Claim" means the proof of claim(s) filed by the USA in relation to the Qui Tam Complaint or other investigations by the DOJ.

35.     "Effective Date" means the later of (i) the date the 2022 U.S. Corporation Income Tax Return is filed by the Debtor, or (ii) the first date that is a Business Day after the Confirmation Order becomes a Final Order.

36.     "Entity" includes any and all persons as defined in 11 U.S.C § 101(15), estates, trusts, governmental units, and the United States Trust.

37.    "Equity Interest" or "Interest" mean(s) any equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to: any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal contractual or equitable rights to purchase or acquire such interests at any time; and (b) any preferred equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of preferred stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

38.    "Estate" means the estate of the Debtor created on the Petition Date by, inter alia, section 541 of the Bankruptcy Code.

39.    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

40.    "Grossi" means Jim Grossi, the principal and sole member of the Debtor and the person authorized to perform the duties of the debtor in possession during the Chapter 11 Case.

41.    "Initial Distribution Date" means the first Distribution Date following the Effective Date, as set by the Liquidating Trustee.

42.    "IRS" means the Internal Revenue Service.

43.    "IRS Claim" means that proof of Claim [Claim No. 17-1 or as later amended] filed by the IRS.

44.    "Lien" means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

45.    "Liquidating Trust" means the trust created pursuant to the Liquidating Trust Agreement which will be part of the Plan Supplement.

8

46. "Liquidating Trust Agreement" means that agreement approved under the Plan through entry of the Confirmation Order by which the Liquidating Trustee is appointed to administer the Liquidating Trust.

47. "Liquidating Trustee" means Paul R. Hage, the Liquidating Trustee under the Liquidating Trust, who is being appointed pursuant to this Plan or any Successor Trustee as defined by and provided for under the Liquidating Trust Agreement.

48. "Other Priority Claims" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

49. "Peninsula" means The Peninsula Fund VII Limited Partnership,

50. "Petition Date" means April 12, 2023.

51. "Plan" means this plan of liquidation, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement (if any), which is incorporated herein by reference.

52. "Plan Supplement" includes the compilation of documents and forms of documents, schedules and exhibits to be filed prior to the Confirmation Hearing, comprising of, without limitation, the following documents: (a) the Liquidating Trust Agreement; (b) the list of preserved Causes of Action, including the Avoidance Actions; and (c) the list of executory contracts to be assumed [ECF Nos. 302 and 303], plus any subsequent amendments thereto filed by the Debtor prior to the Confirmation Hearing.

53. "Post-Confirmation Committee" means the reconstituted Committee that is willing to serve solely in an advisory capacity after the Confirmation Date to advise and to consult with the Liquidating Trustee.

54. "Priority Tax Claims" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

55. "Priority Claim" means a Claim under or entitled to priority under section 507(a) of the Bankruptcy Code.

56. "Priority Creditor" means a Creditor who asserts a Priority claim.

57. "Professional Fee Escrow Account" means that account established by the Debtor under the Stipulated Final Order Authoring Use of Cash Collateral and Granting Adequate Protection [ECF No. 144] and First Amended Stipulated Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection [ECF No. 269] in the aggregate amount of $600,000 for the payment of Accrued Professional Compensation to the Retained Professionals, with $350,000 being allocated to the Committee Retained Professionals and $250,000 being allocated to the Debtor Retained Professionals, fifty percent (50%) of which shall be funded by Auxo by September 28, 2023 and fifty percent (50%) of which shall be funded by Auxo by December 1, 2023. To the extent that any amounts remain in the Professional Fee Escrow Account after all Accrued Professional Compensation is approved by Final Order of the Bankruptcy Court, such remaining amounts shall be transferred to the Liquidating Trustee for payment of professional fees and expenses incurred by the Liquidating Trustee and his professionals in administering the Liquidating Trust, including the prosecution of Causes of Action assigned to the Liquidating Trust.

58. "Qui Tam Complaint" means that complaint filed by the United States of America against the Debtor and Grossi, alleging violations under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the Michigan Medicaid False Claims Act, MCL 400.601 *et seq*.

59. "Remaining Assets" means those assets of the Estate that are not transferred by the Sale, and, thus, ownership of which shall be vested in the Liquidating Trust on the Effective Date.

60. Intentionally Omitted.

61. "Retained Professional" means a person or entity employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code, to be compensated for services rendered prior to the Effective Date, pursuant to sections 327-331 of the Bankruptcy Code.

62. "Sale" means the Order: (I) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and

Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279].

63.    "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtor in the Chapter 11 Case, as may be amended from time to time.

64.    "Secured Claim of Auxo" means the Allowed Claim of Auxo (as reflected in the proofs of Claim filed by Comerica and Peninsula, plus such amounts advanced by Auxo to provide funding to the Debtor during the Chapter 11 Case, less the Credit Bid.

