UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ARK LABORATORY, LLC,                    Case No. 23-43403-MLO
                                        Chapter 11
      Debtor.                           Hon. Maria L. Oxholm
_____/

### NOTICE OF RESTATED AND FIRST AMENDED LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

NOTICE is hereby given by Jason W. Bank, solely in his capacity as the Successor Trustee of the Ark Laboratory Trust, through his counsel, that on July 9, 2024, the Court approved a Restated and First Amended Liquidating Trust Agreement and Declaration of Trust ("Amended Agreement"), pursuant to the *Order Granting the Ex Parte Motion of Successor Trustee to Approve Restated and First Amended Liquidating Trust Agreement and Declaration of Trust* [ECF No. 649], a copy of which Amended Agreement is attached as **Exhibit 1**. A red-lined version showing the changes made in the Amended Agreement as against the Liquidating Trust Agreement and Declaration of Trust approved by the Court on December 1, 2023 pursuant to its *Findings of Fact, Conclusions of Law and Order (I) Granting Final Approval of the Debtor's Disclosure Statement and Plan Supplement, and (II) Confirming Debtor's Second Amended Plan of Liquidation* [ECF No. 392], is attached as **Exhibit 2**.

Respectfully submitted;

**TAFT STETTINIUS &
HOLLISTER, LLP**

By: /s/ Judith Greenstone Miller
Judith Greenstone Miller (P29208)
Kimberly Ross Clayson (P69804)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
jgmiller@taftlaw.com
kclayson@taftlaw.com

*Counsel for Jason W. Bank, solely in his
Capacity as Successor Trustee of the Ark
Laboratory Trust*

Dated: July  10, 2024

# EXHIBIT 1

## FIRST AMENDED AND RESTATED
## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

The Liquidating Trust Agreement and Declaration of Trust, dated as of November 2, 2023, was made by and between Ark Laboratory, LLC, d/b/a Helix Diagnostics (the "Debtor"), in the chapter 11 bankruptcy case (the "Chapter 11 Case"), pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") and Paul R. Hage (the "Liquidating Trustee"), a copy of which is attached as **Exhibit A**. The Liquidating Trustee tendered his notice of intent to resign on May 29, 2024 and, as a result thereof, after the filing of a motion with the Bankruptcy Court, Jason W. Bank was appointed as the successor trustee (the "Successor Trustee") on July 2, 2024 pursuant to order of the Bankruptcy Court, a copy of which is attached as **Exhibit B** (the "Order") [ECF No. 644] and is now serving as the Trustee,[1] (together with the Debtor, each, a "Party" and collectively, the "Parties"). The Liquidating Trust Agreement and Declaration of Trust has been amended pursuant to the Order and this First Amended and Restated Liquidating Trust Agreement and Declaration of Trust (together with the Liquidating Trust Agreement and the Declaration of Trust, the "Agreement" or the "Trust Agreement"). A red-lined version reflecting the changes made to the Trust Agreement is attached as **Exhibit C**.[2]

---

[1] Effective upon execution of the First Amended and Restated Liquidating Trust Agreement and Declaration of Trust, all references to the "Trustee" shall reference Jason W. Bank, solely in his capacity as Successor Trustee.

[2] In addition to the changes approved by the Bankruptcy Court in the Order, additional nonmaterial changes were made, as reflected in the red-lined version of the Trust Agreement attached as **Exhibit C**. In an abundance of caution, the Trustee will seek approval of these changes to the Trust Agreement from the Bankruptcy Court. If approved, the order approving the Trust Agreement, as amended and restated (the "Second Order"), the Second Order [ECF No. 649] is attached as **Exhibit D** to this Trust Agreement.

<u>**RECITALS**</u>

1. On April 12, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. The Chapter 11 Case is being administered as *In re Ark Laboratory, LLC*. Case 23-43403-MLO.

2. On May 1, 2023, the Office of the United States Trustee for the Eastern District of Michigan (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured Creditors (the "<u>Committee</u>") in the Chapter 11 Case pursuant to 11 U.S.C. § 1103 [ECF No. 68], and thereafter, on May 2, 2023, filed an Amended Appointment of Unsecured Creditors Committee [ECF No 70]. The members of the Committee consisted of: (1) Matthew George of Gemini Labor Group, LLC; (2) Dorian Wright, CFO of The Sports Marketing Agency; and (3) Maribeth Thomas, Esq., counsel to Fisher Healthcare.

3. On September 19, 2023, the Debtor filed its *Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [ECF No. 249] (as may be amended, supplemented or modified from time to time, the "<u>Plan</u>").[3]

4. On November 30, 2023, the Bankruptcy Court entered the Findings of Fact, Conclusions of Law and Order (I) Granting Final Approval of the Debtor's Disclosure Statement and Plan Supplement, and (II) Confirming Debtor's Second Amended Plan of Liquidation [ECF No. 392] (the "<u>Confirmation Order</u>"). Pursuant to the Confirmation Order, the Plan became effective on December 14,, 2023 (the "<u>Effective Date</u>").

5. The Plan provides for the establishment of the Creditor Trust (the "<u>Trust</u>") on the Effective Date.

---

[3] All capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings set forth in the Plan.

6.     The Confirmation Order provides for the appointment of the Trustee as the Liquidating Trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor Liquidating Trustee of the Trust.

7.     The Trust is established for the benefit of Auxo Investment Partners, LLC, the secured creditor ("Auxo"), the unsecured creditors of the Debtor's estate, and the Retained Professionals approved by the Bankruptcy Court (each a "Beneficiary" and collectively, the "Beneficiaries").   For the avoidance of doubt, as of the Effective Date of the Plan and in accordance therewith, each Beneficiary is entitled to a distribution from the Trust, if applicable, as provided under the Plan confirmed by the Bankruptcy Court.[4]

8.     The Trust is established for the purpose of liquidating the remaining assets of the Debtor which, pursuant to the Plan are hereby transferred to the Trust together with all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets"), maximizing recoveries for the benefit of the Beneficiaries, and making distributions in accordance with the Plan, Confirmation Order and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

9.     The Trust Assets consist primarily of (i) the cash in the Professional Fee Escrow Account for payment of the Retained Professionals on their Allowed Professional Compensation approved by the Bankruptcy Court, (ii) Causes of Action, including the Avoidance Actions, and (iii) the Covid Testing Claims. The Trust Assets shall be distributed to the Beneficiaries as provided in Article III of this Agreement, in accordance with the Plan.

---

[4] The Plan became "effective" on December 14, 2023, as reflected in the Notice of Occurrence of the Effective Date of Second Amended Plan of Liquidation filed with the Bankruptcy Court. On December 15, 2023 [ECF No. 413].

3

10.     The Trust Assets specifically exclude any assets purchased by Auxo as provided under the Order: (I) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] entered September 28, 2023, as well as any assets arising or covered by that certain Management and Transition Services Agreement dated as of October 12, 2023 by and between MSU Health Care Lab, LLC and the Debtor (the "Transition Services Agreement").  Further, the Transition Services Agreement shall expressly survive confirmation of the Plan and remain in full force and effect for the duration of its term and the Liquidating Trustee shall not take any action inconsistent with the Transition Services Agreement or that would preclude the Debtor from being able to fulfill its obligations under the Transition Services Agreement.

11.     Pursuant to the Plan, the Debtor, the Trustee, and the Beneficiaries are required to (a) treat the transfer of assets to the Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries, and (b) followed by a transfer by such Beneficiaries to the Trust, the Beneficiaries will be treated as the grantors and owners thereof.

12.     Pursuant to the Plan, the Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the Trust.

4

13. Pursuant to section 1145 of the Bankruptcy Code, the Trust is intended to be exempt from the requirements of the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Parties enter into this Agreement to effectuate the creation of the Trust and the distribution of the Trust Assets to the Beneficiaries pursuant to, and to the extent set forth in, the Plan and the Confirmation Order, it being understood that the Trust Assets shall first be used to pay the Beneficiaries as provided in the Plan and Article III of this Agreement.

Pursuant to Article IV, Section 8(6) of the Plan and Section 2.3 of this Agreement, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Trust Assets shall vest in the Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan and the Confirmation Order.

The Trust Assets are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, for the benefit of the Beneficiaries and for no other party as provided in this Agreement and in accordance with the Plan.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1 <u>Recitals</u>. The Recitals are incorporated into and made terms of this Agreement.

1.2    Definitions.  For purposes of this Agreement, unless otherwise defined herein, the terms of this Agreement shall have the meanings set forth in the Plan.

1.2.1    "Trust Claim(s)" shall mean a claim or interest that has been scheduled as not disputed, contingent or unliquidated, filed as a proof of claim or interest, or whose allowance has been granted by the Bankruptcy Court pursuant to a Final Order, without regard to whether such claim or interest was Disputed on the Effective Date, by a Beneficiary of this Agreement that is making a request for payment from the Trust Assets, to the extent that it remains unpaid.

1.2.2    "Trust Interest(s)" shall mean each Beneficiary's interest in Trust Assets.

1.3    Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4    Construction of Agreement.  This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5    Conflict Between Plan Documents.  In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

6

# ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     <u>Effectiveness of Agreement; Name of Trust</u>.   This Agreement shall become effective on the Effective Date.   The Trust shall be officially known as the "Ark Laboratory Trust."

2.2     <u>Purpose of Trust</u>.   The Parties, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of liquidating its assets, maximizing recoveries for the benefit of the Beneficiaries, and making distributions to the Beneficiaries in accordance with the Plan, Confirmation Order, and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

2.3     <u>Transfer of Trust Assets</u>.

2.3.1     <u>Transfer of Trust Assets</u>.   Pursuant to section 1141 of the Bankruptcy Code and the Plan, the Debtor and its Estate hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust, as of the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order.

2.3.2     Prior to the Effective Date and to the extent required following the Effective Date, the Debtor shall, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all necessary documents (in recordable form where necessary or appropriate) and take or cause to be taken any action that Trustee may reasonably deem necessary or appropriate to vest or perfect in the Trust or confirm to the Trustee title to and

7

possession of the Trust Assets with such fees, expenses and costs to be paid by the Trust. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

   2.3.3 <u>Title to Trust Assets</u>. Pursuant to the Plan, all of the Debtor's and its Estate's right, title, and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, consistent with the provisions of the Plan and Confirmation Order. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor and its Estate to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan, and Confirmation Order.

  2.4 <u>Capacity of Trust</u>. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may

<div align="center">8</div>

alone be the named movant, respondent or party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5 <u>Acceptance by Trustee</u>. The Trustee accepts its appointment as Liquidating Trustee of the Trust.

## ARTICLE III

### PAYMENT OF ACCRUED PROFESSIONAL COMPENSATION CLAIMS OF RETAINED PROFESSIONALS, ALLOWED SECURED CLAIM OF AUXO, AND ALLOWED CLAIMS OF UNSECURED CREDITORS

3.1 <u>Administrative Expense Claims of Retained Professionals</u>.

3.1.1 On the Effective Date, cash in the Professional Fee Account shall be transferred to the Trustee for the benefit of the Retained Professionals. Upon the entry of a Final Order by the Bankruptcy Court approving the Accrued Professional Compensation Claims of the Retained Professionals, the Trustee shall pay each Retained Professional such pro rata amounts as authorized by the Bankruptcy Court and as provided in the Plan. If the amount in the Professional Fee Escrow Account is less than the Accrued Professional Compensation Claims of the Retained Professionals, prior to any distribution of the net proceeds of the Causes of Action to the Holders of Allowed Unsecured Claims, to the extent that a Retained Professional has not been paid in full on its Accrued Professional Compensation Claims approved by the Bankruptcy Court from the Professional Fee Escrow Account, the net proceeds of the Causes of Action shall first be used to pay the administrative expenses of the Trustee and his professionals to administer the Trust, and then to the Retained Professionals for outstanding Accrued Professional Compensation Claims.

9

3.1.2    Without limiting the foregoing, and notwithstanding anything to the contrary herein, the Trustee shall maintain a Professional Fee Escrow Account for the benefit of Retained Professionals (*i.e.*, in a separate bank account).  On or before the Effective Date, the Debtor shall provide the Trustee with an open register of how much money is escrowed for each Retained Professional.  The Professional Fee Escrow Account and amounts funded therein for a Retained Professional are and shall continue to be maintained in trust solely for each Retained Professional and as specifically allocated for each Retained Professional in the First Amended Cash Collateral Order [ECF No. 269] and the Order Approving Employment of Special Counsel [ECF No. 229]. Notwithstanding anything to the contrary in this Agreement, the funds in the Professional Fee Escrow Account shall not be considered property of the Debtor, its Estate, or the Trust; provided, however, the Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow Account after payment in full of all Accrued Professional Compensation Claims without any further notice, action or order of the Bankruptcy Court.  Unless otherwise agreed to (1) by the Debtor and the Retained Professional prior to the Effective Date, or (2) by the Trustee and the Retained Professional after the Effective Date, the amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Trustee as soon as reasonably practicable after such Professional Fee Claims are Allowed by final order of the Bankruptcy Court, first from the Professional Fee Escrow Account and second, as provided in Section 3.1.1 of this Agreement. For the avoidance of doubt, the amount escrowed for each Retained Professional on the Effective Date is not a cap on such Retained Professional's Professional Fee Claim.

3.2    <u>Allowed Secured Claim of Auxo</u>.   The net recoveries from the Covid Testing Claims, after payment of such amounts owed to Special Counsel, plus the actual and necessary

fees of the Trustee in recovering or compromising such recoveries, shall be distributed by the Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo as a Beneficiary under the Trust, (b) the next $1.0 million to the Trustee for the pro rata payment of the Allowed Claims of the Unsecured Creditors, as Beneficiaries under the Trust, (c) then, once Auxo receives eighty percent (80%) of the amount owed on its Allowed Secured Claim, each dollar received thereafter by the Liquidating Trustee shall be split with fifteen percent (15%) of such recoveries for pro rata payment of the Allowed Claims of the Unsecured Creditors and eighty-five percent (85%) of such recoveries for payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim. Thereafter, all such recoveries, net of fees and expenses of the Trust, shall be paid pro rata to the Allowed Unsecured Claims, in accordance with the Plan.

       3.3   <u>Allowed Claims of Unsecured Creditors</u>. The Allowed Unsecured Claims shall be paid as provided in Section 3.2 of this Agreement. Additionally, the Allowed Unsecured Claims shall receive, on a pro rata basis, the proceeds of the Causes of Action, including the Avoidance Actions, after payment in full of fees and expenses of the Liquidating Trustee and his professionals and all Accrued Professional Compensation Claims owed to the Retained Professionals to the extent of any deficiency owed to them beyond the Professional Fee Escrow.

<div align="center">

**ARTICLE IV**

**ADMINISTRATION OF TRUST**

</div>

       4.1   <u>Rights, Powers, and Privileges of Trustee Generally</u>. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management, settlement and disposition thereof, and over the management and conduct of the affairs of the Trust. In administering the Trust Assets, the

<div align="center">11</div>

Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

4.1.1 <u>Power to Contract</u>. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

4.1.2 <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

4.1.3 <u>Compromise and Settlement of the Covid Testing Claims</u>. Before the Trustee can compromise or settle the Covid Testing Claims for less than their face value, the Trustee shall consult with the Post-Confirmation Committee, Auxo and Special Counsel over the risks and benefits associated with settling the Covid Testing Claims. Until the Covid Testing Claims have resulted in a net recovery of $9.2 million, the Trustee shall take into special consideration Auxo's position and its Allowed Secured Claim in the Covid Testing Claims with respect to any compromise or settlement of the Covid Testing Claims, after consultation with Auxo and the Post-Confirmation Committee. Once the Covid Testing Claims have resulted in a

12

net recovery of at least $10.2 million, the Trustee shall give consideration to Auxo's position with respect to any compromise proposed by Special Counsel until Auxo has received eighty percent (80%) on account of its Allowed Secured Claim, but prior to that time, the Trustee shall exercise his business judgment in deciding whether to compromise the Covid Testing Claims. If a dispute arises as to whether the Covid Testing Claims should be compromised, the Trustee or Auxo may seek a ruling from the Bankruptcy Court.