65.    "Secured Claims" means: (a) Claims that are secured by a lien on property in which the Estate has an interest, to the extent of the value of the Claim holder's interest in the Estate's interest in such property, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, as determined pursuant to the Bankruptcy Code, and (b) Claims which are Allowed under the Plan as a Secured Claim.

66.    "Special Counsel" means Amy Thomas, Esq. and Only One Hub d/b/a Primus Health, appointed by the Court.

67.    "USA" means the United States of America.

68.    "USA Setoff Claim" means the Secured Claim asserted by the USA as described in Art. III, Class 5.

69.    "U.S. Trustee" means Office of the United States Trustee.

70.    "U.S. Trustee Fees" means those statutory fees owed to the U.S. Trustee under 28 U.S.C. § 1930(a)(6).

71.    "Unsecured Claim" means a Claim that is not a Secured Claim, an Administrative Claim nor a Priority Claim.

72.    "Unsecured Creditor" shall mean any Creditor that holds an Unsecured Claim.

# ARTICLE II
## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

For the purposes of approval and implementation of this Plan and the resultant liquidation of the Debtor, Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below.

2.1 **ADMINISTRATIVE EXPENSES.** It is estimated that there are approximately $1,170,477 in unpaid Administrative Claims that have been asserted against the Debtor's estate, exclusive of United States quarterly fees and Accrued Professional Compensation. Unless paid prior to the Effective Date, the Allowed Administrative Claims shall be paid the full amount of their Allowed Claims, on such date as may be mutually agreed upon between Liquidating Trustee and the holder of the Administrative Claim, or, if no such date is agreed upon, the latest of (i) as soon as reasonably practicable thirty (30) days after the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between Debtor and the holder of such Administrative Claim, (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving Debtor's payment of such Allowed Administrative Claim, or (iv) by the Liquidating Trustee upon entry of an order approving the allowance and payment of such Administrative Claim. The amounts owed to the United States Trustee prior to the Effective Date shall be paid as they come due, but in no event, as soon as reasonably practicable thirty (30) days after the Effective Date, and sufficient monies shall be escrowed by the Liquidating Trustee for the payment of such amounts that come due after the Effective Date.

The Administrative Expenses shall also include the Accrued Professional Compensation that shall be paid from the Professional Fee Escrow Account upon the entry of a Final Order approving the Accrued Professional Compensation. If there are insufficient funds in the Professional Fee Escrow Account to pay the Allowed amount of the Accrued Professional Compensation, then the remaining Allowed amount shall be paid from the proceeds of the Causes of Action.

2.2 **PRIORITY CLAIMS.** Priority Creditors entitled to receive priority for their Allowed Claim under section 507(a) of the Bankruptcy Code shall be paid on the later of (i) as soon as reasonably practicable thirty (30) days after the Effective Date, or (ii) when such claims are Allowed.

12

# ARTICLE III
## SPECIFICATION OF TREATMENT OF CLASSES
## OF CLAIMS OR INTERESTS

The Plan divides Claims and Interests into Classes and treats them as follows, all of which are impaired unless noted:

| Class | Claimant | Treatment for Claims in this Class |
|---|---|---|
| Class 1 | Auxo | This Class shall be paid the amount of its Secured Claim, less any credit bid that it made pursuant to the Sale if consummated, plus any amounts advanced by it during the Chapter 11 Case to fund administrative expenses, to be paid pursuant to the priority provisions of the Bankruptcy Code, less the Carveouts.<br>Auxo shall retain its Lien until it has been paid in full. Auxo has a first priority Lien on all assets of the Debtor, prepetition and postpetition, other than the Causes of Action.<br><br>This Class is impaired. |
| Class 2 | LABarrington | LABarrington has asserted a security interest in the following equipment: One UN-3000N Automated Urinalysis System. Debtor will surrender its interest in this equipment to LABarrington in full satisfaction of its Claim.<br><br>This Class is impaired. |

13

| Class 3 | Team Financial Group | Team Financial Group has asserted a security interest in the equipment listed in proofs of claim #60-#71. Debtor will surrender its interest in this equipment to Team Financial Group. Team Financial Group shall have the right to file an amended Proof of Claim within sixty (60) days of entry of the Confirmation Order for the difference between what it is owed and the amount that it received on liquidation of its equipment (the "Team Financial Group Deficiency Claim"). The Team Financial Group Deficiency Claim shall be treated under Class 4 and shall be capped at a maximum of $300,000.<br><br>This Class is impaired. |
|---|---|---|
| Class 4 | Unsecured Claims | This Class shall be paid pro rata pursuant to the priority of payment as set forth in the Bankruptcy Code to the extent of available funds. This Class includes any non-priority, general unsecured Claims against the Debtor filed by the USA except to the extent such Claim is part of the USA Setoff Claim.<br><br>This Class is impaired. |
| Class 5 | USA Setoff Claim | The USA possesses offset rights as to (a) prepetition federal tax overpayments and (b) payments for Medicare Part B services provided by Ark Laboratory before the Petition Date pursuant to the provisions, regulations, policies, and procedures promulgated under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et. seq. (collectively, the |

14

| | | "Medicare Statute"), against all debt owed by the Debtor to the USA, including any debt for IRS prepetition tax Claims and/or the DOJ Claim. The United States placed a temporary administrative freeze on each of these payments that, to date, total no less than $180,494 (Medicare Part B services) and $34,391 (prepetition federal tax overpayment).