     4.2   <u>Powers of Trustee</u>. Without limiting the generality of the above Section 4.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

     4.2.1   To act on behalf of the Trust, including the right to effectuate all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtor, necessary or convenient to implement the provisions of the Plan and this Trust Agreement;

     4.2.2   Except as provided in Section 4.1.3, with respect to any Trust Assets, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commenced or continued and take all actions that may be or could have been taken by any officer, director, or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholder;

     4.2.3   To manage, monitor and enforce all of the Debtor's and the Estate's rights and interests under the Plan, the Confirmation Order, the Trust Agreement, any other agreements of the Debtor, and any other Orders of the Bankruptcy Court;

13

4.2.4   To authorize and make distribution to holders of Allowed Claims provided for or contemplated under the Plan or Trust Agreement, including, without limitation, Article 3 of the Trust Agreement;

4.2.5   Except to the extent set forth in the Plan, to object to any Trust Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Trust Claim regardless of whether such Claim was Disputed on the Effective Date, subject to the terms of Section 4.1.3 as relates to the Covid Testing Claims, it being understood that prior to an objection to a Trust Claim, the Trustee may act without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Trust Agreement;

4.2.6   To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Trust and the Trustee and to pay the fees and charges incurred by the Trustee or the Trust's behalf on or after the Effective Date;

4.2.7   To (a) file, if necessary, any and all tax and information returns required with respect to the Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise, (b) make tax elections by and on behalf of the Trust, and (c) pay taxes, if any, payable by the Trust;

4.2.8   To take all other actions not inconsistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable with respect to administering the Plan;

14

4.2.9   To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order or the Trust Agreement;

4.2.10   To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Trust Assets in the reasonable business judgment of the Trustee;

4.2.11   Except as otherwise set forth herein, to prosecute and/or settle any Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and pursue to settlement or judgment such Causes of Action, including the right to issue subpoenas or to file motions for examinations under Fed.R.Bankr.P. 2004;

4.2.12   To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable, and to exercise any and all rights held by the holder of such insurance policies;

4.2.13   To collect and liquidate and/or distribute all Trust Assets pursuant to the Plan, the Confirmation Order, and the Trust Agreement;

4.2.14   To calculate and make all distributions on behalf of the Trust to holders of Allowed Claims provided for in, or contemplated by, the Plan and this Agreement, including, without limitation, all Accrued Professional Compensation Claim, Allowed Secured Claims, and Allowed Unsecured Claims;

23-43403-mlo    Doc 651    Filed 07/10/24    Entered 07/10/24 13:53:44    Page 18 of 214

4.2.15    To establish, adjust and maintain any reserves for Disputed Trust Claims administered by the Trust;

4.2.16    To hold legal title to any and all of the Trust Assets;

4.2.17    If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with Section 9.9 of this Agreement;

4.2.18    To retain any and all insurance policies of the Debtor providing coverage with respect to Causes of Action and exercise any and all rights held by the holder of such insurance policies;

4.2.19    In reliance upon the Debtor's Schedules and the Claims Register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with Section 4.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Case to the extent of any Trust Claim is reflected thereon;

4.2.20    Exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, the Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan. Solely with respect to any Trust Asset, the Trustee shall stand in the same position as the Debtor with respect to any claim the Debtor may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Trustee shall have the ability to raise  all of the Debtor's rights to preserve, or assert any such privilege; and succeed to all of the Debtor's rights to preserve or assert any such privilege; and

16

4.2.21 To file an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case.

4.3     Authority.  No Person dealing with the Trust shall be obligated to inquire into the Trustee's authority in connection with the receipt, preservation, management, or disposition of Trust Assets.

4.4     Abandonment.  If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner (if applicable) or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, without further authority or approval of the Bankruptcy Court, including by donation of such property to a charitable organization.

4.5     Responsibility for Administration of Trust Claims.  From and after the Effective Date, the Trust shall be responsible for, among other things, administering and paying distributions provided for under the Plan to Trust Beneficiaries.  Except as expressly provided otherwise in the Plan, and except to the extent the applicable Trust Claims have been previously Allowed prior to the Effective Date, the Trust shall control and effectuate the Trust Claims reconciliation process, including to compromise or settle any Trust Claim without any further notice to or action, order or approval by the Bankruptcy Court, or to object to or seek to subordinate any Trust Claim, except as otherwise provided in this Agreement.  The Trust shall be entitled to assert all of the Debtor's and the Estate's rights, without limitation, under section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Trust Claims under and subject to section 502(c) of the Bankruptcy Code.

17

4.6     Post-Confirmation Committee.  In accordance with the Plan, on the Effective Date, a Post-Confirmation Committee, consisting of those members of the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case [ECF Nos. 68 and 70] that are willing to serve shall be appointed to the Post-Confirmation Committee.  The Trustee shall consult with the Post-Confirmation Committee as relates to any material action to be taken under the Trust and, as he may deem further necessary or appropriate, before taking action under this Agreement in accordance with the Plan.

4.7     Agents and Professionals.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Committee or by the Debtor.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such Persons in the ordinary course of business.

4.8     Safekeeping and Investment of Trust Assets.  All Trust Assets received by the Trustee shall, until liquidated, if necessary, and distributed or paid over time as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets (except for the Professional Fee Escrow Account and the account for the Covid Testing Claims, as provided in Article III of this Agreement), unless and to the extent required by law or the Plan.  The Trustee shall not be under any obligation to invest Trust Assets.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any Cash received by them and held for distribution or payment to the Beneficiaries,

18

except as such interest shall actually be received by the Trust or Trustee, which shall be distributed consistent with the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any Cash held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's Creditor purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills and short-term money market funds; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

4.9     Maintenance and Disposition of Trust and Debtor Records.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The Trust may, but has no obligation to, engage a claims agent to continue to maintain and update the Claims Register maintained in the Chapter 11 Case throughout the administration of the Trust.  In any case, to the extent of any Trust Claims reflected thereon, the Claims Register may serve as the Trustee's register of beneficial interests held by Beneficiaries.  Except as provided in the Order: (I) Authorizing  the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the

19

Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] and the Confirmation Order, the books and records maintained by the Trustee and any records of the Debtor transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust. For the avoidance of doubt, nothing herein creates an independent right for Beneficiaries to obtain such books and records.

       4.10    <u>Reporting Requirements and Payment of Statutory Fees</u>.

            4.10.1 The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

            4.10.2 The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee regular post-confirmation quarterly disbursement reports, on or before the twenty-first (21st) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

            4.10.3 The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee the final reports for the Debtor.

            4.10.4 The Trustee shall pay all statutory fees from the Trust Assets as such fees become due and payable.

       4.11    <u>No Bond Required; Procurement of Insurance</u>. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The

20

Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

## ARTICLE V
## DISTRIBUTIONS

5.1     <u>Distribution and Reserve of Trust Assets</u>.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets to Beneficiaries (subject to any reserves administered by the Trust) as well as to holders of Accrued Professional Compensation Claims, Secured Claims, and Unsecured Claims in accordance with the Plan.

5.1.1  <u>Distributions to Beneficiaries</u>.  In accordance with the Plan and Article III of this Agreement, the Trustee shall cause the Trust to distribute, when practicable, the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee; <u>provided</u> <u>that</u> the Trustee shall have no obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the holder of such Claim is less than $50.00, which shall be treated as a De Minimis Distribution under Article VI, Section B(3)(c) of the Plan.

5.1.2  <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the Trustee may, in its reasonable discretion, establish, supplement, and maintain reserves in an

amount sufficient to meet any and all reasonable expenses and liabilities of the Trust, including, but not limited to, reasonable attorneys' fees and expenses and the fees and expenses of other professionals. In accordance with Section 4.2.15 of this Agreement, the Trust may also maintain, as necessary, a reserve for Disputed Trust Claims. For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to a Trust Claim. Except as otherwise provided in this Agreement, the Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; provided, however, the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

5.1.3 Distributions Net of Reserves and Costs. Distributions to Beneficiaries shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable out-of-pocket costs of making the distributions to Beneficiaries.

5.1.4 Right to Rely on Professionals. Without limitation of the generality of Section 7.6 of this Agreement, in determining the amount of any distribution or reserves, the Trustee may rely on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

5.2 Method and Timing of Distributions. Distributions to Beneficiaries shall be made from the Trust in accordance with the terms of the Plan (in particular, Articles III and V) and this Agreement. The Trust may engage a Disbursing Agent or other Person to help make distributions. For the avoidance of doubt, Beneficiaries will only be entitled to a distribution from the Trust as provided in Article III and in accordance with the Plan.

5.3 Withholding from Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary, any and all amounts as

may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

5.4    <u>Tax Identification Numbers</u>.  The Trustee may require any Beneficiary to furnish an executed IRS Form and may condition any distribution upon receipt of such executed IRS Form. If a Beneficiary does not timely provide the Trustee with an executed IRS Form, then their Allowed Claim shall be deemed disallowed and expunged, and any Claim in respect thereof shall be discharged and barred from assertion against the Trustee, the Trust or the Trust Assets.

5.5    <u>Unclaimed and Undeliverable Distributions</u>.  If any distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further distribution(s) to such Beneficiary shall be made unless and until Beneficiary claims the distribution(s) by timely notifying the Trustee in writing of any information necessary, including such Beneficiary's then-current address, to make the distribution in accordance with the Plan.  If a Beneficiary timely provides the Trustee the necessary information under Article VII Section 7.4 of the Plan, all missed distributions shall be made as soon as is practicable, without interest.  Undeliverable or unclaimed distributions shall be administered in accordance with Article VI, Section B(3)(a) of the Plan.

5.5.1  <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

23-43403-mlo    Doc 651    Filed 07/10/24    Entered 07/10/24 13:53:44    Page 26 of 214

5.5.2 <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of any state.

5.6 <u>Voided Checks; Request for Reissuance</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 6 months after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed distributions and administered under Article VI, Section B(3)(a) and Section 5.5 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets, provided that such timing can be satisfied by the Trustee using commercially reasonable efforts.

5.7 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to an Allowed Trust Claim under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an Allowed Trust Claim resulting in adverse claims or demands being made in connection with such Allowed Trust Claim, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

5.7.1 The Trustee may elect to cause the Trust to make no payment or distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands as provided for in Article X, Section 1 of the Plan. Neither the Trust nor the Trustee shall be or become liable

24

to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

5.7.2   The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat Beneficiaries identified as the owner of that interest in the books and records maintained by the Trustee, as the absolute owner under this Agreement, of an Allowed Trust Claim.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

5.7.3   In acting or refraining from acting under and in accordance with this Section 5.7 of the Agreement, the Trust and Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

## ARTICLE VI
## BENEFICIARIES

6.1     Interest Beneficial Only.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

6.2     Ownership of Beneficial Interests Hereunder.  Each Beneficiary shall own a beneficial interest herein which shall, subject to Section 5.1 of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and this Agreement.

6.3     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

6.4     No Right to Accounting.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Except as provided in Section 9.4, nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

6.5     No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

6.6     Requirement of Undertaking.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, the provisions of this Section 6.6 shall not apply to any suit by the Trustee.

6.7     Limitation on Transferability.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law, provided, however, each Beneficiary shall have the right to transfer some or all of its Trust Interests one (1) time each calendar year and shall give the Trustee prompt

26

written notice thereof (each, a "Permitted Transfer"). The Trustee shall not have any obligation to recognize any transfer of a Trust Interest occurring after the Effective Date other than a Permitted Transfer, and only holders of Trust Interests of record as of the Effective Date, and transferees of a Permitted Transfer, shall be entitled to be recognized for all purposes hereunder. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee along with the identity and address of the proper Person to succeed the Beneficiary's interest, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trustee may fully rely upon any such proof and shall have no duty to investigate.

6.8     Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

6.9     Delivery of Distributions. Subject to the terms of this Agreement, the Trustee shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan and in this Agreement.

# ARTICLE VII

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1     <u>Parties Dealing with the Trustee</u>.   In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

7.2     <u>Limitation of Trustee's Liability</u>.   In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, and, to that end, the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns (collectively, the "<u>Trustee Parties</u>") shall incur any responsibility or liability, and no Holder of a Claim or Interest or any other party in interest shall have, or otherwise pursue, any claim or Cause of Action against the Trustee or the Trustee Parties, by reason of or relating to any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.

7.3    No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding Section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

7.4    No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

7.5    No Liability for Good Faith Error of Judgment.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order that the Trustee was grossly negligent in ascertaining the pertinent facts before exercising such judgment.

7.6    Reliance by Trustee on Documents and Advice of Counsel or Other Persons.  Except as otherwise provided herein, the Trustee may rely in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal counsel and other agents and advisors, and may rely upon the advice of such counsel, agents, or advisors for any action taken, omitted, or suffered by the Trustee.

7.7    No Liability for Acts Approved by Bankruptcy Court.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and Trust Claims required to be administered by the Trust.  The Trust and Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

29

7.8    No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9    Indemnification.  The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including reasonable counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the reasonable costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a Final Order (not subject to further appeal or review) to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

7.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Trust under this Section 7.9 shall be expenses of the Trust.  The

amounts necessary for such indemnification and reimbursement shall be paid by the Trust after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 7.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 7.9.

7.10    No Implied Obligations.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

7.11    Confirmation of Survival of Provisions.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

31

## ARTICLE VIII

## TAX MATTERS

8.1     <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtor, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed Trust Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their Pro Rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

8.2     <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

8.3     <u>Tax Treatment of Reserves for Disputed Trust Claims</u>.  The Trustee may timely elect to treat any Trust Assets allocable to Disputed Trust Claims as a "disputed ownership fund" ("<u>DOF</u>") governed by Treasury Regulation Section 1.468B-9.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

8.4     <u>Valuation of Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination and (b) establish

32

appropriate means to apprise the Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE IX

## SELECTION, REMOVAL, REPLACEMENT
## AND COMPENSATION OF TRUSTEE

9.1    <u>Initial Trustee</u>.  As of the Effective Date, the initial trustee shall be Paul R. Hage, as provided in the Plan and the Confirmation Order.

9.2    <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal. In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VII of this Agreement shall survive the resignation or removal of any Trustee.

9.3    <u>Removal of Trustee</u>.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section.

9.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the U.S. Trustee and the Bankruptcy Court.  The resignation shall be effective on the later of (i) the

33

date specified in the notice of resignation, and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee, Auxo (until it is paid in full on its Secured Claim), and the Post-Confirmation Committee unless otherwise provided by the Bankruptcy Court. In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

9.5    <u>Appointment of Successor Trustee</u>.  Upon the giving of notice of resignation, the Trustee shall file a motion with the Bankruptcy Court to approve the appointment of a successor Trustee.  Upon the death, incapacity, or removal of a Trustee, a party in interest shall file a motion with the Bankruptcy Court to seek the appointment of a successor Trustee.  Any successor Trustee so appointed (a) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s).

9.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7    <u>Trust Continuance</u>.  The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall be paid on an hourly basis based on his then current hourly rate.  The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan.

34

All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid or reserved for by the Trust from Trust Assets prior to any distribution to the Beneficiaries. A successor Trustee shall also be entitled to reasonable and fair compensation in connection with its services, which compensation may be different from the terms provided herein, plus the reimbursement of reasonable and documented out-of-pocket expenses.

9.9 <u>Appointment of Supplemental Trustee</u>. If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion. In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so. The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without

35

cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

<div align="center">

**ARTICLE X**

**DURATION OF TRUST**

</div>

10.1    <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

10.2    <u>Termination on Distribution of Trust Assets</u>.  Upon the distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate, and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3    <u>Termination after Five Years</u>.  If the Trust has not been previously terminated pursuant to Section 10.2 hereof, on the fifth (5th) anniversary of the Effective Date, unless the Trust term has been extended by the Bankruptcy Court, upon motion of the Trustee, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.5 of this Agreement.

10.4    <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated at any time by the Beneficiaries.

<div align="center">

36

</div>

10.5    Continuance of Trust for Winding Up; Discharge and Release of Trustee.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee, the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE XI

## MISCELLANEOUS

11.1    Cumulative Rights and Remedies.   The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2    Notices.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books and records kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> Jason W. Bank
> Kerr Russell and Weber, PLC
> 500 Woodward Avenue, Suite 2500
> Detroit, Michigan 48226-3427
> jbank@kerr-russell.com
> (313)  961-0200 (O) or (313) 484-3853 (D)

37

or to such other address as may from time to time be provided in written notice by the Trustee.

11.3    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to rules governing the conflict of laws.

11.4    Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5    Particular Words.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6    Execution.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

11.7    Amendment.  This Agreement may be amended by order of the Bankruptcy Court; provided, however, such amendment may not be inconsistent with the Plan or the Confirmation Order.

11.8    No Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9    No Relationship Created.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

11.10    Severability.   If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.11    Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.12    Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtor, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of

39

the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as July 2, 2024, the date of the entry of the Order.