Upon confirmation, the stay is lifted as to the United States' setoff rights and the United States shall be permitted to effect any and all offsets of prepetition payments held or owed by the United States against prepetition Claims of the United States.

The value of the USA Setoff Claim is equal to the amount of Claims offset by the United States. The remainder of the United States' Claims, to the extent not otherwise entitled to classification as a Priority Tax Claim, shall be Class 4 Unsecured Claims.

Notwithstanding the above, the rights of any party in interest to object to the Claims of the United States, to the extent they exist, are preserved except as expressly stated in the Second Amended Plan or in this Order Confirming Plan.

This Class is unimpaired. |
| --- | --- | --- |

15

| Class 6 | Class of Equity Security Holders | This Class shall retain its Interest and shall be paid pro rata consistent with the priority of payment as set forth in the Bankruptcy Code to the extent of available funds, subject to any recoveries from Causes of Action brought by the Committee or the Liquidating Trustee under the Plan and the Liquidating Trust.<br><br>This Class is impaired. |
|---|---|---|

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Implementation on the Effective Date

The Plan shall become effective on the Effective Date, unless otherwise provided in the Plan or the Confirmation Order.

### B.    Means of Implementing the Plan

#### 1.    Sale Proceeds.

Under the terms of the amended notice of Sale Motion [ECF No. 247], Auxo reduced the Purchase Price as the Successful Purchaser from $6,400,000 to $4,857,477 and, assuming that it remains the Successful Purchaser at the Sale Hearing, the Purchase Price will be allocated as follows: a credit bid of $2,000,000 as the Credit Bid; plus the following amounts being paid on behalf of the estate: (a) $600,000 for the Professional Fee Carveout, (b) $1,170,477 for the payment of Allowed Administrative Claims, (c) $162,000 for payment of Allowed Priority Claims, (d) such amounts as required to pay the U.S. Trustee's Fees for the distributions to be made to the Allowed Administrative Claims, the Allowed Priority Claims and the Accrued Professional Compensation under the Plan; plus funding in the amount of $1,025,000 provided by Auxo under the Final Cash Collateral Order through the closing on the Sale, and (e) funding the costs of an E&O Insurance Policy for the Liquidating Trustee on the Effective Date.

#### 2.    Covid Testing Claims.

The net recoveries from the Covid Testing Claims, after payment of such

16

amounts owed to Special Counsel, if recovered prior to the Effective Date, shall be distributed by the Debtor and, if recovered after the Effective Date, shall be distributed by the Liquidating Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo, (b) the next $1.0 million to the Liquidating Trustee for pro rata payment of the Allowed Claims of the Unsecured Creditors, (c) then, once Auxo receives eighty percent (80%) of the amount owed on its Allowed Secured Claim, each dollar received thereafter by the Liquidating Trustee shall be split with fifteen percent (15%) of such recoveries for pro rata payment of the Allowed Claims of the Unsecured Creditors and eighty-five percent (85%) of such recoveries for payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim. Thereafter, all such recoveries, net of fees and expenses of the Liquidating Trust, shall be paid pro rata to the Allowed Claims of the Unsecured Creditors.

3.     **Causes of Action.**  The holders of Allowed Unsecured Claims shall receive, on a pro rata basis, the net proceeds of the Causes of Action, including the Avoidance Actions, after payment first in full of the fees and costs of the Liquidating Trustee and his professionals and then for all Accrued Professional Compensation Claims owed to the Retained Professionals to the extent of any deficiency owed to them beyond the Professional Fee Escrow.

4.     **Transfer of Proceeds.** On the Effective Date, any proceeds of the Sale after satisfaction of the Allowed Administrative Claims, the Allowed Priority Claims and the Accrued Professional Compensation, shall be transferred to the Liquidating Trustee.

5.     **Causes of Action and Covid Testing Claims.** The Liquidating Trustee shall prosecute the Causes of Action and the Covid Testing Claims to the extent practicable and to the extent it determines that pursuing some or all of the Causes of Action and the Covid Testing Claims are prudent and will maximize the value of the assets held by the Liquidating Trust for distribution to the Beneficiaries of the Liquidating Trust, as provided under the Liquidating Trust Agreement. The Liquidating Trustee shall make such determinations after consultation with the Post-Confirmation Committee, and Auxo (until Auxo is paid in full on its Secured Claim). Upon the Confirmation Date, Special Counsel and its rights under its order authorizing its retention entered by the Bankruptcy Court shall be assigned to the Liquidating Trustee, upon the same terms and conditions as authorized by the Bankruptcy Court, including its rights to compensation for prosecuting and recovering the Covid Testing Claims that are preserved and shall survive the

17

Effective Date of the Plan.