**ARK LABORATORY, LLC**

By:_____

Name: James Grossi

Title:  Member

**THE SUCCESSOR  TRUSTEE**

By:_____

Name: Jason W. Bank, solely in his capacity as Successor Trustee

# EXHIBIT A TO EXHIBIT 1

# LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement" or "Trust Agreement"), dated as of November 2, 2023, is made by and between Ark Laboratory, LLC, d/b/a Helix Diagnostics (the "Debtor"), in the chapter 11 bankruptcy case (the "Chapter 11 Case"), pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") and Paul R. Hage (the "Trustee," and together with the Debtor, each, a "Party" and collectively, the "Parties").

## RECITALS

1.  On April 12, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. The Chapter 11 Case is being administered as *In re Ark Laboratory, LLC*. Case 23-43403-MLO.

2.  On May 1, 2023, the Office of the United States Trustee for the Eastern District of Michigan (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Case pursuant to 11 U.S.C. § 1103 [ECF No. 68], and thereafter, on May 2, 2023, filed an Amended Appointment of Unsecured Creditors Committee [ECF No 70]. The members of the Committee consisted of: (1) Matthew George of Gemini Labor Group, LLC; (2) Dorian Wright, CFO of The Sports Marketing Agency; and (3) Maribeth Thomas, Esq., counsel to Fisher Healthcare.

3.  On September 19, 2023, the Debtor filed its *Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [ECF No. 249] (as may be amended, supplemented or modified from time to time, the "Plan").[1]

---

[1]  All capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings set forth in the Plan.

4.     On November __, 2023, the Bankruptcy Court entered the Order Confirming the Debtor's Plan of Liquidation [ECF No. __] (the "<u>Confirmation Order</u>"). Pursuant to the Confirmation Order, the Plan became effective on November __, 2023 (the "<u>Effective Date</u>").

5.     The Plan provides for the establishment of the Creditor Trust (the "<u>Trust</u>") on the Effective Date.

6.     The Confirmation Order provides for the appointment of the Trustee as the Creditor Trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor Creditor Trustee of the Trust.

7.     The Trust is established for the benefit of Auxo Investment Partners, LLC, the secured creditor ("<u>Auxo</u>"), the unsecured creditors of the Debtor's estate, and the Retained Professionals approved by the Bankruptcy Court (each a "<u>Beneficiary</u>" and collectively, the "<u>Beneficiaries</u>").  For the avoidance of doubt, as of the Effective Date of the Plan and in accordance therewith, each Beneficiary is entitled to a distribution from the Trust, if applicable, as provided under the Plan confirmed by the Bankruptcy Court.

8.     The Trust is established for the purpose of liquidating the remaining assets of the Debtor which, pursuant to the Plan are hereby transferred to the Trust together with all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "<u>Trust Assets</u>"), maximizing recoveries for the benefit of the Beneficiaries, and making distributions in accordance with the Plan, Confirmation Order and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

9.     The Trust Assets consist primarily of (i) the cash in the Professional Fee Escrow Account for payment of the Retained Professionals on their Allowed Professional Compensation

approved by the Bankruptcy Court, (ii) Causes of Action, including the Avoidance Actions, and (iii) the Covid Testing Claims. The Trust Assets shall be distributed to the Beneficiaries as provided in Article III of this Agreement, in accordance with the Plan.

10. The Trust Assets specifically exclude any assets purchased by Auxo as provided under the Order: (I) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] entered September 28, 2023, as well as any assets arising or covered by that certain Management and Transition Services Agreement dated as of October 12, 2023 by and between MSU Health Care Lab, LLC and the Debtor (the "Transition Services Agreement"). Further, the Transition Services Agreement shall expressly survive confirmation of the Plan and remain in full force and effect for the duration of its term and the Liquidating Trustee shall not take any action inconsistent with the Transition Services Agreement or that would preclude the Debtor from being able to fulfill its obligations under the Transition Services Agreement.

11. Pursuant to the Plan, the Debtor, the Trustee, and the Beneficiaries are required to (a) treat the transfer of assets to the Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries, and (b) followed by a transfer by such Beneficiaries to the Trust, the Beneficiaries will be treated as the grantors and owners thereof.

12. Pursuant to the Plan, the Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the Trust.

13. Pursuant to section 1145 of the Bankruptcy Code, the Trust is intended to be exempt from the requirements of the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Parties enter into this Agreement to effectuate the creation of the Trust and the distribution of the Trust Assets to the Beneficiaries pursuant to, and to the extent set forth in, the Plan and the Confirmation Order, it being understood that the Trust Assets shall first be used to pay the Beneficiaries as provided in the Plan and Article III of this Agreement.

Pursuant to Article IV, Section 8(6) of the Plan and Section 2.3 of this Agreement, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Trust Assets shall vest in the Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan and the Confirmation Order.

The Trust Assets are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, for the benefit of the Beneficiaries and for no other party as provided in this Agreement and in accordance with the Plan.

4

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Definitions</u>.  For purposes of this Agreement, unless otherwise defined herein, the terms of this Agreement shall have the meanings set forth in the Plan.

    1.2.1     "<u>Trust Claim(s)</u>" shall mean a claim or interest that has been scheduled as not disputed, contingent or unliquidated, filed as a proof of claim or interest, or whose allowance has been granted by the Bankruptcy Court pursuant to a Final Order, without regard to whether such claim or interest was Disputed on the Effective Date, by a Beneficiary of this Agreement that is making a request for payment from the Trust Assets, to the extent that it remains unpaid.

    1.2.2     "<u>Trust Interest(s)</u>" shall mean each Beneficiary's interest in Creditor Trust Assets.

1.3     <u>Interpretation; Headings</u>.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     <u>Construction of Agreement</u>.  This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

5

1.5     Conflict Between Plan Documents.  In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust.  This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Ark Laboratory Trust."

2.2     Purpose of Trust.  The Parties, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of liquidating its assets, maximizing recoveries for the benefit of the Beneficiaries, and making distributions to the Beneficiaries in accordance with the Plan, Confirmation Order, and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

2.3     Transfer of Trust Assets.

2.3.1   Transfer of Trust Assets.  Pursuant to section 1141 of the Bankruptcy Code and the Plan, the Debtor and its Estate hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust, as of the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order.

2.3.2   Prior to the Effective Date and to the extent required following the Effective Date, the Debtor shall, as and when reasonably requested by the Trustee, execute and

6

deliver or cause to be executed and delivered all necessary documents (in recordable form where necessary or appropriate) and take or cause to be taken any action that Trustee may reasonably deem necessary or appropriate to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets with such fees, expenses and costs to be paid by the Trust. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

        2.3.3   <u>Title to Trust Assets</u>.  Pursuant to the Plan, all of the Debtor's and its Estate's right, title, and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, consistent with the provisions of the Plan and Confirmation Order.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor and its Estate to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan, and Confirmation Order.

<p style="text-align:center">7</p>

2.4 <u>Capacity of Trust</u>. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent or party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5 <u>Acceptance by Trustee</u>. The Trustee accepts its appointment as Creditor Trustee of the Trust.

## ARTICLE III

### PAYMENT OF ACCRUED PROFESSIONAL COMPENSATION CLAIMS OF RETAINED PROFESSIONALS, ALLOWED SECURED CLAIM OF AUXO, AND ALLOWED CLAIMS OF UNSECURED CREDITORS

3.1 <u>Administrative Expense Claims of Retained Professionals</u>.

3.1.1 On the Effective Date, cash in the Professional Fee Account shall be transferred to the Trustee for the benefit of the Retained Professionals. Upon the entry of a Final Order by the Bankruptcy Court approving the Accrued Professional Compensation Claims of the Retained Professionals, the Trustee shall pay each Retained Professional such pro rata amounts as authorized by the Bankruptcy Court and as provided in the Plan. If the amount in the Professional Fee Escrow Account is less than the Accrued Professional Compensation Claims of the Retained Professionals, prior to any distribution of the net proceeds of the Causes of Action to the Holders of Allowed Unsecured Claims, to the extent that a Retained Professional has not been paid in full on its Accrued Professional Compensation Claims approved by the Bankruptcy Court from the Professional Fee Escrow Account, the net proceeds of the Causes of Action shall first be used to pay the administrative expenses of the Trustee and his professionals to administer

8

the Trust, and then to the Retained Professionals for outstanding Accrued Professional Compensation Claims.

        3.1.2    Without limiting the foregoing, and notwithstanding anything to the contrary herein, the Trustee shall maintain a Professional Fee Escrow Account for the benefit of Retained Professionals (*i.e.*, in a separate bank account). On or before the Effective Date, the Debtor shall provide the Trustee with an open register of how much money is escrowed for each Retained Professional. The Professional Fee Escrow Account and amounts funded therein for a Retained Professional are and shall continue to be maintained in trust solely for each Retained Professional and as specifically allocated for each Retained Professional in the First Amended Cash Collateral Order [ECF No. 269] and the Order Approving Employment of Special Counsel [ECF No. 229]. Notwithstanding anything to the contrary in this Agreement, the funds in the Professional Fee Escrow Account shall not be considered property of the Debtor, its Estate, or the Trust; provided, however, the Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow Account after payment in full of all Accrued Professional Compensation Claims without any further notice, action or order of the Bankruptcy Court. Unless otherwise agreed to (1) by the Debtor and the Retained Professional prior to the Effective Date, or (2) by the Trustee and the Retained Professional after the Effective Date, the amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Trustee as soon as reasonably practicable after such Professional Fee Claims are Allowed by final order of the Bankruptcy Court, first from the Professional Fee Escrow Account and second, as provided in Section 3.1.1 of this Agreement. For the avoidance of doubt, the amount escrowed for each Retained Professional on the Effective Date is not a cap on such Retained Professional's Professional Fee Claim.

3.2    _Allowed Secured Claim of Auxo._   The net recoveries from the Covid Testing Claims, after payment of such amounts owed to Special Counsel, plus the actual and necessary fees of the Trustee in recovering or compromising such recoveries, shall be distributed by the Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo as a Beneficiary under the Trust, (b) the next $1.0 million to the Trustee for the pro rata payment of the Allowed Claims of the Unsecured Creditors, as Beneficiaries under the Trust, (c) then, once Auxo receives eighty percent (80%) of the amount owed on its Allowed Secured Claim, each dollar received thereafter by the Liquidating Trustee shall be split with fifteen percent (15%) of such recoveries for pro rata payment of the Allowed Claims of the Unsecured Creditors and eighty-five percent (85%) of such recoveries for payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim.   Thereafter, all such recoveries, net of fees and expenses of the Trust, shall be paid pro rata to the Allowed Unsecured Claims, in accordance with the Plan.

3.3    _Allowed Claims of Unsecured Creditors._   The Allowed Unsecured Claims shall be paid as provided in Section 3.2 of this Agreement.   Additionally, the Allowed Unsecured Claims shall receive, on a pro rata basis, the proceeds of the Causes of Action, including the Avoidance Actions, after payment in full of fees and expenses of the Liquidating Trustee and his professionals and all Accrued Professional Compensation Claims owed to the Retained Professionals to the extent of any deficiency owed to them beyond the Professional Fee Escrow.

## ARTICLE IV

## ADMINISTRATION OF TRUST

4.1    _Rights, Powers, and Privileges of Trustee Generally._   Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over

10

the Trust Assets, over the acquisition, management, settlement and disposition thereof, and over the management and conduct of the affairs of the Trust. In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

4.1.1 <u>Power to Contract</u>. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

4.1.2 <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

4.1.3 <u>Compromise and Settlement of the Covid Testing Claims</u>. Before the Trustee can compromise or settle the Covid Testing Claims for less than their face value, the Trustee shall consult with the Post-Confirmation Committee, Auxo and Special Counsel over the risks and benefits associated with settling the Covid Testing Claims. Until the Covid Testing Claims have resulted in a net recovery of $9.2 million, the Trustee shall take into special consideration Auxo's position and its Allowed Secured Claim in the Covid Testing Claims with

11

respect to any compromise or settlement of the Covid Testing Claims, after consultation with Auxo and the Post-Confirmation Committee. Once the Covid Testing Claims have resulted in a net recovery of at least $10.2 million, the Trustee shall give consideration to Auxo's position with respect to any compromise proposed by Special Counsel until Auxo has received eighty percent (80%) on account of its Allowed Secured Claim, but prior to that time, the Trustee shall exercise his business judgment in deciding whether to compromise the Covid Testing Claims. If a dispute arises as to whether the Covid Testing Claims should be compromised, the Trustee or Auxo may seek a ruling from the Bankruptcy Court.

4.2     <u>Powers of Trustee</u>.  Without limiting the generality of the above Section 4.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

4.2.1   To act on behalf of the Trust, including the right to effectuate all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtor, necessary or convenient to implement the provisions of the Plan and this Trust Agreement;

4.2.2   Except as provided in Section 4.1.3, with respect to any Trust Assets, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commenced or continued and take all actions that may be or could have been taken by any officer, director, or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholder;

12

4.2.3    To manage, monitor and enforce all of the Debtor's and the Estate's rights and interests under the Plan, the Confirmation Order, the Trust Agreement, any other agreements of the Debtor, and any other Orders of the Bankruptcy Court;

4.2.4    To authorize and make distribution to holders of Allowed Claims provided for or contemplated under the Plan or Trust Agreement, including, without limitation, Article 3 of the Trust Agreement;

4.2.5    Except to the extent set forth in the Plan, to object to any Trust Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Trust Claim regardless of whether such Claim was Disputed on the Effective Date, subject to the terms of Section 4.1.3 as relates to the Covid Testing Claims, it being understood that prior to an objection to a Trust Claim, the Trustee may act without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Trust Agreement;

4.2.6    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Trust and the Trustee and to pay the fees and charges incurred by the Trustee or the Trust's behalf on or after the Effective Date;

4.2.7    To (a) file, if necessary, any and all tax and information returns required with respect to the Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise, (b) make tax elections by and on behalf of the Trust, and (c) pay taxes, if any, payable by the Trust;

13

4.2.8    To take all other actions not inconsistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable with respect to administering the Plan;

4.2.9    To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order or the Trust Agreement;

4.2.10    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Trust Assets in the reasonable business judgment of the Trustee;

4.2.11    Except as otherwise set forth herein, to prosecute and/or settle any Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and pursue to settlement or judgment such Causes of Action, including the right to issue subpoenas or to file motions for examinations under Fed.R.Bankr.P. 2004;

4.2.12    To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable, and to exercise any and all rights held by the holder of such insurance policies;

4.2.13    To collect and liquidate and/or distribute all Trust Assets pursuant to the Plan, the Confirmation Order, and the Trust Agreement;

4.2.14    To calculate and make all distributions on behalf of the Trust to holders of Allowed Claims provided for in, or contemplated by, the Plan and this Agreement, including,

14

without limitation, all Accrued Professional Compensation Claim, Allowed Secured Claims, and Allowed Unsecured Claims;

4.2.15   To establish, adjust and maintain any reserves for Disputed Trust Claims administered by the Trust;

4.2.16   To hold legal title to any and all of the Trust Assets;

4.2.17   If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with Section 9.9 of this Agreement;

4.2.18   To retain any and all insurance policies of the Debtor providing coverage with respect to Causes of Action and exercise any and all rights held by the holder of such insurance policies;

4.2.19   In reliance upon the Debtor's Schedules and the Claims Register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with Section 4.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Case to the extent of any Trust Claim is reflected thereon;

4.2.20   Exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, the Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.  Solely with respect to any Trust Asset, the Trustee shall stand in the same position as the Debtor with respect to any claim the Debtor may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Trustee shall have the ability to raise  all of the Debtor's rights to

15

preserve, or assert any such privilege; and succeed to all of the Debtor's rights to preserve or assert any such privilege; and

      4.2.21 To file an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case.

4.3    <u>Authority</u>.  No Person dealing with the Trust shall be obligated to inquire into the Trustee's authority in connection with the receipt, preservation, management, or disposition of Trust Assets.

4.4    <u>Abandonment</u>.  If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner (if applicable) or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, without further authority or approval of the Bankruptcy Court, including by donation of such property to a charitable organization.

4.5    <u>Responsibility for Administration of Trust Claims</u>.  From and after the Effective Date, the Trust shall be responsible for, among other things, administering and paying distributions provided for under the Plan to Trust Beneficiaries.  Except as expressly provided otherwise in the Plan, and except to the extent the applicable Trust Claims have been previously Allowed prior to the Effective Date, the Trust shall control and effectuate the Trust Claims reconciliation process, including to compromise or settle any Trust Claim without any further notice to or action, order or approval by the Bankruptcy Court, or to object to or seek to subordinate any Trust Claim, except as otherwise provided in this Agreement.  The Trust shall be entitled to assert all of the Debtor's and the Estate's rights, without limitation, under section 558 of the Bankruptcy Code.  The Trust

16

may also seek estimation of any Trust Claims under and subject to section 502(c) of the Bankruptcy Code.