6. **Preservation of Causes of Action.** Except as expressly provided herein, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, or an agreement entered into or delivered in connection with the Plan, the Liquidating Trust will exclusively retain and may enforce, as the representatives of the Estate under section 1123(b)(3)(B), and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, all Causes of Action, including but not limited to those set forth on **Exhibit B** to the Plan and in the Plan Supplement, that the Debtor or the Estate may hold against any person or entity, which shall vest in the Liquidating Trust, under the control of the Liquidating Trustee. Accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action by virtue of, or in connection with, the confirmation, consummation of effectiveness of this Plan. The Liquidating Trustee or his successors or assigns exclusively may pursue such retained claims, demands, rights or Causes of Action, per the terms of the Liquidating Trust. For purposes of clarification, Debtor's rights pursuant to the Sale and the Asset Purchase Agreement authorized by the Sale, are preserved.

7. **Vesting of Assets of Estate.** Upon the Confirmation Date and subject only to the terms of this Plan, all Remaining Assets of the Debtor and the Estates, wherever situated, shall vest in the Liquidating Trust, free and clear of all liens, claims, encumbrances and interests, except as otherwise expressly provided herein. The Remaining Assets will continue to be administered, liquidated, and distributed by the Liquidating Trustee pursuant to the Plan and the Liquidating Trust Agreement. If the Sale has not been consummated by the Confirmation Date, the Liquidating Trustee shall consummate the Sale. In the event of conversion of this case post-confirmation to a case under Chapter 7 of the Bankruptcy Code, all property that vested in the Debtor, Debtor-in-Possession, Reorganized Debtor, Liquidating Trustee or any Successor to the Debtor or Successor Trustee pursuant to the confirmed Plan or under 11 U.S.C. § 1141, or that was otherwise acquired post-confirmation, other than the funding provided to the Liquidating Trustee under the Second Amended Stipulated Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection [ECF No. 370] or any amendment thereof, will become property of the Chapter 7 estate.

**8.     Execution of the Liquidating Trust Agreement.** On or before the Confirmation Hearing, the Liquidating Trustee and the Debtor on behalf of themselves and the Estate, will execute the Liquidating Trust Agreement.

**9.     Appointment of the Liquidating Trustee.** Upon entry of the Confirmation Order, the Liquidating Trustee shall be authorized to execute documents on behalf of the Debtor and the Estate. Paul R. Hage, a partner with Taft Stettinius & Hollister, LLP, shall be the Liquidating Trustee.

**10.     Powers and Responsibilities of Liquidating Trustee.** The Liquidating Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Plan and the Liquidating Trust Agreement and will have those responsibilities created by this Plan and the Liquidating Trust Agreement upon the terms and conditions summarized therein, and will, for the benefit of the Beneficiaries, exercise the rights and powers vested in it by this Plan and the Liquidating Trust Agreement in the same manner, and use the same degree of care and skill in his exercise as a prudent person would exercise and use under the circumstances in the conduct of the Liquidating Trustee's own affairs, and further agrees to receive and disburse all of the Remaining Assets in accordance with the terms of this Plan and the Liquidating Trust Agreement. More specifically, without limitation, the Liquidating Trustee shall have the right, power, authority, standing, and approval, and shall be empowered to:

(a)     perform all of the obligations and agreements of the Plan and the Liquidating Trust Agreement provided for herein;

(b)     keep and maintain in a trust account for the benefit of the Liquidating Trust into which proceeds resulting from the initial receipt or from the Sale or other disposition of, or from the income resulting from, all or any part of the liquidation of Debtor's Assets and/or the prosecution of Causes of Action and/or the proceeds of the Covid Test Claims;

(c)     keep and maintain trust accounts for the benefit of the Liquidating Trust into which accounts the Liquidating Trustee may place Disputed Claim Reserves;

(d)     establish and maintain Distribution Reserve Accounts for the holders of Disputed Claims;

(e)   commence, continue, prosecute, litigate, and/or settle and compromise Claims, Causes of Action and the Covid Testing Claims, including the taking of examinations or requesting the production of documents pursuant to Fed.R.Bankr.P. 2004, by or against the Debtor and third parties on behalf of the Liquidating Trust and for the benefit of the Beneficiaries thereof (except as expressly provided in the Plan or any order entered in the Chapter 11 Case (including the Confirmation Order), the Liquidating Trustee will have and shall retain after the Confirmation Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date; provided, however, all Claims of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes the Debtor or the Estate; provided, however:

(i) Before the Liquidating Trustee can compromise or settle the Covid Testing Claims for less than their face value, the Liquidating Trustee shall consult with the Post-Confirmation Committee, Auxo and Special Counsel over the risks and benefits associated with settling the Covid Testing Claims;