4.6     Post-Confirmation Committee.  In accordance with the Plan, on the Effective Date, a Post-Confirmation Committee, consisting of those members of the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case [ECF Nos. 68 and 70] that are willing to serve shall be appointed to the Post-Confirmation Committee.  The Trustee shall consult with the Post-Confirmation Committee as relates to any material action to be taken under the Trust and, as he may deem further necessary or appropriate, before taking action under this Agreement in accordance with the Plan.

4.7     Agents and Professionals.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Committee or by the Debtor.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such Persons in the ordinary course of business.

4.8     Safekeeping and Investment of Trust Assets.  All Trust Assets received by the Trustee shall, until liquidated, if necessary, and distributed or paid over time as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets (except for the Professional Fee Escrow Account and the account for the Covid Testing Claims, as provided in Article III of this Agreement), unless and to the extent required by law or the Plan.  The Trustee shall not be under any obligation to invest

17

Trust Assets. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any Cash received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed consistent with the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any Cash held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's Creditor purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills and short-term money market funds; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

4.9    Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The Trust may, but has no obligation to, engage a claims agent to continue to maintain and update the Claims Register maintained in the Chapter 11 Case throughout the administration of the Trust. In any case, to the extent of any Trust Claims reflected thereon, the Claims Register may serve as the Trustee's register of beneficial interests held by Beneficiaries. Except as provided in the Order: (I) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens,

18

Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] and the Confirmation Order, the books and records maintained by the Trustee and any records of the Debtor transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust. For the avoidance of doubt, nothing herein creates an independent right for Beneficiaries to obtain such books and records.

      4.10    <u>Reporting Requirements and Payment of Statutory Fees</u>.

      4.10.1 The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

      4.10.2 The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee regular post-confirmation quarterly disbursement reports, on or before the twenty-first (21st) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

      4.10.3 The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee the final reports for the Debtor.

      4.10.4 The Trustee shall pay all statutory fees from the Trust Assets as such fees become due and payable.

4.11     No Bond Required; Procurement of Insurance.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

## ARTICLE V

## DISTRIBUTIONS

5.1     Distribution and Reserve of Trust Assets.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets to Beneficiaries (subject to any reserves administered by the Trust) as well as to holders of Accrued Professional Compensation Claims, Secured Claims, and Unsecured Claims in accordance with the Plan.

5.1.1  Distributions to Beneficiaries.  In accordance with the Plan and Article III of this Agreement, the Trustee shall cause the Trust to distribute, when practicable, the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee; provided that the Trustee shall have no obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the

20

holder of such Claim is less than $50.00, which shall be treated as a De Minimis Distribution under Article VI, Section B(3)(c) of the Plan.

5.1.2 <u>Reserves; Pooling of Reserved Funds</u>. Before any distribution can be made, the Trustee may, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all reasonable expenses and liabilities of the Trust, including, but not limited to, reasonable attorneys' fees and expenses and the fees and expenses of other professionals. In accordance with Section 4.2.15 of this Agreement, the Trust may also maintain, as necessary, a reserve for Disputed Trust Claims. For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to a Trust Claim. Except as otherwise provided in this Agreement, the Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

5.1.3 <u>Distributions Net of Reserves and Costs</u>. Distributions to Beneficiaries shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable out-of-pocket costs of making the distributions to Beneficiaries.

5.1.4 <u>Right to Rely on Professionals</u>. Without limitation of the generality of Section 7.6 of this Agreement, in determining the amount of any distribution or reserves, the Trustee may rely on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

5.2 <u>Method and Timing of Distributions</u>. Distributions to Beneficiaries shall be made from the Trust in accordance with the terms of the Plan (in particular, Articles III and V) and this Agreement. The Trust may engage a Disbursing Agent or other Person to help make distributions.

21

For the avoidance of doubt, Beneficiaries will only be entitled to a distribution from the Trust as provided in Article III and in accordance with the Plan.

5.3     <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary, any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

5.4     <u>Tax Identification Numbers</u>.  The Trustee may require any Beneficiary to furnish an executed IRS Form and may condition any distribution upon receipt of such executed IRS Form.  If a Beneficiary does not timely provide the Trustee with an executed IRS Form, then their Allowed Claim shall be deemed disallowed and expunged, and any Claim in respect thereof shall be discharged and barred from assertion against the Trustee, the Trust or the Trust Assets.

5.5     <u>Unclaimed and Undeliverable Distributions</u>.  If any distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further distribution(s) to such Beneficiary shall be made unless and until Beneficiary claims the distribution(s) by timely notifying the Trustee in writing of any information necessary, including such Beneficiary's then-current address, to make the distribution in accordance with the Plan.  If a Beneficiary timely provides the Trustee the necessary information under Article VII Section 7.4 of the Plan, all missed distributions shall be made as soon as is practicable, without interest.  Undeliverable or unclaimed distributions shall be administered in accordance with Article VI, Section B(3)(a) of the Plan.

22

5.5.1  <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

5.5.2  <u>Inapplicability of Unclaimed Property or Escheat Laws</u>.  Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of any state.

5.6  <u>Voided Checks; Request for Reissuance</u>.  Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 6 months after the date of issuance thereof.  Distributions in respect of voided checks shall be treated as unclaimed distributions and administered under Article VI, Section B(3)(a) and Section 5.5 of this Agreement.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets, provided that such timing can be satisfied by the Trustee using commercially reasonable efforts.

5.7  <u>Conflicting Claims</u>.  If any conflicting claims or demands are made or asserted with respect to an Allowed Trust Claim under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an Allowed Trust Claim resulting in adverse claims or demands being made in connection with such Allowed Trust Claim, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

5.7.1  The Trustee may elect to cause the Trust to make no payment or distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall

23

have continuing jurisdiction over resolution of such conflicting claims or demands as provided for in Article X, Section 1 of the Plan.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

5.7.2   The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat Beneficiaries identified as the owner of that interest in the books and records maintained by the Trustee, as the absolute owner under this Agreement, of an Allowed Trust Claim.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

5.7.3   In acting or refraining from acting under and in accordance with this Section 5.7 of the Agreement, the Trust and Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

## ARTICLE VI
## BENEFICIARIES

6.1   <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

6.2     <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to Section 5.1 of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and this Agreement.

6.3     <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

6.4     <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

6.5     <u>No Standing</u>.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

6.6     <u>Requirement of Undertaking</u>.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, the provisions of this Section 6.6 shall not apply to any suit by the Trustee.

<div align="center">25</div>

6.7    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law, <u>provided</u>, <u>however</u>, each Beneficiary shall have the right to transfer some or all of its Trust Interests one (1) time each calendar year and shall give the Trustee prompt written notice thereof (each, a "<u>Permitted Transfer</u>").  The Trustee shall not have any obligation to recognize any transfer of a Trust Interest occurring after the Effective Date other than a Permitted Transfer, and only holders of Trust Interests of record as of the Effective Date, and transferees of a Permitted Transfer, shall be entitled to be recognized for all purposes hereunder.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee along with the identity and address of the proper Person to succeed the Beneficiary's interest, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may fully rely upon any such proof and shall have no duty to investigate.

6.8    <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

6.9     <u>Delivery of Distributions</u>.  Subject to the terms of this Agreement, the Trustee shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan and in this Agreement.

<div align="center">

**ARTICLE VII**

**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

</div>

7.1     <u>Parties Dealing with the Trustee</u>.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

7.2     <u>Limitation of Trustee's Liability</u>.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, and, to that end, the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns (collectively, the "<u>Trustee Parties</u>") shall incur any responsibility or liability, and no Holder of a Claim or Interest or any other party in interest shall have, or otherwise pursue, any claim or Cause of Action against the Trustee or the Trustee Parties, by reason of or relating to any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order (not subject

<div align="center">27</div>

to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.

7.3     No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding Section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

7.4     No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

7.5     No Liability for Good Faith Error of Judgment.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order that the Trustee was grossly negligent in ascertaining the pertinent facts before exercising such judgment.

7.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may rely in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal counsel and other agents and advisors, and may rely upon the advice of such counsel, agents, or advisors for any action taken, omitted, or suffered by the Trustee.

7.7     No Liability for Acts Approved by Bankruptcy Court.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and Trust Claims required to be administered by the Trust.  The

Trust and Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

7.8    No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9    Indemnification.  The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including reasonable counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the reasonable costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a Final Order (not subject to further appeal or review) to result directly and

primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

7.9.1 <u>Expense of Trust; Limitation on Source of Payment of Indemnification</u>. All indemnification liabilities of the Trust under this Section 7.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2 <u>Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay</u>. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 7.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 7.9.

7.10 <u>No Implied Obligations</u>. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

7.11 <u>Confirmation of Survival of Provisions</u>. Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution,

30

liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VIII

## TAX MATTERS

8.1     <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtor, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed Trust Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their Pro Rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

8.2     <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

8.3     <u>Tax Treatment of Reserves for Disputed Trust Claims</u>.  The Trustee may timely elect to treat any Trust Assets allocable to Disputed Trust Claims as a "disputed ownership fund" ("<u>DOF</u>") governed by Treasury Regulation Section 1.468B-9.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

31

8.4     Valuation of Trust Assets.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE IX

## SELECTION, REMOVAL, REPLACEMENT
## AND COMPENSATION OF TRUSTEE

9.1     Initial Trustee.  As of the Effective Date, the initial trustee shall be Paul R. Hage, as provided in the Plan and the Confirmation Order.

9.2     Term of Service.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal. In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VII of this Agreement shall survive the resignation or removal of any Trustee.

9.3     Removal of Trustee.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek

removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section.

9.4 <u>Resignation of Trustee</u>. The Trustee may resign at any time on written notice to the U.S. Trustee and the Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee, Auxo (until it is paid in full on its Secured Claim), and the Post-Confirmation Committee. In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

9.5 <u>Appointment of Successor Trustee</u>. Upon the resignation, death, incapacity, or removal of a Trustee, the Bankruptcy Court shall appoint a successor Trustee on its own motion. Any successor Trustee so appointed (a) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s). Any successor Trustee may be appointed to serve only on an interim basis.

9.6 <u>Powers and Duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7 <u>Trust Continuance</u>. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

33

9.8 <u>Compensation of Trustee and Costs of Administration</u>. The Trustee shall be paid on an hourly basis based on his then current hourly rate. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid or reserved for by the Trust from Trust Assets prior to any distribution to the Beneficiaries. A successor Trustee shall also be entitled to reasonable and fair compensation in connection with its services, which compensation may be different from the terms provided herein, plus the reimbursement of reasonable and documented out-of-pocket expenses.

9.9 <u>Appointment of Supplemental Trustee</u>. If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion. In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so. The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall

34

require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE X

## DURATION OF TRUST

10.1     Duration.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

10.2     Termination on Distribution of Trust Assets.  Upon the distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate, and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3     Termination after Five Years.  If the Trust has not been previously terminated pursuant to Section 10.2 hereof, on the fifth (5th) anniversary of the Effective Date, unless the Trust term has been extended by the Bankruptcy Court, upon motion of the Trustee, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.5 of this Agreement.

10.4     No Termination by Beneficiaries.  The Trust may not be terminated at any time by the Beneficiaries.

10.5     Continuance of Trust for Winding Up; Discharge and Release of Trustee.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee, the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE XI

## MISCELLANEOUS

11.1     Cumulative Rights and Remedies.  The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2     Notices.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books and records kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

Paul R. Hage
Taft Stettinius & Hollister, LLP
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
phage@taftlaw.com
(248) 351-3000 (M) or (248) 727-1543 (D)

or to such other address as may from time to time be provided in written notice by the Trustee.

11.3     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to rules governing the conflict of laws.

11.4     Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5     Particular Words.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6     Execution.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

11.7     Amendment.  This Agreement may be amended by order of the Bankruptcy Court; provided, however, such amendment may not be inconsistent with the Plan or the Confirmation Order.

37

11.8    No Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9    No Relationship Created.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

11.10   Severability.   If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.11   Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.12   Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtor, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control,

38

limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**ARK LABORATORY, LLC**

By:_____

Name: James Grossi

Title:  Member

**THE LIQUIDATING TRUSTEE**

By:_____

Name: Paul R. Hage

Title: Trustee

39

# EXHIBIT B TO EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

ARK LABORATORY, LLC,

Case No. 23-43403-MLO
Chapter 11

    Debtor.

Hon. Maria L. Oxholm

_____/

## ORDER (I) APPROVING THE APPOINTMENT OF
## JASON W. BANK AS THE SUCCESSOR TRUSTEE OF
## THE ARK LABORATORY TRUST AND (II) GRANTING OTHER RELIEF

Upon the Motion (the "Motion")[1] filed by the Liquidating Trustee seeking approval of the appointment of Jason W. Bank as the Successor Trustee of the Ark Laboratory Trust and granting other relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Liquidating Trustee provided adequate and appropriate notice of the Motion under the circumstances; and no objections having filed to the Motion or all such objections having been resolved, withdrawn or denied; and the Court having determined that the legal and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Jason W. Bank is appointed as the Successor Trustee of the Ark Laboratory Trust as of the date of this Order with all of the rights, privileges, powers and duties under the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

3. Article X, Section 9.5 of the Liquidating Trust Agreement shall be amended as follows:

(a) The first sentence of Section 9.5, to wit: "Upon the resignation … of a Trustee, the Bankruptcy Court shall appoint a successor Trustee on its own motion" shall be amended to provide that  "Upon the giving of notice of resignation, the Trustee shall file a motion with the Court to approve the appointment of a successor Trustee."

(b) The last sentence of Section 9.5, to wit: "Any successor Trustee may be appointed to serve only on an interim basis" shall be eliminated and stricken.

4. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

5.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed on July 2, 2024**



/s/ **Maria L. Oxholm**

**Maria L. Oxholm**
**United States Bankruptcy Judge**

# EXHIBIT C TO EXHIBIT 1

**FIRST AMENDED AND RESTATED**
**LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST**

~~This~~The Liquidating Trust Agreement and Declaration of Trust ~~(the "Agreement" or "Trust Agreement")~~, dated as of November 2, 2023, ~~is~~was made by and between Ark Laboratory, LLC, d/b/a Helix Diagnostics (the "Debtor"), in the chapter 11 bankruptcy case (the "Chapter 11 Case"), pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") and Paul R. Hage (the "~~Trustee," and~~ Liquidating Trustee"), a copy of which is attached as **Exhibit A**. The Liquidating Trustee tendered his notice of intent to resign on May 29, 2024 and, as a result thereof, after the filing of a motion with the Bankruptcy Court, Jason W. Bank was appointed as the successor trustee (the "Successor Trustee") on July 2, 2024 pursuant to order of the Bankruptcy Court, a copy of which is attached as **Exhibit B** (the "Order") [ECF No. 644] and is now serving as the Trustee,[1] (together with the Debtor, each, a "Party" and collectively, the "Parties"). The Liquidating Trust Agreement and Declaration of Trust has been amended pursuant to the Order and this First Amended and Restated Liquidating Trust Agreement and Declaration of Trust (together with the Liquidating Trust Agreement and the Declaration of Trust, the "Agreement" or the "Trust Agreement"). A red-lined version reflecting the changes made to the Trust Agreement is attached as **Exhibit C**.[2]

---

[1] Effective upon execution of the First Amended and Restated Liquidating Trust Agreement and Declaration of Trust, all references to the "Trustee" shall reference Jason W. Bank, solely in his capacity as Successor Trustee.

[2] In addition to the changes approved by the Bankruptcy Court in the Order, additional nonmaterial changes were made, as reflected in the red-lined version of the Trust Agreement attached as **Exhibit C**. In an abundance of caution, the Trustee will seek approval of these changes to the Trust Agreement from the Bankruptcy Court. If approved, the order approving the Trust Agreement, as amended and restated (the "Second Order"), the Second Order [ECF No. 649] is attached as **Exhibit D** to this Trust Agreement.

1.      On April 12, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  The Chapter 11 Case is being administered as *In re Ark Laboratory, LLC*. Case 23-43403-MLO.

2.      On May 1, 2023, the Office of the United States Trustee for the Eastern District of Michigan (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Case pursuant to 11 U.S.C. § 1103 [ECF No. 68], and thereafter, on May 2, 2023, filed an Amended Appointment of Unsecured Creditors Committee [ECF No 70].  The members of the Committee consisted of: (1) Matthew George of Gemini Labor Group, LLC; (2) Dorian Wright, CFO of The Sports Marketing Agency; and (3) Maribeth Thomas, Esq., counsel to Fisher Healthcare.