(ii) Until the Covid Testing Claims have resulted in a net recovery of $9.2 million, the Trustee shall take into special consideration Auxo's position and its Allowed Secured Claim in the Covid Testing Claims with respect to any compromise or settlement of the Covid Testing Claims, after consultation with Auxo and the Post-Confirmation Committee;

(iii) Once the Covid Testing Claims have resulted in a net recovery of at least $10.2 million, the Trustee shall give consideration to Auxo's position with respect to any compromise proposed by Special Counsel until Auxo has received eighty percent (80%) on account of its Allowed Secured Claim, but prior to that time, the Trustee shall exercise his business judgment in deciding whether to compromise the Covid Testing Claims; and

(iv) If a dispute arises as to whether the Covid Testing Claims should be compromised, the Trustee or Auxo may seek a ruling from the Bankruptcy Court.

(f)   object to any Claims (disputed or otherwise) at any time prior to the Distribution Date and to settle, compromise, withdraw, or litigate to judgment, objections to any and all Claims, regardless of whether the Claim was scheduled by Debtor and classified as undisputed, liquidated, and non-contingent, or otherwise,

20

and to seek subordination of any Claim under the Bankruptcy Code or any other authority;

(g) make Distributions in respect of Allowed Claims subsequent to the Effective Date in accordance with the Plan and the Liquidating Trust Agreement;

(h) take any actions necessary to the collection, receipt, or disposition of any Remaining Assets;

(i) execute and deliver all releases, satisfactions, and termination statements as may be required in connection with full payment of any debt obligation secured by any Lien or security interest;

(j) retain and/or terminate professional persons without Bankruptcy Court approval, in the Liquidating Trustee's discretion, to assist in the duties and responsibilities ascribed to him under this Plan and the Liquidating Trust Agreement. The reasonable fees and expenses of all professionals retained by the Liquidating Trustee shall be paid from the Remaining Assets without Bankruptcy Court approval or as provided in the Liquidating Trust Agreement;

(k) satisfy all reporting requirements for the Liquidating Trust, and all assets held by or on behalf of the Liquidating Trust, to the relevant reporting authority;

(l) file with the Bankruptcy Court reports regarding the liquidation or other administration of property comprising the Remaining Assets, the distributions made by the Liquidating Trust, and other matters required to be included in such report; and

(m) except as otherwise ordered by the Bankruptcy Court, and subject to the terms of the Plan and the Liquidating Trust Agreement, pay any fees and expenses incurred by the Liquidating Trust on or after the Effective Date in accordance with the Liquidating Trust Agreement and without Bankruptcy Court approval.

## 11. Sources for Plan Distribution.

(i) It is contemplated that all of the funds necessary for the Debtor or the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (a) the Debtor's Cash on hand, (b) the proceeds of the

21

Sale, (c) Cash funding provided by Auxo to pay the Allowed Administrative Claims, the Allowed Priority Claims, the U.S. Trustee fees, and the Accrued Professional Fees, (d) Cash received in liquidation of the Remaining Assets of the Debtor, and (e) the proceeds of Causes of Action and the Covid Testing Claims.

(ii)    On or before January 18, 2024, Auxo shall wire transfer to the Liquidating Trustee such funds required to pay all Administrative Claims and Priority Claims, plus the amounts necessary and sufficient to pay the U.S. Trustee fees associated with distributions on such claims by the Liquidating Trustee. The Liquidating Trustee shall promptly pay all Allowed Administrative Claims and Priority Claims, as provided in the Plan and the Liquidating Trust Agreement. To the extent, however, such Administrative Claims and Priority Claims have not been Allowed, the Liquidating Trustee shall deposit the remaining funds into a Distribution Reserve account, as provided under the Plan and the Liquidating Trust Agreement. Such funds shall remain in the Distribution Reserve account until the remaining Administrative Claims and Priority Claims become Allowed Claims or a determination is made that the particular Administrative Claim or Priority Claim shall not be allowed, and are paid by the Liquidating Trustee from the Distribution Reserve account to the extent they are Allowed Claims; provided, however, if a creditor files a motion seeking allowance of an administrative claim that was neither budgeted, nor reflected in the Debtor's books and records, then Auxo shall not be required to fund the payment of that claim for distribution by the Liquidating Trustee, plus the amounts necessary and sufficient to pay the U.S. Trustee fees associated with distributions on such claims by the Liquidating Trustee until ten (10) day after entry of a Final Order allowing that claim. After the Trustee has paid all Allowed Administrative Claims and Priority Claims, the Liquidating Trustee shall disburse any remaining funds in the Distribution Reserve account to Auxo.

## 12.    Exculpation and Indemnification.

(a)    **Exculpation**: Neither the Debtor, the Debtor's Estate, the Debtor-in-Possession, or the Committee, nor the firms or corporations representing them, or any of their employees, professionals or agents, shall in any way be liable for any acts of any of their employees, professionals or agents, except for acts undertaken by them in bad faith, gross negligence, fraud or willful misconduct, in the performance of their respective duties from the Petition Date to the Effective Date.