3.      On September 19, 2023, the Debtor filed its *Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [ECF No. 249] (as may be amended, supplemented or modified from time to time, the "Plan").[1][3]

4.      On November —30, 2023, the Bankruptcy Court entered the ~~Order Confirming~~Findings of Fact, Conclusions of Law and Order (I) Granting Final Approval of the Debtor's Disclosure Statement and Plan Supplement, and (II) Confirming Debtor's Second Amended Plan of Liquidation [ECF No. —392] (the "Confirmation Order"). Pursuant to the Confirmation Order, the Plan became effective on ~~November~~ —December 14,, 2023 (the "Effective Date").

---

[1][3]  All capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings set forth in the Plan.

2

5.    The Plan provides for the establishment of the Creditor Trust (the "Trust") on the Effective Date.

6.    The Confirmation Order provides for the appointment of the Trustee as the ~~Creditor~~Liquidating Trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor ~~Creditor~~Liquidating Trustee of the Trust.

7.    The Trust is established for the benefit of Auxo Investment Partners, LLC, the secured creditor ("Auxo"), the unsecured creditors of the Debtor's estate, and the Retained Professionals approved by the Bankruptcy Court (each a "Beneficiary" and collectively, the "Beneficiaries").  For the avoidance of doubt, as of the Effective Date of the Plan and in accordance therewith, each Beneficiary is entitled to a distribution from the Trust, if applicable, as provided under the Plan confirmed by the Bankruptcy Court.[4]

8.    The Trust is established for the purpose of liquidating the remaining assets of the Debtor which, pursuant to the Plan are hereby transferred to the Trust together with all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets"), maximizing recoveries for the benefit of the Beneficiaries, and making distributions in accordance with the Plan, Confirmation Order and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

9.    The Trust Assets consist primarily of (i) the cash in the Professional Fee Escrow Account for payment of the Retained Professionals on their Allowed Professional Compensation approved by the Bankruptcy Court, (ii) Causes of Action, including the

---

[4] The Plan became "effective" on December 14, 2023, as reflected in the Notice of Occurrence of the Effective Date of Second Amended Plan of Liquidation filed with the Bankruptcy Court. On December 15, 2023 [ECF No. 413].

3

Avoidance Actions, and (iii) the Covid Testing Claims. The Trust Assets shall be distributed to the Beneficiaries as provided in Article III of this Agreement, in accordance with the Plan.

10.     The Trust Assets specifically exclude any assets purchased by Auxo as provided under the Order: (I) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] entered September 28, 2023, as well as any assets arising or covered by that certain Management and Transition Services Agreement dated as of October 12, 2023 by and between MSU Health Care Lab, LLC and the Debtor (the "Transition Services Agreement"). Further, the Transition Services Agreement shall expressly survive confirmation of the Plan and remain in full force and effect for the duration of its term and the Liquidating Trustee shall not take any action inconsistent with the Transition Services Agreement or that would preclude the Debtor from being able to fulfill its obligations under the Transition Services Agreement.

11.     Pursuant to the Plan, the Debtor, the Trustee, and the Beneficiaries are required to (a) treat the transfer of assets to the Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries, and (b) followed by a transfer by such Beneficiaries to the Trust, the Beneficiaries will be treated as the grantors and owners thereof.

12.     Pursuant to the Plan, the Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the Trust.

4

13.     Pursuant to section 1145 of the Bankruptcy Code, the Trust is intended to be exempt from the requirements of the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Parties enter into this Agreement to effectuate the creation of the Trust and the distribution of the Trust Assets to the Beneficiaries pursuant to, and to the extent set forth in, the Plan and the Confirmation Order, it being understood that the Trust Assets shall first be used to pay the Beneficiaries as provided in the Plan and Article III of this Agreement.

Pursuant to Article IV, Section 8(6) of the Plan and Section 2.3 of this Agreement, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Trust Assets shall vest in the Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan and the Confirmation Order.

The Trust Assets are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, for the benefit of the Beneficiaries and for no other party as provided in this Agreement and in accordance with the Plan.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Definitions</u>.  For purposes of this Agreement, unless otherwise defined herein, the terms of this Agreement shall have the meanings set forth in the Plan.

1.2.1 "<u>Trust Claim(s)</u>" shall mean a claim or interest that has been scheduled as not disputed, contingent or unliquidated, filed as a proof of claim or interest, or whose allowance has been granted by the Bankruptcy Court pursuant to a Final Order, without regard to whether such claim or interest was Disputed on the Effective Date, by a Beneficiary of this Agreement that is making a request for payment from the Trust Assets, to the extent that it remains unpaid.

1.2.2     "<u>Trust Interest(s)</u>" shall mean each Beneficiary's interest in ~~Creditor~~ Trust Assets.

1.3     <u>Interpretation; Headings</u>.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     <u>Construction of Agreement</u>.  This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

6

1.5     Conflict Between Plan Documents.  In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

# ARTICLE I

## ESTABLISHMENT OF TRUST

1.1     Effectiveness of Agreement; Name of Trust.  This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Ark Laboratory Trust."

1.2     Purpose of Trust.  The Parties, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of liquidating its assets, maximizing recoveries for the benefit of the Beneficiaries, and making distributions to the Beneficiaries in accordance with the Plan, Confirmation Order, and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

1.3     Transfer of Trust Assets.

1.3.1     Transfer of Trust Assets.  Pursuant to section 1141 of the Bankruptcy Code and the Plan, the Debtor and its Estate hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust, as of the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order.

7

129690190v1

1.3.2    Prior to the Effective Date and to the extent required following the Effective Date, the Debtor shall, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all necessary documents (in recordable form where necessary or appropriate) and take or cause to be taken any action that Trustee may reasonably deem necessary or appropriate to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets with such fees, expenses and costs to be paid by the Trust. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

1.3.3    <u>Title to Trust Assets</u>.  Pursuant to the Plan, all of the Debtor's and its Estate's right, title, and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, consistent with the provisions of the Plan and Confirmation Order.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor and its Estate to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By

8

129690190v1

executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan, and Confirmation Order.

1.4     Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent or party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

1.5     Acceptance by Trustee.     The Trustee accepts its appointment as ~~Creditor~~Liquidating Trustee of the Trust.

## ARTICLE II

**PAYMENT OF ACCRUED PROFESSIONAL COMPENSATION CLAIMS OF RETAINED PROFESSIONALS, ALLOWED SECURED CLAIM OF AUXO, AND ALLOWED CLAIMS OF UNSECURED CREDITORS**

2.1     Administrative Expense Claims of Retained Professionals.

2.1.1 On the Effective Date, cash in the Professional Fee Account shall be transferred to the Trustee for the benefit of the Retained Professionals.  Upon the entry of a Final Order by the Bankruptcy Court approving the Accrued Professional Compensation Claims of the Retained Professionals, the Trustee shall pay each Retained Professional such pro rata amounts as authorized by the Bankruptcy Court and as provided in the Plan.  If the amount in the Professional Fee Escrow Account is less than the Accrued Professional Compensation Claims of the Retained Professionals, prior to any distribution of the net proceeds of the Causes

9

of Action to the Holders of Allowed Unsecured Claims, to the extent that a Retained Professional has not been paid in full on its Accrued Professional Compensation Claims approved by the Bankruptcy Court from the Professional Fee Escrow Account, the net proceeds of the Causes of Action shall first be used to pay the administrative expenses of the Trustee and his professionals to administer the Trust, and then to the Retained Professionals for outstanding Accrued Professional Compensation Claims.

2.1.2 Without limiting the foregoing, and notwithstanding anything to the contrary herein, the Trustee shall maintain a Professional Fee Escrow Account for the benefit of Retained Professionals (*i.e.*, in a separate bank account). On or before the Effective Date, the Debtor shall provide the Trustee with an open register of how much money is escrowed for each Retained Professional. The Professional Fee Escrow Account and amounts funded therein for a Retained Professional are and shall continue to be maintained in trust solely for each Retained Professional and as specifically allocated for each Retained Professional in the First Amended Cash Collateral Order [ECF No. 269] and the Order Approving Employment of Special Counsel [ECF No. 229]. Notwithstanding anything to the contrary in this Agreement, the funds in the Professional Fee Escrow Account shall not be considered property of the Debtor, its Estate, or the Trust; provided, however, the Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow Account after payment in full of all Accrued Professional Compensation Claims without any further notice, action or order of the Bankruptcy Court. Unless otherwise agreed to (1) by the Debtor and the Retained Professional prior to the Effective Date, or (2) by the Trustee and the Retained Professional after the Effective Date, the amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Trustee as soon as reasonably practicable after such Professional Fee Claims are Allowed by final

order of the Bankruptcy Court, first from the Professional Fee Escrow Account and second, as provided in Section 3.1.1 of this Agreement. For the avoidance of doubt, the amount escrowed for each Retained Professional on the Effective Date is not a cap on such Retained Professional's Professional Fee Claim.

3.2 Allowed Secured Claim of Auxo. The net recoveries from the Covid Testing Claims, after payment of such amounts owed to Special Counsel, plus the actual and necessary fees of the Trustee in recovering or compromising such recoveries, shall be distributed by the Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo as a Beneficiary under the Trust, (b) the next $1.0 million to the Trustee for the pro rata payment of the Allowed Claims of the Unsecured Creditors, as Beneficiaries under the Trust, (c) then, once Auxo receives eighty percent (80%) of the amount owed on its Allowed Secured Claim, each dollar received thereafter by the Liquidating Trustee shall be split with fifteen percent (15%) of such recoveries for pro rata payment of the Allowed Claims of the Unsecured Creditors and eighty-five percent (85%) of such recoveries for

11

129690190v1

payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim. Thereafter, all such recoveries, net of fees and expenses of the Trust, shall be paid pro rata to the Allowed Unsecured Claims, in accordance with the Plan.

3.3 <u>Allowed Claims of Unsecured Creditors</u>. The Allowed Unsecured Claims shall be paid as provided in Section 3.2 of this Agreement. Additionally, the Allowed Unsecured Claims shall receive, on a pro rata basis, the proceeds of the Causes of Action, including the Avoidance Actions, after payment in full of fees and expenses of the Liquidating Trustee and his professionals and all Accrued Professional Compensation Claims owed to the Retained Professionals to the extent of any deficiency owed to them beyond the Professional Fee Escrow.

<div align="center">

**ARTICLE IV**

**ADMINISTRATION OF TRUST**

</div>

4.1 <u>Rights, Powers, and Privileges of Trustee Generally</u>. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management, settlement and disposition thereof,

<div align="center">

12

</div>

and over the management and conduct of the affairs of the Trust. In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

4.1.1   <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

4.1.2   <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>.  Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

4.1.3   <u>Compromise and Settlement of the Covid Testing Claims</u>.  Before the Trustee can compromise or settle the Covid Testing Claims for less than their face value, the Trustee shall consult with the Post-Confirmation Committee, Auxo and Special Counsel over

129696019601

the risks and benefits associated with settling the Covid Testing Claims. Until the Covid Testing Claims have resulted in a net recovery of $9.2 million, the Trustee shall take into special consideration Auxo's position and its Allowed Secured Claim in the Covid Testing Claims with respect to any compromise or settlement of the Covid Testing Claims, after consultation with Auxo and the Post-Confirmation Committee. Once the Covid Testing Claims have resulted in a net recovery of at least $10.2 million, the Trustee shall give consideration to Auxo's position with respect to any compromise proposed by Special Counsel until Auxo has received eighty percent (80%) on account of its Allowed Secured Claim, but prior to that time, the Trustee shall exercise his business judgment in deciding whether to compromise the Covid Testing Claims. If a dispute arises as to whether the Covid Testing Claims should be compromised, the Trustee or Auxo may seek a ruling from the Bankruptcy Court.

4.2 <u>Powers of Trustee</u>. Without limiting the generality of the above Section 4.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

4.2.1 To act on behalf of the Trust, including the right to effectuate all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtor, necessary or convenient to implement the provisions of the Plan and this Trust Agreement;

4.2.2 Except as provided in Section 4.1.3, with respect to any Trust Assets, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commenced or continued and take all actions that may be or could have

14

12969619601

been taken by any officer, director, or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholder;

4.2.3    To manage, monitor and enforce all of the Debtor's and the Estate's rights and interests under the Plan, the Confirmation Order, the Trust Agreement, any other agreements of the Debtor, and any other Orders of the Bankruptcy Court;

4.2.4    To authorize and make distribution to holders of Allowed Claims provided for or contemplated under the Plan or Trust Agreement, including, without limitation, Article 3 of the Trust Agreement;

4.2.5    Except to the extent set forth in the Plan, to object to any Trust Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Trust Claim regardless of whether such Claim was Disputed on the Effective Date, subject to the terms of Section 4.1.3 as relates to the Covid Testing Claims, it being understood that prior to an objection to a Trust Claim, the Trustee may act without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Trust Agreement;

4.2.6    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Trust and the Trustee and to pay the fees and charges incurred by the Trustee or the Trust's behalf on or after the Effective Date;

4.2.7    To (a) file, if necessary, any and all tax and information returns required with respect to the Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise,

15

12969619601v1

(b) make tax elections by and on behalf of the Trust, and (c) pay taxes, if any, payable by the Trust;

4.2.8    To take all other actions not inconsistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable with respect to administering the Plan;

4.2.9    To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order or the Trust Agreement;

4.2.10    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Trust Assets in the reasonable business judgment of the Trustee;

4.2.11    Except as otherwise set forth herein, to prosecute and/or settle any Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and pursue to settlement or judgment such Causes of Action, including the right to issue subpoenas or to file motions for examinations under Fed.R.Bankr.P. 2004;

4.2.12    To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable, and to exercise any and all rights held by the holder of such insurance policies;

4.2.13    To collect and liquidate and/or distribute all Trust Assets pursuant to the Plan, the Confirmation Order, and the Trust Agreement;

16

4.2.14    To calculate and make all distributions on behalf of the Trust to holders of Allowed Claims provided for in, or contemplated by, the Plan and this Agreement, including, without limitation, all Accrued Professional Compensation Claim, Allowed Secured Claims, and Allowed Unsecured Claims;

4.2.15    To establish, adjust and maintain any reserves for Disputed Trust Claims administered by the Trust;

4.2.16    To hold legal title to any and all of the Trust Assets;

4.2.17    If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with Section 9.9 of this Agreement;

4.2.18    To retain any and all insurance policies of the Debtor providing coverage with respect to Causes of Action and exercise any and all rights held by the holder of such insurance policies;

4.2.19    In reliance upon the Debtor's Schedules and the Claims Register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with Section 4.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Case to the extent of any Trust Claim is reflected thereon;

4.2.20    Exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, the Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

17

Solely with respect to any Trust Asset, the Trustee shall stand in the same position as the Debtor with respect to any claim the Debtor may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Trustee shall have the ability to raise all of the Debtor's rights to preserve, or assert any such privilege; and succeed to all of the Debtor's rights to preserve or assert any such privilege; and

4.2.21 To file an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case.

4.3 <u>Authority</u>. No Person dealing with the Trust shall be obligated to inquire into the Trustee's authority in connection with the receipt, preservation, management, or disposition of Trust Assets.

4.4 <u>Abandonment</u>. If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner (if applicable) or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, without further authority or approval of the Bankruptcy

18

Court, including by donation of such property to a charitable organization.

4.5 <u>Responsibility for Administration of Trust Claims</u>.  From and after the Effective Date, the Trust shall be responsible for, among other things, administering and paying distributions provided for under the Plan to Trust Beneficiaries.  Except as expressly provided otherwise in the Plan, and except to the extent the applicable Trust Claims have been previously Allowed prior to the Effective Date, the Trust shall control and effectuate the Trust Claims reconciliation process, including to compromise or settle any Trust Claim without any further notice to or action, order or approval by the Bankruptcy Court, or to object to or seek to subordinate any Trust Claim, except as otherwise provided in this Agreement.  The Trust shall be entitled to assert all of the Debtor's and the Estate's rights, without limitation, under section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Trust Claims

19

12969019001

under and subject to section 502(c) of the Bankruptcy Code.

4.6 <u>Post-Confirmation Committee</u>.  In accordance with the Plan, on the Effective Date, a Post-Confirmation Committee, consisting of those members of the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case [ECF Nos. 68 and 70] that are willing to serve shall be appointed to the Post-Confirmation Committee.  The Trustee shall consult with the Post-Confirmation Committee as relates to any material action to be taken under the Trust and, as he may deem further necessary or appropriate, before taking action under this Agreement in accordance with the Plan.

4.7 <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained

20

125696196v1

by the Committee or by the Debtor. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee's firm or their affiliates, to do work for the Trust. The Trustee may pay the reasonable salaries, fees and expenses of such Persons in the ordinary course of business.