(b)    **Indemnification**: The Liquidating Trust hereby agrees to indemnify, defend and hold harmless the Liquidating Trustee and the Post-Effective Committee,

the firms or corporations representing them, and their employees, professionals and agents, for any and all audits, claims, demands, legal actions, damages, liabilities, repayment obligations, fines, penalties, interest and costs of every kind, which may arise after the Effective Date asserted against them, including but not limited to attorney's fees and costs and expenses, incurred in connection with the administration of the Liquidating Trust, except for acts undertaken by them in bad faith, gross negligence, fraud or willful misconduct, in the performance of their respective duties. Subject to the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges provided under the Barton Doctrine (*Barton v. Barbour*, 104 U.S. 126 (1881)). Persons dealing or having any relationship with the Liquidating Trustee shall have recourse only to the Trust Assets (as defined in the Liquidating Trust Agreement) and shall look only to the Trust Assets (as defined in the Liquidating Trust Agreement) to satisfy any liability or other obligations incurred by the Liquidating Trustee to such Person in carrying out the terms of the Liquidating Trust Agreement or the Plan.

### 13. Equity of Debtor

As of the Confirmation Date, Mr. Grossi will continue to be the sole member of the Debtor.

### 14. Corporate Action

(a)     On, or after the Confirmation Date, as applicable, all matters provided for hereunder that would otherwise require approval of the members or managers of the Debtor shall be deemed to have been so approved pursuant to applicable state law, without any requirement of further action by members or managers of the Debtor.

(b)     The Debtor and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof.

### 15. Allowed Claims

Notwithstanding any provision herein to the contrary, the Liquidating Trustee shall only make Distributions to holders of Allowed Claims. No holder of a Disputed

Claim will receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claim holder until the Claims Objection Deadline to enable a timely objection thereto to be filed. Any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan and the Liquidating Trust Agreement. The Debtor and the Liquidating Trustee have no obligation to object to claims where there are insufficient monies to pay those claims. The Liquidating Trustee shall have the standing accorded to the Debtor after the Confirmation Date.

**16. Confirmation where a class of claims has not accepted their treatment under the Plan or where a party in interest has objected to confirmation**

Debtor reserves the ability to confirm the Debtor's Plan, as amended, over the objection of any party in interest, and any class of claims that has not accepted their treatment under the Plan pursuant to, inter alia, 11 U.S.C section 1129(b).

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A. Assumption and Rejection of Executory Contracts and Unexpired Leases**

1. Any executory contracts and unexpired leases that are listed in the Plan Supplement as executory contracts or unexpired leases to be assumed, or are to be assumed pursuant to the terms hereof, shall be deemed assumed by the Debtor as of date of entry of the Confirmation Order, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions pursuant to section 365(a) and 1123 of the Bankruptcy Code. To the extent necessary, any such executory contracts shall be treated as being assigned to the Liquidating Trustee, and any requirements to demonstrate adequate assurance of future performance shall be deemed to have been satisfied.

2. Any executory contracts and unexpired leases that have not expired by their own terms on or prior to the Effective Date, which the Debtor has not assumed or rejected during the Chapter 11 Case, which are not identified on **Exhibit C** to the Plan or in the Plan Supplement as executory contracts or unexpired leases to be

assumed, which are not assumed pursuant to the terms hereof, and which are not subject of a motion pending as of the Effective Date to assume the same, shall be deemed rejected by the Debtor as of the entry of the Confirmation Order, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to the Bankruptcy Code.

**B.     Claims Based on Rejection of Executory Contracts or Unexpired    Leases**

All proofs of Claim arising from the rejection of executory contracts or unexpired leases must be filed within thirty (30) days after the later of: (i) the date of entry of an order of the Bankruptcy Court approving any such rejection; or (ii) the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estate, the Liquidating Trust, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the provisions in Article IX of the Plan, including the permanent injunction.

**C.     Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan**

Any monetary amounts by which any executory contract and unexpired lease to be assumed pursuant to the Plan or otherwise is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on or as soon as practicable after the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding the amount of a cure payment, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other matter pertaining to assumption or assignment: (i) the Debtor or Liquidating Trustee, as applicable, retains the right to reject the applicable executory contract or unexpired lease at any time prior to the resolution of the dispute; and (ii) cure payments shall only be made following the entry of a Final Order resolving the dispute or the agreement of the counter-party and the Debtor or Liquidating Trustee.