4.8 <u>Safekeeping and Investment of Trust Assets</u>. All Trust Assets received by the Trustee shall, until liquidated, if necessary, and distributed or paid over time as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets (except for the Professional Fee Escrow Account and the account for the Covid Testing Claims, as provided in Article III of this Agreement), unless and to the extent required by law or the Plan. The Trustee shall not be under any obligation to invest Trust Assets. Neither the Trust nor the Trustee shall have any liability for interest or

21

12969619601v1

producing income on any Cash received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed consistent with the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any Cash held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's Creditor purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills and short-term money market funds; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or

otherwise. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

4.9     Maintenance and Disposition of Trust and Debtor Records.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The Trust may, but has no obligation to, engage a claims agent to continue to maintain and update the Claims Register maintained in the Chapter 11 Case throughout the administration of the Trust.  In any case, to the extent of any Trust Claims reflected thereon, the Claims Register may serve as the Trustee's register of beneficial interests held by Beneficiaries.  Except as provided in the Order: (I) Authorizing  the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] and the Confirmation Order, the books and records maintained by the Trustee and any records of the Debtor transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

12969619601

For the avoidance of doubt, nothing herein creates an independent right for Beneficiaries to obtain such books and records.

4.10 <u>Reporting Requirements and Payment of Statutory Fees</u>.

4.10.1  The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

4.10.2  The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee regular post-confirmation quarterly disbursement reports, on or before the twenty-first (21st) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

4.10.3  The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee the final reports for the Debtor.

4.10.4  The Trustee shall pay all statutory fees from the Trust Assets as such fees become due and payable.

4.11 <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable

24

12969619061v1

insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

## ARTICLE V

## DISTRIBUTIONS

5.1 <u>Distribution and Reserve of Trust Assets</u>. Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets to Beneficiaries (subject to any reserves administered by the Trust) as well as to holders of Accrued Professional Compensation Claims, Secured Claims, and Unsecured Claims in accordance with the Plan.

5.1.1 <u>Distributions to Beneficiaries</u>. In accordance with the Plan and Article III of this Agreement, the Trustee shall cause the Trust to distribute, when practicable, the Trust's

25

129696190v1

net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee; provided that the Trustee shall have no obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the holder of such Claim is less than $50.00, which shall be treated as a De Minimis Distribution under Article VI, Section B(3)(c) of the Plan.

5.1.2   Reserves; Pooling of Reserved Funds.  Before any distribution can be made, the Trustee may, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all reasonable expenses and liabilities of the Trust, including, but not limited to, reasonable attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with Section 4.2.15 of this Agreement, the Trust may also maintain, as necessary, a reserve for Disputed Trust Claims.  For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to a Trust Claim.  Except as otherwise provided in this Agreement, the Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; provided, however, the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

5.1.3   Distributions Net of Reserves and Costs.  Distributions to Beneficiaries shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable out-of-pocket costs of making the distributions to Beneficiaries.

12969619601v1

5.1.4 <u>Right to Rely on Professionals</u>.  Without limitation of the generality of Section 7.6 of this Agreement, in determining the amount of any distribution or reserves, the Trustee may rely on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

5.2 <u>Method and Timing of Distributions</u>. Distributions to Beneficiaries shall be made from the Trust in accordance with the terms of the Plan (in particular, Articles III and V) and this Agreement.  The Trust may engage a Disbursing Agent or other Person to help make distributions. For the avoidance of doubt, Beneficiaries will only be entitled to a distribution from the Trust as provided in Article III and in accordance with the Plan.

5.3 <u>Withholding from Distributions</u>. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary, any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or

27

the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

5.4 <u>Tax Identification Numbers</u>. The Trustee may require any Beneficiary to furnish an executed IRS Form and may condition any distribution upon receipt of such executed IRS Form. If a Beneficiary does not timely provide the Trustee with an executed IRS Form, then their Allowed Claim shall be deemed disallowed and expunged, and any Claim in respect thereof shall be discharged and barred from assertion against the Trustee, the Trust or the Trust Assets.

5.5 <u>Unclaimed and Undeliverable Distributions</u>. If any distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further distribution(s) to such Beneficiary shall be made unless and until Beneficiary claims the distribution(s) by timely notifying the Trustee in writing of any

28

information necessary, including such Beneficiary's then-current address, to make the distribution in accordance with the Plan. If a Beneficiary timely provides the Trustee the necessary information under Article VII Section 7.4 of the Plan, all missed distributions shall be made as soon as is practicable, without interest. Undeliverable or unclaimed distributions shall be administered in accordance with Article VI, Section B(3)(a) of the Plan.

5.5.1   <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

5.5.2   <u>Inapplicability of Unclaimed Property or Escheat Laws</u>.   Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of any state.

5.6 <u>Voided Checks; Request for Reissuance</u>.  Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 6 months after the date of issuance thereof.  Distributions in respect of voided checks shall be treated as unclaimed

1296961960v1

distributions and administered under Article VI, Section B(3)(a) and Section 5.5 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets, provided that such timing can be satisfied by the Trustee using commercially reasonable efforts.

5.7 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to an Allowed Trust Claim under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an Allowed Trust Claim resulting in adverse claims or demands being made in connection with such Allowed Trust Claim, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse

30

to comply with any such conflicting claims or demands.

5.7.1　The Trustee may elect to cause the Trust to make no payment or distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands as provided for in Article X, Section 1 of the Plan.　Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

5.7.2　The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.　Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat Beneficiaries identified as the owner of that interest in the books and records maintained by the Trustee, as the absolute owner under this Agreement, of an Allowed Trust Claim.　The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

5.7.3　In acting or refraining from acting under and in accordance with this Section 5.7 of the Agreement, the Trust and Trustee shall be fully protected and incur no

31

12969619601

liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

## ARTICLE VI

## BENEFICIARIES

6.1 <u>Interest Beneficial Only</u>. The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

6.2 <u>Ownership of Beneficial Interests Hereunder</u>. Each Beneficiary shall own a beneficial interest herein which shall, subject to Section 5.1 of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and this Agreement.

6.3 <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or

32

manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

6.4 <u>No Right to Accounting</u>. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. ~~Nothing~~<u>Except as provided in Section 9.4, nothing</u> in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

6.5 <u>No Standing</u>. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

33

6.6 <u>Requirement of Undertaking</u>.   The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, the provisions of this Section 6.6 shall not apply to any suit by the Trustee.

6.7 <u>Limitation on Transferability</u>.   It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law, <u>provided</u>, <u>however</u>, each Beneficiary shall have the right to transfer some or all of its Trust Interests one (1) time each calendar year and shall give the Trustee prompt written notice thereof (each, a "<u>Permitted Transfer</u>").   The Trustee shall not have any obligation to recognize any transfer of a

34

Trust Interest occurring after the Effective Date other than a Permitted Transfer, and only holders of Trust Interests of record as of the Effective Date, and transferees of a Permitted Transfer, shall be entitled to be recognized for all purposes hereunder. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee along with the identity and address of the proper Person to succeed the Beneficiary's interest, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trustee may fully rely upon any such proof and shall have no duty to investigate.

6.8 <u>Exemption from Registration</u>. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such

35

rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

6.9 <u>Delivery of Distributions</u>. Subject to the terms of this Agreement, the Trustee shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan and in this Agreement.

## ARTICLE VII

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1 <u>Parties Dealing with the Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or

36

129696196v1

propriety of any transaction by the Trustee or any agent of the Trustee.

7.2 <u>Limitation of Trustee's Liability</u>.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, and, to that end, the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns (collectively, the "<u>Trustee Parties</u>") shall incur any responsibility or liability, and no Holder of a Claim or Interest or any other party in interest shall have, or otherwise pursue, any claim or Cause of Action against the Trustee or the Trustee Parties, by reason of or relating to any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this

37

125696190v1

Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.

7.3 <u>No Liability for Acts of Other Persons</u>.  None of the Persons identified in the immediately preceding Section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

7.4 <u>No Liability for Acts of Predecessors</u>.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

7.5 <u>No Liability for Good Faith Error of Judgment</u>.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order

38

that the Trustee was grossly negligent in ascertaining the pertinent facts before exercising such judgment.

7.6 <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Trustee may rely in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors, and may rely upon the advice of such counsel, agents, or advisors for any action taken, omitted, or suffered by the Trustee.

7.7 <u>No Liability for Acts Approved by Bankruptcy Court</u>. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and Trust Claims required to be administered by the Trust.

39

The Trust and Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

7.8 <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9 <u>Indemnification</u>. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such parties' successors and assigns (collectively, the "<u>Indemnified Parties</u>" and each, an "<u>Indemnified Party</u>") shall, to the fullest

40

extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including reasonable counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the reasonable costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a Final Order (not subject to further appeal or review) to result directly and primarily from the

41

fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

7.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this Section 7.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 7.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 7.9.

7.10    No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are

42

1296961960v1

specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

7.11 <u>Confirmation of Survival of Provisions</u>. Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VIII

## TAX MATTERS

8.1 <u>Tax Treatment of Trust</u>. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtor, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed Trust Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their

43

12969619601

Pro Rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

8.2 <u>Annual Reporting and Filing Requirements</u>. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

8.3 <u>Tax Treatment of Reserves for Disputed Trust Claims</u>. The Trustee may timely elect to treat any Trust Assets allocable to Disputed Trust Claims as a "disputed ownership fund" ("<u>DOF</u>") governed by Treasury Regulation Section 1.468B-9. If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and

44

the payment of federal and/or state income tax due.

8.4  Valuation of Trust Assets.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

**ARTICLE IX**

**SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE**

9.1  Initial Trustee.  As of the Effective Date, the initial trustee shall be Paul R. Hage, as provided in the Plan and the Confirmation Order.

45

9.2 <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal.  In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VII of this Agreement shall survive the resignation or removal of any Trustee.

9.3 <u>Removal of Trustee</u>.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The

46

12969619601

Bankruptcy Court shall hear and finally determine any dispute arising out of this Section.

9.4  <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the U.S. Trustee and the Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation, and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee, Auxo (until it is paid in full on its Secured Claim), and the Post-Confirmation Committee <u>unless otherwise provided by the Bankruptcy Court</u>.  In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

9.5  <u>Appointment of Successor Trustee</u>. Upon the <u>giving of notice of </u>resignation, <u>the Trustee shall file a motion with the Bankruptcy Court to approve the appointment of a successor Trustee.  Upon the </u>death, incapacity, or removal

47

of a Trustee, a party in interest shall file a motion with the Bankruptcy Court ~~shall appoint~~to seek the appointment of a successor Trustee ~~on its own motion~~. Any successor Trustee so appointed (a) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s). ~~Any successor Trustee may be appointed to serve only on an interim basis.~~

9.6 <u>Powers and Duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7 <u>Trust Continuance</u>. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created

48

12969619601v1

pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8 <u>Compensation of Trustee and Costs of Administration</u>. The Trustee shall be paid on an hourly basis based on his then current hourly rate. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid or reserved for by the Trust from Trust Assets prior to any distribution to the Beneficiaries. A successor Trustee shall also be entitled to reasonable and fair compensation in connection with its services, which compensation may be different from the terms provided herein, plus the reimbursement of reasonable and documented out-of-pocket expenses.

49

9.9 <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such

50

1296961960v1

Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE X

## DURATION OF TRUST

10.1 <u>Duration</u>. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

12969619601

10.2 <u>Termination on Distribution of Trust Assets</u>.  Upon the distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate, and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3 <u>Termination after Five Years</u>.  If the Trust has not been previously terminated pursuant to Section 10.2 hereof, on the fifth (5th) anniversary of the Effective Date, unless the Trust term has been extended by the Bankruptcy Court, upon motion of the Trustee, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.5 of this Agreement.

52

12969619601

10.4 <u>No Termination by Beneficiaries</u>. The Trust may not be terminated at any time by the Beneficiaries.

10.5 <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee, the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

53

12969619601

**ARTICLE XI**

**MISCELLANEOUS**

11.1 <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2 <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books and records kept by the Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

<u>Jason W. Bank</u>
<u>Kerr Russell and Weber, PLC</u>

~~Paul R. Hage~~
~~Taft Stettinius & Hollister, LLP~~
~~27777 Franklin Road~~<u>500 Woodward Avenue</u>, Suite 2500
~~Southfield~~<u>Detroit</u>, Michigan ~~48034~~<u>48226-3427</u>
~~phage@taftlaw~~     <u>jbank@kerr-russell</u>.com

54

(248313) 351-3000 961-0200 (MO) or (248313) 727-1543484-3853 (D)

or to such other address as may from time to time be provided in written notice by the Trustee.

11.3 Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to rules governing the conflict of laws.

11.4 Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5 Particular Words.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6 Execution.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or

55

12969019601

for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

11.7 <u>Amendment</u>. This Agreement may be amended by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, such amendment may not be inconsistent with the Plan or the Confirmation Order.

11.8 <u>No Waiver</u>. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9 <u>No Relationship Created</u>. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

56

11.10　　Severability.　If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.11　　Counterparts.　　This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.12　　Jurisdiction.　The Bankruptcy Court shall have jurisdiction regarding the Debtor, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.　The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out

57

12969019001

of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

58

1296960190v1

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as July 2, 2024, the date of the ~~day and year written above~~entry of the Order.

**ARK LABORATORY, LLC**

By:_____

Name: James Grossi

Title:  Member

**THE ~~LIQUIDATING~~SUCCESSOR TRUSTEE**

By: _____

Name: ~~Paul R. Hage~~Jason W. Bank, solely in his capacity as Successor Trustee

~~Title: Trustee~~

59

12969019601

| Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 7/10/2024 12:00:57 PM | |
|---|---|
| **Style name:** TaftStandard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://taft-mobility.imanage.work/ACTIVE/129690190/1 | |
| **Modified DMS:** iw://taft-mobility.imanage.work/ACTIVE/133795807/3 | |
| **Changes:** | |
| Add | 48 |
| Delete | 37 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 85 |

# EXHIBIT D TO EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ARK LABORATORY, LLC,                    Case No. 23-43403-MLO
                                        Chapter 11
        Debtor.                         Hon. Maria L. Oxholm
_____/

## ORDER GRANTING EX PARTE MOTION OF SUCCESSOR TRUSTEE TO APPROVE RESTATED AND FIRST AMENDED LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This matter having come before the Court upon the Ex Parte Motion of Successor Trustee to Approve Restated and First Amended Liquidating Trust Agreement and Declaration of Trust (the "Ex Parte Motion"); the Court having reviewed same and determined that no additional notice was required for the relief sought in Ex Parte Motion; and the Court being fully and duly advised in the premises;

NOW, THEREFORE, the Court orders as follows:

1.      The Ex Parte Motion is granted.

2.      The Restated and First Amended Liquidating Trust Agreement and Declaration of Trust is approved.

3.      Within two (2) business days of the entry of this Order, the Successor

Trustee[1] shall file a Notice of Restated and First Amended Liquidating Trust Agreement and Declaration of Trust, along with a red-lined version showing the changes made as against the Liquidating Trust Agreement and Declaration of Trust approved by the Court as part of confirmation of the Plan.

---

[1] All capitalized terms shall have the meanings ascribed to them in the Ex Parte Motion unless otherwise stated to the contrary herein.

**Signed on July 9, 2024**



/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**

# EXHIBIT 2

**FIRST AMENDED AND RESTATED**
**LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST**

~~This~~The Liquidating Trust Agreement and Declaration of Trust ~~(the "Agreement" or~~ ~~"Trust Agreement")~~, dated as of November 2, 2023, ~~is~~was made by and between Ark Laboratory, LLC, d/b/a Helix Diagnostics (the "Debtor"), in the chapter 11 bankruptcy case (the "Chapter 11 Case"), pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") and Paul R. Hage (the "~~Trustee," and~~ Liquidating Trustee"), a copy of which is attached as **Exhibit A**.  The Liquidating Trustee tendered his notice of intent to resign on May 29, 2024 and, as a result thereof, after the filing of a motion with the Bankruptcy Court, Jason W. Bank was appointed as the successor trustee (the "Successor Trustee") on July 2, 2024 pursuant to order of the Bankruptcy Court, a copy of which is attached as **Exhibit B** (the "Order") [ECF No. 644] and is now serving as the Trustee,[1] (together with the Debtor, each, a "Party" and collectively, the "Parties").  The Liquidating Trust Agreement and Declaration of Trust has been amended pursuant to the Order and this First Amended and Restated Liquidating Trust Agreement and Declaration of Trust (together with the Liquidating Trust Agreement and the Declaration of Trust, the "Agreement" or the "Trust Agreement").  A red-lined version reflecting the changes made to the Trust Agreement is attached as **Exhibit C**.[2]

---

[1] Effective upon execution of the First Amended and Restated Liquidating Trust Agreement and Declaration of Trust, all references to the "Trustee" shall reference Jason W. Bank, solely in his capacity as Successor Trustee.