**D.     Assumption of D&O Insurance Policies**

As of the Confirmation Date, the Debtor shall be deemed to have assumed all of the Debtor's unexpired directors' and officers' liability insurance policies in place

25

with outside carriers pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the foregoing assumption of each of the unexpired directors' and officers' liability insurance policies, whether or not such policies are identified on **Exhibit C** to the Plan or scheduled in the Debtor's schedules. All claims and rights granted under all such policies shall transfer to the Liquidating Trust and the Liquidating Trustee is authorized to pursue recovery against insurance policies for any Causes of Action that are covered claims and/or covered wrongful acts as provided herein and as further set forth in the Liquidating Trust Agreement.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, the Liquidating Trustee shall make distributions as soon as reasonably practicable on account of all Allowed Claims that are entitled to receive distributions under the Plan and shall make further distributions to holders of Claims that subsequently are determined to be Allowed Claims. Distributions shall be made pursuant to the Distribution Schedule. The order of priority shall be as set forth in Articles II and III herein.

### B.    Delivery of Distributions

#### 1.    Delivery of Distributions

Distributions to holders of Allowed Claims shall be made to the holder of such Claim as of the date of Distribution.

#### 2.    Address of Record

The address of the holder of a Claim shall be, for purposes of Distributions made pursuant to the Plan, the address set forth in any proof of Claim filed by such holder or request for payment of an administrative expense, or, in the absence of such a proof of Claim or request, the address set forth in the Debtor's books and records.

### 3. Undeliverable Distributions

**Holding of Certain Undeliverable Distributions.** If any Distribution to a holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further Distributions shall be made to such holder unless and until the Liquidating Trustee is notified in writing of such holder's then-current address. Undeliverable Distributions shall remain in the possession of the Liquidating Trustee until such time as any such Distributions become deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Liquidating Trustee shall make all Distributions that become deliverable. If the Liquidating Trustee is not able to deliver a Distribution to a holder of an Allowed Claim, and more than six (6) months has elapsed since the initial Distribution was returned as undeliverable, the Liquidating Trustee may distribute those funds pursuant to the Distribution Schedule to other holders of Allowed Claims.

### A. Minimum Distribution

Any other provision of the Plan notwithstanding, the Liquidating Trustee will not be required to make Distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be deemed satisfied in full.

### B. Setoffs

The Debtor and Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant hereto on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), the rights and Causes of Action of any nature that the Estate and the Liquidating Trust may hold against the holder of any such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any such rights and Causes of Action that the Debtor or the Liquidating Trustee may possess against any such holder, except as specifically provided herein.

27

## ARTICLE VII
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A. Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date that must be satisfied:

1. The filing of the 2022 U.S. Corporation Income Tax Return by the Debtor with the IRS that shall be filed on or before December 15, 2023;

2. Entry of the Confirmation Order; and

3. The Confirmation Order becoming a Final Order.

### B. Waiver of Conditions

Intentionally omitted.

### C. Non-Occurrence of Conditions

If the Effective Date does not occur by March 31, 2024, the Debtor may determine upon notice to the Bankruptcy Court that the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Cause of Action or Claim; (ii) constitute an admission, acknowledgement, offer or undertaking in any respect by any party, including the Debtor; or (iii) otherwise prejudice in any manner the rights of any party, including the Debtor.

## ARTICLE VIII
## ALLOWANCE AND PAYMENT OF PROFESSIONAL FEE CLAIMS

All final requests for payment of Accrued Professional Compensation must be filed no later than sixty (60) days after the Effective Date. After notice and a hearing, the Allowed amounts of Accrued Professional Compensation shall be determined by the Bankruptcy Court. Any Retained Professional may also seek authority to file an interim fee application seeking allowance and payment of Accrued Professional Compensation prior to the Effective Date.

28

## ARTICLE IX
## INJUNCTIVE AND RELATED PROVISIONS

### A.   Release of Claims and Termination of Equity Interests

Intentionally omitted.

### B.   Temporary Injunction

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have, held, currently hold, or may hold a Claim, Equity Interest, or other debt or liability will be temporarily enjoined from taking any of the following actions on account of any such Claims, debts or liabilities or Equity Interests or rights: (i) commencing or continuing in any manner any action or other proceedings against the Liquidating Trust other than to enforce any right to a distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Liquidating Trust other than as permitted pursuant to clause (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against the Liquidating Trust; and (iv) commencing or continuing any action, in any manner in any place that does not comply with or is inconsistent with the provisions of the Plan or the Liquidating Trust Agreement. The temporary injunction shall continue until the Liquidating Trust no longer has assets to be distributed, at which time the Liquidating Trustee immediately will file a notice of dissolution of the temporary injunction. Notwithstanding anything to the contrary herein, the temporary injunction does not preclude the holder of a Claim, Equity Interest, or other debt or liability from pursuing claims against the Liquidating Trustee for breach of the Liquidating Trust, for breach of his fiduciary duty, or any contract or tort claims as between the holder of a Claim, Equity Interest, or other debt or liability, subject to such party first seeking leave from the Bankruptcy Court to file suit against the Liquidating Trustee pursuant to the Barton Doctrine.