[2] In addition to the changes approved by the Bankruptcy Court in the Order, additional nonmaterial changes were made, as reflected in the red-lined version of the Trust Agreement attached as **Exhibit C**.  In an abundance of caution, the Trustee will seek approval of these changes to the Trust Agreement from the Bankruptcy Court.  If approved, the order approving the Trust Agreement, as amended and restated (the "Second Order"), the Second Order [ECF No. 649] is attached as **Exhibit D** to this Trust Agreement.

1.      On April 12, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  The Chapter 11 Case is being administered as *In re Ark Laboratory, LLC*. Case 23-43403-MLO.

2.      On May 1, 2023, the Office of the United States Trustee for the Eastern District of Michigan (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Case pursuant to 11 U.S.C. § 1103 [ECF No. 68], and thereafter, on May 2, 2023, filed an Amended Appointment of Unsecured Creditors Committee [ECF No 70].  The members of the Committee consisted of: (1) Matthew George of Gemini Labor Group, LLC; (2) Dorian Wright, CFO of The Sports Marketing Agency; and (3) Maribeth Thomas, Esq., counsel to Fisher Healthcare.

3.      On September 19, 2023, the Debtor filed its *Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [ECF No. 249] (as may be amended, supplemented or modified from time to time, the "Plan").[13]

4.      On November ~~—~~30, 2023, the Bankruptcy Court entered the ~~Order Confirming~~Findings of Fact, Conclusions of Law and Order (I) Granting Final Approval of the Debtor's Disclosure Statement and Plan Supplement, and (II) Confirming Debtor's Second Amended Plan of Liquidation [ECF No. ~~—~~392] (the "Confirmation Order"). Pursuant to the Confirmation Order, the Plan became effective on ~~November~~ ~~—~~December 14,, 2023 (the "Effective Date").

---

[13]  All capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings set forth in the Plan.

5. The Plan provides for the establishment of the Creditor Trust (the "Trust") on the Effective Date.

6. The Confirmation Order provides for the appointment of the Trustee as the ~~Creditor~~Liquidating Trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor ~~Creditor~~Liquidating Trustee of the Trust.

7. The Trust is established for the benefit of Auxo Investment Partners, LLC, the secured creditor ("Auxo"), the unsecured creditors of the Debtor's estate, and the Retained Professionals approved by the Bankruptcy Court (each a "Beneficiary" and collectively, the "Beneficiaries"). For the avoidance of doubt, as of the Effective Date of the Plan and in accordance therewith, each Beneficiary is entitled to a distribution from the Trust, if applicable, as provided under the Plan confirmed by the Bankruptcy Court.[4]

8. The Trust is established for the purpose of liquidating the remaining assets of the Debtor which, pursuant to the Plan are hereby transferred to the Trust together with all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets"), maximizing recoveries for the benefit of the Beneficiaries, and making distributions in accordance with the Plan, Confirmation Order and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

9. The Trust Assets consist primarily of (i) the cash in the Professional Fee Escrow Account for payment of the Retained Professionals on their Allowed Professional Compensation approved by the Bankruptcy Court, (ii) Causes of Action, including the

---

[4] The Plan became "effective" on December 14, 2023, as reflected in the Notice of Occurrence of the Effective Date of Second Amended Plan of Liquidation filed with the Bankruptcy Court. On December 15, 2023 [ECF No. 413].

3

Avoidance Actions, and (iii) the Covid Testing Claims. The Trust Assets shall be distributed to the Beneficiaries as provided in Article III of this Agreement, in accordance with the Plan.

10.     The Trust Assets specifically exclude any assets purchased by Auxo as provided under the Order: (I) Authorizing  the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] entered September 28, 2023, as well as any assets arising or covered by that certain Management and Transition Services Agreement dated as of October 12, 2023 by and between MSU Health Care Lab, LLC and the Debtor (the "Transition Services Agreement").  Further, the Transition Services Agreement shall expressly survive confirmation of the Plan and remain in full force and effect for the duration of its term and the Liquidating Trustee shall not take any action inconsistent with the Transition Services Agreement or that would preclude the Debtor from being able to fulfill its obligations under the Transition Services Agreement.

11.     Pursuant to the Plan, the Debtor, the Trustee, and the Beneficiaries are required to (a) treat the transfer of assets to the Trust in accordance with the terms of the Plan as a transfer to the Beneficiaries, and (b) followed by a transfer by such Beneficiaries to the Trust, the Beneficiaries will be treated as the grantors and owners thereof.

12.     Pursuant to the Plan, the Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the Trust.

4

12969019001

13. Pursuant to section 1145 of the Bankruptcy Code, the Trust is intended to be exempt from the requirements of the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

<div align="center">

**DECLARATION OF TRUST**

</div>

The Parties enter into this Agreement to effectuate the creation of the Trust and the distribution of the Trust Assets to the Beneficiaries pursuant to, and to the extent set forth in, the Plan and the Confirmation Order, it being understood that the Trust Assets shall first be used to pay the Beneficiaries as provided in the Plan and Article III of this Agreement.

Pursuant to Article IV, Section 8(6) of the Plan and Section 2.3 of this Agreement, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Trust Assets shall vest in the Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan and the Confirmation Order.

The Trust Assets are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, for the benefit of the Beneficiaries and for no other party as provided in this Agreement and in accordance with the Plan.

12969619011

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Definitions</u>.  For purposes of this Agreement, unless otherwise defined herein, the terms of this Agreement shall have the meanings set forth in the Plan.

1.2.1 "<u>Trust Claim(s)</u>" shall mean a claim or interest that has been scheduled as not disputed, contingent or unliquidated, filed as a proof of claim or interest, or whose allowance has been granted by the Bankruptcy Court pursuant to a Final Order, without regard to whether such claim or interest was Disputed on the Effective Date, by a Beneficiary of this Agreement that is making a request for payment from the Trust Assets, to the extent that it remains unpaid.

1.2.2   "<u>Trust Interest(s)</u>" shall mean each Beneficiary's interest in ~~Creditor~~ Trust Assets.

1.3     <u>Interpretation; Headings</u>.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     <u>Construction of Agreement</u>.  This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

6

1.5    Conflict Between Plan Documents.  In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE I

## ESTABLISHMENT OF TRUST

1.1    Effectiveness of Agreement; Name of Trust.  This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Ark Laboratory Trust."

1.2    Purpose of Trust.  The Parties, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of liquidating its assets, maximizing recoveries for the benefit of the Beneficiaries, and making distributions to the Beneficiaries in accordance with the Plan, Confirmation Order, and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Trust.

1.3    Transfer of Trust Assets.

1.3.1    Transfer of Trust Assets.  Pursuant to section 1141 of the Bankruptcy Code and the Plan, the Debtor and its Estate hereby grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Trust Assets to the Trust, as of the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order.

7

12569019601v1

1.3.2   Prior to the Effective Date and to the extent required following the Effective Date, the Debtor shall, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all necessary documents (in recordable form where necessary or appropriate) and take or cause to be taken any action that Trustee may reasonably deem necessary or appropriate to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets with such fees, expenses and costs to be paid by the Trust. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

1.3.3   <u>Title to Trust Assets</u>.  Pursuant to the Plan, all of the Debtor's and its Estate's right, title, and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of Claims, Liens, encumbrances, charges, and other interests except as otherwise provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, consistent with the provisions of the Plan and Confirmation Order.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor and its Estate to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By

8

129696190v1

executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan, and Confirmation Order.

1.4     Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent or party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

1.5     Acceptance by Trustee.  The Trustee accepts its appointment as ~~Creditor~~Liquidating Trustee of the Trust.

## ARTICLE II

### PAYMENT OF ACCRUED PROFESSIONAL COMPENSATION CLAIMS OF RETAINED PROFESSIONALS, ALLOWED SECURED CLAIM OF AUXO, AND ALLOWED CLAIMS OF UNSECURED CREDITORS

2.1     Administrative Expense Claims of Retained Professionals.

2.1.1 On the Effective Date, cash in the Professional Fee Account shall be transferred to the Trustee for the benefit of the Retained Professionals.  Upon the entry of a Final Order by the Bankruptcy Court approving the Accrued Professional Compensation Claims of the Retained Professionals, the Trustee shall pay each Retained Professional such pro rata amounts as authorized by the Bankruptcy Court and as provided in the Plan.  If the amount in the Professional Fee Escrow Account is less than the Accrued Professional Compensation Claims of the Retained Professionals, prior to any distribution of the net proceeds of the Causes

9

12969019001

of Action to the Holders of Allowed Unsecured Claims, to the extent that a Retained Professional has not been paid in full on its Accrued Professional Compensation Claims approved by the Bankruptcy Court from the Professional Fee Escrow Account, the net proceeds of the Causes of Action shall first be used to pay the administrative expenses of the Trustee and his professionals to administer the Trust, and then to the Retained Professionals for outstanding Accrued Professional Compensation Claims.

2.1.2 Without limiting the foregoing, and notwithstanding anything to the contrary herein, the Trustee shall maintain a Professional Fee Escrow Account for the benefit of Retained Professionals (*i.e.*, in a separate bank account). On or before the Effective Date, the Debtor shall provide the Trustee with an open register of how much money is escrowed for each Retained Professional. The Professional Fee Escrow Account and amounts funded therein for a Retained Professional are and shall continue to be maintained in trust solely for each Retained Professional and as specifically allocated for each Retained Professional in the First Amended Cash Collateral Order [ECF No. 269] and the Order Approving Employment of Special Counsel [ECF No. 229]. Notwithstanding anything to the contrary in this Agreement, the funds in the Professional Fee Escrow Account shall not be considered property of the Debtor, its Estate, or the Trust; provided, however, the Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow Account after payment in full of all Accrued Professional Compensation Claims without any further notice, action or order of the Bankruptcy Court. Unless otherwise agreed to (1) by the Debtor and the Retained Professional prior to the Effective Date, or (2) by the Trustee and the Retained Professional after the Effective Date, the amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Trustee as soon as reasonably practicable after such Professional Fee Claims are Allowed by final

12569619011

order of the Bankruptcy Court, first from the Professional Fee Escrow Account and second, as provided in Section 3.1.1 of this Agreement. For the avoidance of doubt, the amount escrowed for each Retained Professional on the Effective Date is not a cap on such Retained Professional's Professional Fee Claim.

3.2 <u>Allowed Secured Claim of Auxo</u>. The net recoveries from the Covid Testing Claims, after payment of such amounts owed to Special Counsel, plus the actual and necessary fees of the Trustee in recovering or compromising such recoveries, shall be distributed by the Trustee, as follows: (a) the first $9.2 million shall be distributed to Auxo as a Beneficiary under the Trust, (b) the next $1.0 million to the Trustee for the pro rata payment of the Allowed Claims of the Unsecured Creditors, as Beneficiaries under the Trust, (c) then, once Auxo receives eighty percent (80%) of the amount owed on its Allowed Secured Claim, each dollar received thereafter by the Liquidating Trustee shall be split with fifteen percent (15%) of such recoveries for pro rata payment of the Allowed Claims of the Unsecured Creditors and eighty-five percent (85%) of such recoveries for

11

12969619601

payment of the Allowed Secured Claim of Auxo until Auxo is paid in full on its Allowed Secured Claim. Thereafter, all such recoveries, net of fees and expenses of the Trust, shall be paid pro rata to the Allowed Unsecured Claims, in accordance with the Plan.

3.3     Allowed Claims of Unsecured Creditors.  The Allowed Unsecured Claims shall be paid as provided in Section 3.2 of this Agreement.  Additionally, the Allowed Unsecured Claims shall receive, on a pro rata basis, the proceeds of the Causes of Action, including the Avoidance Actions, after payment in full of fees and expenses of the Liquidating Trustee and his professionals and all Accrued Professional Compensation Claims owed to the Retained Professionals to the extent of any deficiency owed to them beyond the Professional Fee Escrow.

## ARTICLE IV

## ADMINISTRATION OF TRUST

4.1     Rights, Powers, and Privileges of Trustee Generally.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management, settlement and disposition thereof,

12

and over the management and conduct of the affairs of the Trust. In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

4.1.1 Power to Contract. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

4.1.2 Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

4.1.3 Compromise and Settlement of the Covid Testing Claims. Before the Trustee can compromise or settle the Covid Testing Claims for less than their face value, the Trustee shall consult with the Post-Confirmation Committee, Auxo and Special Counsel over

1296960196v1

the risks and benefits associated with settling the Covid Testing Claims. Until the Covid Testing Claims have resulted in a net recovery of $9.2 million, the Trustee shall take into special consideration Auxo's position and its Allowed Secured Claim in the Covid Testing Claims with respect to any compromise or settlement of the Covid Testing Claims, after consultation with Auxo and the Post-Confirmation Committee. Once the Covid Testing Claims have resulted in a net recovery of at least $10.2 million, the Trustee shall give consideration to Auxo's position with respect to any compromise proposed by Special Counsel until Auxo has received eighty percent (80%) on account of its Allowed Secured Claim, but prior to that time, the Trustee shall exercise his business judgment in deciding whether to compromise the Covid Testing Claims. If a dispute arises as to whether the Covid Testing Claims should be compromised, the Trustee or Auxo may seek a ruling from the Bankruptcy Court.

4.2    <u>Powers of Trustee</u>. Without limiting the generality of the above Section 4.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

4.2.1    To act on behalf of the Trust, including the right to effectuate all actions and execute all agreements, instruments and other documents, and exercise all rights and privileges previously held by the Debtor, necessary or convenient to implement the provisions of the Plan and this Trust Agreement;

4.2.2    Except as provided in Section 4.1.3, with respect to any Trust Assets, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commenced or continued and take all actions that may be or could have

14

been taken by any officer, director, or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholder;

4.2.3    To manage, monitor and enforce all of the Debtor's and the Estate's rights and interests under the Plan, the Confirmation Order, the Trust Agreement, any other agreements of the Debtor, and any other Orders of the Bankruptcy Court;

4.2.4    To authorize and make distribution to holders of Allowed Claims provided for or contemplated under the Plan or Trust Agreement, including, without limitation, Article 3 of the Trust Agreement;

4.2.5    Except to the extent set forth in the Plan, to object to any Trust Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Trust Claim regardless of whether such Claim was Disputed on the Effective Date, subject to the terms of Section 4.1.3 as relates to the Covid Testing Claims, it being understood that prior to an objection to a Trust Claim, the Trustee may act without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Trust Agreement;

4.2.6    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Trust and the Trustee and to pay the fees and charges incurred by the Trustee or the Trust's behalf on or after the Effective Date;

4.2.7    To (a) file, if necessary, any and all tax and information returns required with respect to the Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise,

12969019001

(b) make tax elections by and on behalf of the Trust, and (c) pay taxes, if any, payable by the Trust;

4.2.8    To take all other actions not inconsistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable with respect to administering the Plan;

4.2.9    To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order or the Trust Agreement;

4.2.10    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Trust Assets in the reasonable business judgment of the Trustee;

4.2.11    Except as otherwise set forth herein, to prosecute and/or settle any Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and pursue to settlement or judgment such Causes of Action, including the right to issue subpoenas or to file motions for examinations under Fed.R.Bankr.P. 2004;

4.2.12    To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable, and to exercise any and all rights held by the holder of such insurance policies;

4.2.13    To collect and liquidate and/or distribute all Trust Assets pursuant to the Plan, the Confirmation Order, and the Trust Agreement;

16

12969619601

4.2.14    To calculate and make all distributions on behalf of the Trust to holders of Allowed Claims provided for in, or contemplated by, the Plan and this Agreement, including, without limitation, all Accrued Professional Compensation Claim, Allowed Secured Claims, and Allowed Unsecured Claims;

4.2.15    To establish, adjust and maintain any reserves for Disputed Trust Claims administered by the Trust;

4.2.16    To hold legal title to any and all of the Trust Assets;

4.2.17    If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with Section 9.9 of this Agreement;

4.2.18    To retain any and all insurance policies of the Debtor providing coverage with respect to Causes of Action and exercise any and all rights held by the holder of such insurance policies;

4.2.19    In reliance upon the Debtor's Schedules and the Claims Register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with Section 4.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Case to the extent of any Trust Claim is reflected thereon;

4.2.20    Exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, the Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

17

Solely with respect to any Trust Asset, the Trustee shall stand in the same position as the Debtor with respect to any claim the Debtor may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Trustee shall have the ability to raise all of the Debtor's rights to preserve, or assert any such privilege; and succeed to all of the Debtor's rights to preserve or assert any such privilege; and

4.2.21 To file an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case.

4.3 <u>Authority</u>. No Person dealing with the Trust shall be obligated to inquire into the Trustee's authority in connection with the receipt, preservation, management, or disposition of Trust Assets.