### C.   No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge the Debtor.

# ARTICLE X
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, to the fullest extent legally permissible, including but not limited to, jurisdiction to:

1.  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.  Grant or deny any applications for allowance of compensation or reimbursement of fees or expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.  Resolve any matters related to the assumption of assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date, and adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

4.  Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.  Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, including the noticing and taking of examinations or requests for production of documents under Fed.R.Bankr.Pro. 2004, and otherwise adjudicate any matters preserved under the terms of the Plan and the Liquidating Trust, provided, however, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, and other agreements or documents adopted in connection with the Plan and Disclosure Statement and any Plan Supplement;

7.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, modification, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      Issue injunctions, enforce them, enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      Resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

10.     Enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

11.     Supervise collection of all Remaining Assets;

12.     Resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust or any contract, instrument, release, or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

13.     Enter an order and/or the decree concluding the Chapter 11 Case; and

14.     Otherwise enforce the provisions of the Plan and the Liquidating Trust Agreement.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

### A. Post-Effective Date Professionals' Fees and Final Fee Applications

The Liquidating Trustee may pay reasonable, documented fees of Retained Professionals incurred after the Effective Date, pursuant to and subject to the terms

31

of the Liquidating Trust Agreement, without the necessity for Court approval. The Liquidating Trustee shall retain current counsel for the Committee, Taft, Stettinius & Hollister, LLP. The Liquidating Trustee shall retain the current financial advisor for the Debtor, O'Keefe & Associates, and Debtor waives any potential conflict of interest.

### B. Payment of Statutory Fees

The Liquidating Trustee shall continue to pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date until such time as the Chapter 11 Case is closed by the Court.

### C. Modification of Plan

Subject to the limitations contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor may, and upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### D. Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans. If the Debtor revokes or withdraws the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

### E. Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor,

administrator, successor or assign of such Entity.

**F.  Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other applicable Federal law apply, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflict of laws thereof.

**G. Closing of the Case**

The Liquidating Trustee, after consultation with the Office of the United States Trustee, shall file a motion for the underlying Chapter 11 Case to be closed when it deems closure to be prudent.

**H. Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.

**I.  Section 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax, transfer tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation, instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Any transfers in connection with the Plan are deemed transferred subject to section 1146(a). To the extent that the Sale has not been consummated prior to the Effective Date, the Sale may be consummated by the Liquidating Trustee subject to the section 1146(a) exemption as set forth herein.

**J.  Intentionally Omitted**

**K. Further Assurances**

33

The Debtor, all holders of Claims receiving Distributions hereunder and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the plan or the Confirmation Order.

### L. Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### M. No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable.

### N. Compromises and Settlements

Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various Claims (i) against it and (ii) that it has against other persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and Claims that it may have against other persons up to and including the Confirmation Date. After the Confirmation Date, such right shall pass to the Liquidating Trustee and the Liquidating Trust shall be governed by the terms of the Liquidating Trust Agreement.

### O. Payments on Disputed Claims

Notwithstanding anything in this Plan to the contrary, neither the Debtor nor the Liquidating Trustee shall be obligated to make any Distribution towards any Disputed Claim. Further, neither the Debtor nor the Liquidating Trustee shall be required to make any payments for an Allowed Claim to any Creditor if the Debtor or the Liquidating Trustee has filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with section 502(d) of the Bankruptcy Code.

34

### P. Records Retention.

Debtor and the Liquidating Trustee shall comply with the provisions of the proposed Sale Order regarding the retention of records, and any other applicable Court Orders.

### Q. Inconsistency/What Governs.

To the extent there is any inconsistency between the Plan, the Disclosure Statement, the Liquidating Trust Agreement and the Confirmation Order, the Confirmation Order shall control; provided, however, as relates to the treatment accorded to and the rights of the USA, the Plan shall control.

### R. Special Provisions as to the United States.

Nothing in this Plan, the Plan Supplement or the Order Approving this Plan discharges, releases, enjoins, bars, impairs or otherwise precludes (a) any obligation or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any claim of the United States arising after the Sale Date, (c) any obligation or liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Sale Date; (d) any right, defense, claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor; or (e) the enforcement of the United States' police or regulatory powers. Further, nothing in this Plan, the Plan Supplement or the Order Approving this Plan (i) authorizes the transfer of any licenses, permits, registrations, or governmental authorizations and approvals without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or (ii) restricts or limits the United States' rights of setoff and recoupment.

### S. Plan Default as to the United States.

Upon any failure (i) to file any federal tax return due under the Second Amended Plan or under applicable non-bankruptcy law, or (ii) to make any payment due on any administrative, secured, priority, or general unsecured claim of the United States, and which failure is not cured within 30 days of the mailing of a written notice of default by the United States to Debtor, Debtor's counsel of record, and the Liquidating Trustee, the United States may exercise all rights and remedies

applicable under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief from this Court; provided, however, nothing contained in this paragraph shall create an obligation by any party subject hereto.

**DEBTOR**

By:    /s/James  Grossi
       James Grossi
Its:    CEO and Managing Member

Prepared By:

By: /s/ Robert N. Bassel
Robert N. Bassel (P 48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
248.677.1234

Dated: November 30, 2023

36