4.4 <u>Abandonment</u>. If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner (if applicable) or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, without further authority or approval of the Bankruptcy

18

12969619601v1

Court, including by donation of such property to a charitable organization.

4.5  Responsibility for Administration of Trust Claims.  From and after the Effective Date, the Trust shall be responsible for, among other things, administering and paying distributions provided for under the Plan to Trust Beneficiaries.  Except as expressly provided otherwise in the Plan, and except to the extent the applicable Trust Claims have been previously Allowed prior to the Effective Date, the Trust shall control and effectuate the Trust Claims reconciliation process, including to compromise or settle any Trust Claim without any further notice to or action, order or approval by the Bankruptcy Court, or to object to or seek to subordinate any Trust Claim, except as otherwise provided in this Agreement.  The Trust shall be entitled to assert all of the Debtor's and the Estate's rights, without limitation, under section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Trust Claims

12969019601

under and subject to section 502(c) of the Bankruptcy Code.

4.6 <u>Post-Confirmation Committee</u>. In accordance with the Plan, on the Effective Date, a Post-Confirmation Committee, consisting of those members of the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case [ECF Nos. 68 and 70] that are willing to serve shall be appointed to the Post-Confirmation Committee. The Trustee shall consult with the Post-Confirmation Committee as relates to any material action to be taken under the Trust and, as he may deem further necessary or appropriate, before taking action under this Agreement in accordance with the Plan.

4.7 <u>Agents and Professionals</u>. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained

20

by the Committee or by the Debtor. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee's firm or their affiliates, to do work for the Trust. The Trustee may pay the reasonable salaries, fees and expenses of such Persons in the ordinary course of business.

4.8 <u>Safekeeping and Investment of Trust Assets</u>. All Trust Assets received by the Trustee shall, until liquidated, if necessary, and distributed or paid over time as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets (except for the Professional Fee Escrow Account and the account for the Covid Testing Claims, as provided in Article III of this Agreement), unless and to the extent required by law or the Plan. The Trustee shall not be under any obligation to invest Trust Assets. Neither the Trust nor the Trustee shall have any liability for interest or

129696019601

producing income on any Cash received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed consistent with the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any Cash held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's Creditor purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills and short-term money market funds; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or

22

otherwise. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

4.9     Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The Trust may, but has no obligation to, engage a claims agent to continue to maintain and update the Claims Register maintained in the Chapter 11 Case throughout the administration of the Trust. In any case, to the extent of any Trust Claims reflected thereon, the Claims Register may serve as the Trustee's register of beneficial interests held by Beneficiaries. Except as provided in the Order: (I) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to § 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements and Authorizing the Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [ECF No. 279] and the Confirmation Order, the books and records maintained by the Trustee and any records of the Debtor transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

23

12969619601

For the avoidance of doubt, nothing herein creates an independent right for Beneficiaries to obtain such books and records.

4.10 <u>Reporting Requirements and Payment of Statutory Fees</u>.

4.10.1  The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

4.10.2  The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee regular post-confirmation quarterly disbursement reports, on or before the twenty-first (21st) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

4.10.3  The Trustee shall file with the Bankruptcy Court and submit to the U.S. Trustee the final reports for the Debtor.

4.10.4  The Trustee shall pay all statutory fees from the Trust Assets as such fees become due and payable.

4.11 <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable

24

12969019601v1

insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

## ARTICLE V
## DISTRIBUTIONS

5.1 <u>Distribution and Reserve of Trust Assets</u>. Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets to Beneficiaries (subject to any reserves administered by the Trust) as well as to holders of Accrued Professional Compensation Claims, Secured Claims, and Unsecured Claims in accordance with the Plan.

5.1.1 <u>Distributions to Beneficiaries</u>. In accordance with the Plan and Article III of this Agreement, the Trustee shall cause the Trust to distribute, when practicable, the Trust's

25

net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee; provided that the Trustee shall have no obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the holder of such Claim is less than $50.00, which shall be treated as a De Minimis Distribution under Article VI, Section B(3)(c) of the Plan.

5.1.2    Reserves; Pooling of Reserved Funds.  Before any distribution can be made, the Trustee may, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all reasonable expenses and liabilities of the Trust, including, but not limited to, reasonable attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with Section 4.2.15 of this Agreement, the Trust may also maintain, as necessary, a reserve for Disputed Trust Claims.  For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to a Trust Claim.  Except as otherwise provided in this Agreement, the Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; provided, however, the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

5.1.3    Distributions Net of Reserves and Costs.  Distributions to Beneficiaries shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable out-of-pocket costs of making the distributions to Beneficiaries.

1256960196v1

5.1.4 <u>Right to Rely on Professionals</u>. Without limitation of the generality of Section 7.6 of this Agreement, in determining the amount of any distribution or reserves, the Trustee may rely on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

5.2 <u>Method and Timing of Distributions</u>. Distributions to Beneficiaries shall be made from the Trust in accordance with the terms of the Plan (in particular, Articles III and V) and this Agreement. The Trust may engage a Disbursing Agent or other Person to help make distributions. For the avoidance of doubt, Beneficiaries will only be entitled to a distribution from the Trust as provided in Article III and in accordance with the Plan.

5.3 <u>Withholding from Distributions</u>. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary, any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or

1296961960v1

the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

5.4 <u>Tax Identification Numbers</u>. The Trustee may require any Beneficiary to furnish an executed IRS Form and may condition any distribution upon receipt of such executed IRS Form. If a Beneficiary does not timely provide the Trustee with an executed IRS Form, then their Allowed Claim shall be deemed disallowed and expunged, and any Claim in respect thereof shall be discharged and barred from assertion against the Trustee, the Trust or the Trust Assets.

5.5 <u>Unclaimed and Undeliverable Distributions</u>. If any distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further distribution(s) to such Beneficiary shall be made unless and until Beneficiary claims the distribution(s) by timely notifying the Trustee in writing of any

28

1296961901v1

information necessary, including such Beneficiary's then-current address, to make the distribution in accordance with the Plan. If a Beneficiary timely provides the Trustee the necessary information under Article VII Section 7.4 of the Plan, all missed distributions shall be made as soon as is practicable, without interest. Undeliverable or unclaimed distributions shall be administered in accordance with Article VI, Section B(3)(a) of the Plan.

5.5.1 <u>No Responsibility to Attempt to Locate Beneficiaries</u>. The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

5.5.2 <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of any state.

5.6 <u>Voided Checks; Request for Reissuance</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 6 months after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed

125696159v1

distributions and administered under Article VI, Section B(3)(a) and Section 5.5 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets, provided that such timing can be satisfied by the Trustee using commercially reasonable efforts.

5.7 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to an Allowed Trust Claim under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an Allowed Trust Claim resulting in adverse claims or demands being made in connection with such Allowed Trust Claim, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse

to comply with any such conflicting claims or demands.

5.7.1    The Trustee may elect to cause the Trust to make no payment or distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands as provided for in Article X, Section 1 of the Plan.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

5.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat Beneficiaries identified as the owner of that interest in the books and records maintained by the Trustee, as the absolute owner under this Agreement, of an Allowed Trust Claim.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

5.7.3    In acting or refraining from acting under and in accordance with this Section 5.7 of the Agreement, the Trust and Trustee shall be fully protected and incur no

31

liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

## ARTICLE VI

## BENEFICIARIES

6.1 <u>Interest Beneficial Only</u>. The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

6.2 <u>Ownership of Beneficial Interests Hereunder</u>. Each Beneficiary shall own a beneficial interest herein which shall, subject to Section 5.1 of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and this Agreement.

6.3 <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or

32

12969619601

manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

6.4 <u>No Right to Accounting</u>. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. ~~Nothing~~<u>Except as provided in Section 9.4, nothing</u> in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

6.5 <u>No Standing</u>. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

33

6.6 <u>Requirement of Undertaking</u>.   The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, the provisions of this Section 6.6 shall not apply to any suit by the Trustee.

6.7 <u>Limitation on Transferability</u>.   It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law, <u>provided</u>, <u>however</u>, each Beneficiary shall have the right to transfer some or all of its Trust Interests one (1) time each calendar year and shall give the Trustee prompt written notice thereof (each, a "<u>Permitted Transfer</u>").   The Trustee shall not have any obligation to recognize any transfer of a

34

Trust Interest occurring after the Effective Date other than a Permitted Transfer, and only holders of Trust Interests of record as of the Effective Date, and transferees of a Permitted Transfer, shall be entitled to be recognized for all purposes hereunder. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee along with the identity and address of the proper Person to succeed the Beneficiary's interest, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trustee may fully rely upon any such proof and shall have no duty to investigate.

6.8 <u>Exemption from Registration</u>. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such

35

12969619601v1

rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

6.9 <u>Delivery of Distributions</u>. Subject to the terms of this Agreement, the Trustee shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan and in this Agreement.

## ARTICLE VII

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

7.1 <u>Parties Dealing with the Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or

36

129696190v1

propriety of any transaction by the Trustee or any agent of the Trustee.

 7.2 <u>Limitation of Trustee's Liability</u>.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, and, to that end, the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns (collectively, the "<u>Trustee Parties</u>") shall incur any responsibility or liability, and no Holder of a Claim or Interest or any other party in interest shall have, or otherwise pursue, any claim or Cause of Action against the Trustee or the Trustee Parties, by reason of or relating to any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this

37

4856-3403
129690190v1

Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.

7.3 <u>No Liability for Acts of Other Persons</u>.  None of the Persons identified in the immediately preceding Section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

7.4 <u>No Liability for Acts of Predecessors</u>.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

7.5 <u>No Liability for Good Faith Error of Judgment</u>.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order

38

129696196v1

that the Trustee was grossly negligent in ascertaining the pertinent facts before exercising such judgment.

7.6 <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>.  Except as otherwise provided herein, the Trustee may rely in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal counsel and other agents and advisors, and may rely upon the advice of such counsel, agents, or advisors for any action taken, omitted, or suffered by the Trustee.

7.7 <u>No Liability for Acts Approved by Bankruptcy Court</u>.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and Trust Claims required to be administered by the Trust.

39

12969619601v1

The Trust and Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

7.8 <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9 <u>Indemnification</u>. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such parties' successors and assigns (collectively, the "<u>Indemnified Parties</u>" and each, an "<u>Indemnified Party</u>") shall, to the fullest

40

12969019001

extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including reasonable counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the reasonable costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a Final Order (not subject to further appeal or review) to result directly and primarily from the

41

12969019601v1

fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

7.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this Section 7.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 7.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 7.9.

7.10  No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are

42

12969019001

specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

7.11    Confirmation of Survival of Provisions.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VIII

## TAX MATTERS

8.1    Tax Treatment of Trust.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtor, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed Trust Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their

43

12969619601

Pro Rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

8.2 <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

8.3 <u>Tax Treatment of Reserves for Disputed Trust Claims</u>.  The Trustee may timely elect to treat any Trust Assets allocable to Disputed Trust Claims as a "disputed ownership fund" ("<u>DOF</u>") governed by Treasury Regulation Section 1.468B-9.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and

44

12969619611

the payment of federal and/or state income tax due.

8.4 <u>Valuation of Trust Assets</u>. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE IX

## SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

9.1 <u>Initial Trustee</u>. As of the Effective Date, the initial trustee shall be Paul R. Hage, as provided in the Plan and the Confirmation Order.

45

12969019601v1

9.2 <u>Term of Service</u>. The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, incapacity or removal. In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VII of this Agreement shall survive the resignation or removal of any Trustee.

9.3 <u>Removal of Trustee</u>. Any Person serving as Trustee may be removed at any time for cause. Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The

46

1296961960v1

Bankruptcy Court shall hear and finally determine any dispute arising out of this Section.

9.4 Resignation of Trustee. The Trustee may resign at any time on written notice to the U.S. Trustee and the Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation, and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee, Auxo (until it is paid in full on its Secured Claim), and the Post-Confirmation Committee unless otherwise provided by the Bankruptcy Court. In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

9.5 Appointment of Successor Trustee. Upon the giving of notice of resignation, the Trustee shall file a motion with the Bankruptcy Court to approve the appointment of a successor Trustee. Upon the death, incapacity, or removal

of a Trustee, a party in interest shall file a motion with the Bankruptcy Court ~~shall appoint~~ to seek the appointment of a successor Trustee ~~on its own motion~~. Any successor Trustee so appointed (a) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s). ~~Any successor Trustee may be appointed to serve only on an interim basis.~~

9.6 <u>Powers and Duties of Successor Trustee</u>. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7 <u>Trust Continuance</u>. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created

48

12969619601

pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8 <u>Compensation of Trustee and Costs of Administration</u>. The Trustee shall be paid on an hourly basis based on his then current hourly rate. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid or reserved for by the Trust from Trust Assets prior to any distribution to the Beneficiaries. A successor Trustee shall also be entitled to reasonable and fair compensation in connection with its services, which compensation may be different from the terms provided herein, plus the reimbursement of reasonable and documented out-of-pocket expenses.

49

9.9 <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such

50

Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE X

## DURATION OF TRUST

10.1 <u>Duration</u>. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

10.2 <u>Termination on Distribution of Trust Assets</u>.  Upon the distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate, and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3 <u>Termination after Five Years</u>.  If the Trust has not been previously terminated pursuant to Section 10.2 hereof, on the fifth (5th) anniversary of the Effective Date, unless the Trust term has been extended by the Bankruptcy Court, upon motion of the Trustee, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.5 of this Agreement.

12969019001

10.4 <u>No Termination by Beneficiaries</u>. The Trust may not be terminated at any time by the Beneficiaries.

10.5 <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee, the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

53

12969619v1

**ARTICLE XI**

**MISCELLANEOUS**

11.1 <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2 <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books and records kept by the Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

<u>Jason W. Bank</u>
<u>Kerr Russell and Weber, PLC</u>

~~Paul R. Hage~~
~~Taft Stettinius & Hollister, LLP~~
~~27777 Franklin Road~~<u>500 Woodward Avenue</u>, Suite 2500
~~Southfield~~<u>Detroit</u>, Michigan ~~48034~~<u>48226</u>-3427
~~phage@taftlaw~~ <u>jbank@kerr-russell</u>.com

54

129690190v1

(~~248~~313) ~~351-3000~~ 961-0200 (~~M~~O) or (~~248~~313) ~~727-1543~~484-3853 (D)

or to such other address as may from time to time be provided in written notice by the Trustee.

11.3 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to rules governing the conflict of laws.

11.4 <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5 <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6 <u>Execution</u>. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or

55

for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

11.7 <u>Amendment</u>. This Agreement may be amended by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, such amendment may not be inconsistent with the Plan or the Confirmation Order.

11.8 <u>No Waiver</u>. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9 <u>No Relationship Created</u>. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

11.10 <u>Severability</u>. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.11 <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.12 <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the Debtor, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out

57

12969619601v1

of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

58

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as July 2, 2024, the date of the ~~day and year written above~~entry of the Order.

**ARK LABORATORY, LLC**

By:_____

Name: James Grossi

Title:  Member

**THE ~~LIQUIDATING~~SUCCESSOR TRUSTEE**

By:_____

Name: ~~Paul R. Hage~~Jason W. Bank, solely in his capacity as Successor Trustee

~~Title: Trustee~~

59

129696196v1

| Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 7/10/2024 12:00:57 PM | |
|---|---|
| **Style name:** TaftStandard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://taft-mobility.imanage.work/ACTIVE/129690190/1 | |
| **Modified DMS:** iw://taft-mobility.imanage.work/ACTIVE/133795807/3 | |
| **Changes:** | |
| Add | 48 |
| Delete | 37 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 85 |

| | |
|---|---|
| In re: | Case No. 23-43403-mlo |
| Ark Laboratory, LLC, | Chapter 11 |
| Debtor. | Hon. Maria L. Oxholm |

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, I caused a copy of the *Notice of Restated and First Amended Liquidating Trust Agreement and Declaration of Trust* on all parties who are registered to receive electronic notification via the court's ECF filing system.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER, LLP**

By: */s/ Judith Greenstone Miller*
Judith Greenstone Miller (P29208)
Kimberly Ross Clayson (P69804)
27777 Franklin Road, Suite 2500
Southfield, Michigan 49034
(248) 351-3000
jgmiller@taftlaw.com
kclayson@taftlaw.com

*Attorneys for Jason W. Bank, Solely in
his Capacity as Successor Trustee of the Ark
Laboratory Trust*

Dated: July 10, 2024